**FILED UNDER SEAL**

**No. 26-4303**

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

On Appeal from the United States District Court
for the Eastern District of Virginia, No. 4:25-dm-1 (4:25-ec-25) (Hanes, J.)

**SEALED BRIEF FOR APPELLANT**

LEAH FUGERE
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Ave, Suite 2400
Los Angeles, CA 90071
(213) 443-5312

AARON ZEBLEY
ARI HOLTZBLATT
SIDDHARTH VELAMOOR
HILARY HURD
MATT MORRIS
ANDREW NELL
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

July 8, 2026

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-4303 Caption: In re: App. of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)

Pursuant to FRAP 26.1 and Local Rule 26.1,

LinkedIn Corp.
(name of party/amicus)

who is Appellant, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
If yes, identify all parent corporations, including all generations of parent corporations:

LinkedIn Corporation is a wholly-owned subsidiary of Microsoft Corporation, which is a publicly held corporation with no parent company.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
If yes, identify all such owners:
LinkedIn Corporation is a wholly-owned subsidiary of Microsoft Corporation, which is a publicly held corporation with no parent company. No publicly held corporation owns 10% or more of Microsoft Corporation's stock.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Aaron Zebley Date: July 8, 2026

Counsel for: LinkedIn Corp.



Print to PDF for Filing

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ... iii

INTRODUCTION ... 1

JURISDICTIONAL STATEMENT ... 4

STATEMENT OF ISSUES ... 4

STATEMENT OF THE CASE ... 5

A. Statutory Background ... 5

B. Factual Background ... 7

C. Procedural History ... 10

SUMMARY OF ARGUMENT ... 13

STANDARD OF REVIEW ... 16

ARGUMENT ... 17

I. [redacted] STORED COMMUNICATIONS ACT REQUIRE NARROWING THE D-ORDER TO EXCLUDE IRRELEVANT [redacted] RECORDS ... 17

[redacted] ... [redacted]

[redacted] ... [redacted]

[redacted] ... [redacted]

[redacted] ... [redacted]

B. The Stored Communications Act Also Requires Narrowing The Overbroad D-Order .....30

II. THE FIRST AMENDMENT AND § 2705(b) REQUIRE MODIFYING THE SECRECY ORDER TO PERMIT LIMITED NOTICE .....35

A. Strict Scrutiny Applies To The Secrecy Order .....36

B. The Secrecy Order Cannot Survive Strict Scrutiny .....39

1. The Government's Only Compelling Interest Is In Protecting The Integrity Of The Investigation, Not Secrecy As Such .....39

2. The Secrecy Order Is Not The Least Restrictive Means Of Protecting The Investigation's Integrity .....40

3. The Government's Position Is [redacted] .....48

III. THE DISTRICT COURT ERRED BY UPHOLDING THE SECRECY ORDER BASED ON *EX PARTE* EVIDENCE WITHHELD FROM LINKEDIN .....52

CONCLUSION .....58

REQUEST FOR ORAL ARGUMENT

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abourezk v. Reagan*, 785 F.2d 1043 (D.C. Cir. 1986) .......... 53, 57

*Alexander v. United States*, 509 U.S. 544 (1993) .......... 36

*Ali v. Federal Bureau of Prisons*, 552 U.S. 214 (2008) .......... 34

[redacted]

*Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) .......... 36

*Blankenship v. Louisville-Jefferson County*, 162 F.4th 644 (6th Cir. 2025) .......... 52

*Bose Corporation v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984) .......... 17

[redacted]

*Brown v. Entertainment Merchants Association*, 564 U.S. 786 (2011) .......... 37, 38, 47, 49, 51

*Bryant v. Woodall*, 1 F.4th 280 (4th Cir. 2021) .......... 32

*Carroll v. President & Commissioners of Princess Anne*, 393 U.S. 175 (1968) .......... 36, 48, 54

*China Telecom (Americas) Corporation v. FCC*, 57 F.4th 256 (D.C. Cir. 2022) .......... 57

*Church of Scientology of California v. United States*, 506 U.S. 9 (1992) .......... 4

[redacted]

*Clifford v. United States*, 136 F.3d 144 (D.C. Cir. 1998) .......... 16, 17

*Cook v. Howard*, 484 F.App'x 805 (4th Cir. 2012) .......... 31

*Crespo v. Holder*, 631 F.3d 130 (4th Cir. 2011) .......... 34

*Doe v. Gonzales*, 386 F.Supp.2d 66 (D. Conn. 2005) ....................39

*Elrod v. Burns*, 427 U.S. 347 (1976) ....................48

*Freilich v. Upper Chesapeake Health, Inc.*,
313 F.3d 205 (4th Cir. 2002) ....................28

*Fulton v. City of Philadelphia*, 593 U.S. 522 (2021) ....................54

*Gentile v. State Bar of Nevada*, 501 U.S. 1030 (1991) ....................38

*Greene v. McElroy*, 360 U.S. 474 (1959) ....................57

*Google LLC v. United States*, 2025 WL 778150
(D.D.C. Feb. 25, 2025) ....................33

[redacted]

*Ibanez v. Florida Department of Business & Professional Regulation, Board of Accountancy*, 512 U.S. 136 (1994) ....................54

[redacted]

*In re Grand Jury Subpoena Issued to Twitter, Inc.*, 2017 WL 9485553
(N.D. Tex. Nov. 7, 2017) ....................29

[redacted]

*In re Grand Jury Subpoena to Google, LLC Dated March 20, 2019*,
2020 WL 1350395 (S.D.N.Y. Jan. 31, 2020) ....................44

[redacted]

*In re Leopold to Unseal Certain Electronic Surveillance Applications & Orders*, 964 F.3d 1121 (D.C. Cir. 2020) ....................6

*In re Matter of Search Warrant for [redacted].com*,
248 F.Supp.3d 970 (C.D. Cal. 2017) ....................36

*In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018) ....................17, 35, 37

*In re Sealed Case*, 77 F.4th 815 (D.C. Cir. 2023) ....................43, 44, 50

*In re Sealed Case*, 144 F.4th 329 (D.C. Cir. 2025) ....................................4, 32, 50

[redacted]

*In re Subpoena Duces Tecum to AOL, LLC*,
550 F.Supp.2d 606 (E.D. Va. 2008) ............................................................31

*In re Taylor*, 567 F.2d 1183 (2d Cir. 1977) .....................................................53

*In re United States for an Order Pursuant to 18 U.S.C. § 2703(d)*,
206 F.Supp.3d 454 (D.D.C. 2016)..............................................................30

*In re United States for an Order Pursuant to 18 U.S.C. § 2703(d)*,
830 F.Supp.2d 114 (E.D. Va. 2011) ...................................................55, 56

*In re United States for an Order Pursuant to 18 U.S.C. § 2703(d)*,
707 F.3d 283 (4th Cir. 2013) .....................................................................55

*In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*,
289 F.Supp.3d 201 (D.D.C. 2018).........................................................5, 29

*Interstate Commerce Commission v. Louisville & Nashville Railroad Company*, 227 U.S. 88 (1913) ..................................................52, 56

*Joint Anti-Fascist Refugee Committee v. McGrath*,
341 U.S. 123 (1951).....................................................................................53

[redacted]

*Matter of Application United States for an Order Authorizing Disclosure of Historical Cell Site Information for Telephone Number [redacted]*, 20 F.Supp.3d 67 (D.D.C. 2013) ....................................30

[redacted]

*Matter of Subpoena 2018R00776*, 947 F.3d 148 (3d Cir. 2020) .........................39, 43

*Matthew v. Eldridge*, 424 U.S. 319 (1976).............................................................56

*McCullen v. Coakley*, 573 U.S. 464 (2014) .....................................................15, 37

*Nevels v. Hanlon*, 656 F.2d 372 (8th Cir. 1981) ..................................................56

[redacted]

*New York Times Company v. United States*, 403 U.S. 713 (1971) .............37, 42, 48

*Quackenbush v. Allstate Insurance Company*, 517 U.S. 706 (1996) ........................4

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ...................................................37

*Reich v. National Engineering & Contracting Company*,
13 F.3d 93 (4th Cir. 1993) ...........................................................................4

*Riley v. National Federation of the Blind of North Carolina, Inc.*,
487 U.S. 781 (1988) ..............................................................................45

*Seattle Times Company v. Rhinehart*, 467 U.S. 20 (1984) ..............................38, 39

*See v. City of Seattle*, 387 U.S. 541 (1967) ........................................................32

*Smith v. City of Jackson*, 544 U.S. 228 (2005) ....................................................34

*Spirit Aerosystems, Inc. v. Paxton*, 142 F.4th 278 (5th Cir. 2025) .........................32

*Thompson v. Greene*, 427 F.3d 263 (4th Cir. 2005) ..........................................3, 53

*TikTok Inc. v. Garland*, 122 F.4th 930 (D.C. Cir. 2024) .......................................57

*TikTok Inc. v. Garland*, 604 U.S. 56 (2025) ..................................................52, 57

*United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004) .....................................52

*United States v. Aguilar*, 515 U.S. 593 (1995) ....................................................38

[redacted]

*United States v. Microsoft Corporation*, 56 F.3d 1448
(D.C. Cir. 1995) ..................................................................................53

*United States v. Playboy Entertainment Group*, 529 U.S. 803
(2000) .................................................................16, 37, 38, 42, 44, 47, 54

*United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991) .....28

[redacted]

*United States v. Under Seal*, 737 F.3d 330 (4th Cir. 2013).....16, 17

**DOCKETED CASES**

[redacted]

*In re Matter of the Search of: Information That Is Stored At Premises Controlled by Twitter Inc. Identified in Attachment A*, No. 23-SC-31 (D.D.C.).....43, 44

*In re Sealed Case*, No. 23-5044, 2023 WL 6037559 (D.C. Cir. Apr. 21, 2023).....43

[redacted]

**STATUTES AND RULES**

18 U.S.C.
§ 2701 .....5
§ 2702 .....5
§ 2703 .....*passim*
§ 2705 .....*passim*

28 U.S.C.
§ 1331 .....4
§ 1291 .....4

Fed. R. Civ. P. 45 .....31

Fed. R. Crim. P. 6.....40

**REGULATIONS AND LEGISLATIVE MATERIALS**

[redacted]

H.R. Rep. No. 103-827 (1994) ....................................................................32

**OTHER AUTHORITIES**

DOJ, *Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)* (Oct. 19, 2017), https://tinyurl.com/25r3y47c ....................................................................40

DOJ, *Supplemental Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)* (May 27, 2022), https://tinyurl.com/dt3w29ux ....................................................................50

[redacted]

Kerr, Orin S., *A User's Guide to the Stored Communications Act*, 72 Geo. Wash. L. Rev. 1208 (2004) ....................................................................5

[redacted]

## INTRODUCTION

[redacted] the government obtained a Stored Communications Act order (the "D-Order") requiring LinkedIn to produce records of all LinkedIn communications that [redacted] sent or received over [redacted] approximately [redacted] records. [redacted] So the D-Order would very likely [redacted] that are irrelevant to the government's investigation. The government also procured another order (the "Secrecy Order") forbidding LinkedIn from disclosing the D-Order to anyone, [redacted] for one year.

LinkedIn sought to modify both orders. It proposed narrowing the D-Order to exclude irrelevant records. And it requested permission to notify one [redacted] attorney from [redacted] about the D-Order, [redacted]. But the district court and the government refused to narrow either order. And the district court later declined to reconsider its decision regarding the Secrecy Order, [redacted].

The district court's decisions are wrong. [redacted] Section 2703(d) [redacted] permits the government to demand only those records it has "reasonable grounds to believe" are "relevant and material to an ongoing criminal investigation" based on "specific and articulable facts." 18 U.S.C. § 2703(d). Because the D-Order demands substantial *irrelevant* [redacted] records, it violates those requirements. This Court should therefore reverse and remand for the district court to quash or, at a minimum, narrow the order.

The Secrecy Order cannot be sustained either. As a content-based prior restraint on LinkedIn's speech, the Secrecy Order must satisfy strict First Amendment scrutiny. The government could meet that standard only by proving, with concrete evidence, that LinkedIn's less-restrictive alternative of notifying one [redacted] attorney of the D-Order would seriously impair the integrity of its investigation. The government presented no such evidence. [redacted]

The district court compounded these errors by denying LinkedIn access to *ex parte* evidence on which the court relied to restrict LinkedIn's speech. *Ex parte* evidence is "'fundamentally at variance with our conceptions of due process,'" *Thompson v. Greene*, 427 F.3d 263, 269 n.7 (4th Cir. 2005), and the government violated the Constitution twice over when it denied LinkedIn due process after suppressing its speech.

[redacted]

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 and 18 U.S.C. § 2703(d). On [redacted] the district court denied LinkedIn's motion to quash or modify the D-Order and to modify the Secrecy Order, and on [redacted] it denied LinkedIn's motion for reconsideration. JA1-15; JA16. There is therefore "[n]o other action related to the court's orders … still pending before the district court," *In re Sealed Case*, 144 F.4th 329, 332 (D.C. Cir. 2025), and "'nothing for the court to do but execute the judgment,'" *Quackenbush v. Allstate Insurance Company*, 517 U.S. 706, 712 (1996). This Court thus has jurisdiction under 28 U.S.C. § 1291. *See Sealed Case*, 144 F.4th at 332; *Church of Scientology of California v. United States*, 506 U.S. 9, 15 (1992); *Reich v. National Engineering & Contracting Company*, 13 F.3d 93, 95-97 (4th Cir. 1993). LinkedIn timely filed a notice of appeal on June 5, 2026. JA341.

## STATEMENT OF ISSUES

1. Whether [redacted] the Stored Communications Act require narrowing an 18 U.S.C. § 2703(d) order to prevent disclosure of [redacted] records that are irrelevant to the criminal investigation.

2. Whether the government failed to meet its First Amendment burden to produce concrete evidence showing that disclosing the D-Order to a single [redacted]

attorney would seriously jeopardize its investigation, [redacted]

3. Whether due process requires disclosing to LinkedIn the *ex parte* materials on which the district court relied to justify restricting LinkedIn's speech.

## STATEMENT OF THE CASE

### A. Statutory Background

Congress enacted the Stored Communications Act ("SCA") to enhance the privacy of individuals using online electronic communication services. The SCA "creates a set of Fourth Amendment-like privacy protections" by regulating when online service providers may disclose users' content- and non-content records. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1212 (2004). Providers must exercise "great[] responsibilities regarding the disclosure and safeguarding of … electronic information" and may not divulge user records except in narrow, defined circumstances. *In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F.Supp.3d 201, 203 (D.D.C. 2018); *see* 18 U.S.C. §§ 2701, 2702.

To obtain non-content records related to stored electronic communications, the government must secure a warrant or court-approved SCA order. *See* 18 U.S.C. § 2703(c)-(d). Section 2703(d) authorizes a court to order disclosure of

non-content information "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that … the records or other information sought[] are relevant and material to an ongoing criminal investigation." A court may quash or modify a § 2703(d) order if "the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden" on the recipient. *Id.* § 2703(d).

SCA orders are presumptively public. The Act "contains no 'default sealing or nondisclosure provisions'" preventing a provider from disclosing SCA orders to its users. *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1129 (D.C. Cir. 2020). When the government wants to "displace[] the usual presumption in favor of [disclosure]," *id.* at 1130, it must "apply to a court" for a secrecy order prohibiting the provider from disclosing the § 2703(d) order, 18 U.S.C. § 2705(b). A court may issue a secrecy order only if it finds "reason to believe that notification of the existence of the" § 2703(d) order "will result in": "(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." 18 U.S.C. § 2705(b).

## B. Factual Background

### *1. LinkedIn's Platform*

LinkedIn is the world's largest professional network, with more than 1 billion members across more than 200 countries and territories. JA114-115. People who register to use LinkedIn ("users") create profiles identifying their education, professional backgrounds, and affiliations. JA115. Users connect by sending private invitations. JA115, JA292. A user's complete list of connections is never public. JA292. Users can also privately communicate using LinkedIn's "Messaging" feature or by including a message in an invitation to connect. JA115-116. [redacted]

### *2. The D-Order*

On [redacted] the government served the D-Order on LinkedIn, requiring LinkedIn to produce records for [redacted] accounts [redacted]

---

[redacted]

[redacted] The government also obtained the Secrecy Order, which prohibits LinkedIn from disclosing the D-Order to anyone other than its counsel for one year. JA45.

The government and magistrate judge who first heard LinkedIn's motion to quash or modify the orders [redacted]

The D-Order requires LinkedIn to produce records about every message and connection invitation sent or received by [redacted] JA83-84. The requested records contain significant information about [redacted] private LinkedIn communications. They cover approximately [redacted] communications and include non-public information identifying the sender, recipient, date, and time of each message or invitation sent or received. JA83-84; JA116-117; JA292. [redacted]

[redacted]

[redacted] the records would reveal the identities of [redacted] individuals who have no publicly visible LinkedIn connection with any of [redacted]

### C. Procedural History

[redacted] LinkedIn moved to quash or modify the D-Order and to modify the Secrecy Order. JA50-51. LinkedIn argued that the D-Order violates [redacted] § 2703(d) by sweeping in many irrelevant—and thus immaterial [redacted] records [redacted] JA54. As for the Secrecy Order, LinkedIn contended that the First Amendment requires that LinkedIn be permitted to disclose the D-Order to a single [redacted] attorney [redacted] who would be subject to the Secrecy Order. JA57-58. Such disclosure would lessen the infringement on LinkedIn's speech and enable [redacted] to assert its rights without jeopardizing the government's investigation. JA55. [redacted]

[redacted] the district court denied LinkedIn's motion and adopted, on *de novo* review, the reasoning of a magistrate judge's Report and Recommendation. According to the district court, overbreadth was not among "the limited grounds in which a responding party may move to quash" a § 2703(d) order, because "the

undue burden 'referred to by statute is a logistical or practical burden.''' JA5-8. Alternatively, the court concluded that because the D-Order sought some "'relevant and material'" records, it could also "direct the production of some irrelevant non-content records" and even "'extensive'" "'irrelevant material.'" JA5-6.

[redacted]

The district court also declined to modify the Secrecy Order. The court stated that the government "'has a compelling interest in maintaining the secrecy of an ongoing criminal investigation,'" and that a one-year prohibition was narrowly tailored to that interest. JA11-12. The court also found that LinkedIn's "proposed solution" of notifying a single [redacted] attorney "would not be as effective in achieving the Government's legitimate purpose of maintaining secrecy for the on-going investigation." JA13.

[redacted]

[redacted]

Given this new information, LinkedIn moved for reconsideration of the district court's denial of LinkedIn's motion to modify the Secrecy Order. JA318-319. [redacted] To the extent the court had doubts about LinkedIn's factual

proffer, LinkedIn urged it to ask the government [redacted]

The district court denied reconsideration. JA16. In a subsequently issued opinion, the court offered two principal bases for its decision. First, the court acknowledged that LinkedIn was "between a rock and a hard place" [redacted] JA19. Yet rather than ask the government directly—*ex parte*, if necessary—the court deemed it "speculat[ive]" [redacted] The court cited no evidence that disclosure to [redacted] attorney would still seriously jeopardize the investigation.

LinkedIn timely appealed the district court's orders. JA341. This Court then granted LinkedIn's emergency motion to stay enforcement of the D-Order pending appeal. CA4 Dkt. 16. LinkedIn remains subject to the Secrecy Order.

## SUMMARY OF ARGUMENT

The district court erred in refusing to narrow the D-Order, modify the Secrecy Order, or disclose the government's *ex parte* materials to LinkedIn.

First, the D-Order is substantially overbroad. It requires LinkedIn to produce records of all communications sent or received over [redacted] approximately [redacted] records. Yet most of those [redacted] records likely bear no plausible connection to [redacted] JA46-47; JA116-117; JA292-293; JA118-119. [redacted] § 2703(d) forbid that overreach. [redacted] Section 2703(d) [redacted] authorizing orders only as to records that "specific and articulable facts" reasonably show to be "relevant and material to an ongoing criminal investigation." It also empowers courts to quash or modify orders whose compliance "would cause an undue burden." 18 U.S.C. § 2703(d). The D-Order satisfies neither principle. It indiscriminately sweeps in records [redacted] most of which are likely unconnected to the investigation.

The district court reached a contrary conclusion by stripping those guardrails of meaning. [redacted] § 2703(d) order permissibly may "require production of" even "extensive … irrelevant material" so long as *some* records are relevant. JA5; JA7-8. It then read § 2703(d)'s "undue burden" provision to reach only "logistical or practical" burdens, JA8—a construction that renders the statutory text duplicative and leaves providers no means to enforce the relevance and materiality limits Congress imposed. The resulting regime allows the government to cast a wide net [redacted] so long as it can identify some relevant kernel inside them. That is not the law.

Second, the district court erred in refusing to modify the Secrecy Order. The Secrecy Order prohibits LinkedIn from telling "any other person" about the D-Order for a year. JA45. That is a content-based prior restraint triggering strict scrutiny. The Secrecy Order can thus survive only if the government demonstrates that it is "the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014). The government did not do so. LinkedIn proposed a less-restrictive alternative: disclosure to a single [redacted] attorney who would be subject to the Secrecy Order [redacted] To rebut that alternative, the government was required to offer

"hard evidence" that it would undermine a compelling interest, *United States v. Playboy Entertainment Group*, 529 U.S. 803, 819 (2000)—here, the "investigation's integrity," CA4 Dkt. 11 at 9. But the government failed to produce any such evidence. [redacted]

Finally, the district court erred by denying LinkedIn limited access to the *ex parte* evidence underlying the Secrecy Order. Due process "requires that a party be aware of and allowed to refute 'the evidence against the *merits* of his case.'" *Clifford v. United States*, 136 F.3d 144, 149 (D.C. Cir. 1998). But LinkedIn was afforded no such opportunity. The government relied on secret evidence to obtain a prior restraint of LinkedIn's speech, and the district court refused to allow LinkedIn to confront that evidence to challenge the basis for the Secrecy Order. The Constitution does not countenance such one-sided procedures.

## STANDARD OF REVIEW

The Court reviews the district court's denial of LinkedIn's motion to quash or modify the D-Order for abuse of discretion. But "'[i]nsofar as the district court's determination was based upon interpretations of law,'" the Court

"'review[s] those conclusions de novo.'" *United States v. Under Seal*, 737 F.3d 330, 332-333 (4th Cir. 2013). The Court reviews the denial of LinkedIn's motion to modify the Secrecy Order *de novo*, because the order "limit[s] First Amendment rights." *In re Murphy-Brown, LLC*, 907 F.3d 788, 797 (4th Cir. 2018). And any factual issues presented by the district court's denial of the motion to modify the Secrecy Order are reviewed *de novo* because they are "questions of 'constitutional fact.'" *Bose Corporation v. Consumers Union of United States, Inc.*, 466 U.S. 485, 508 n.27 (1984). Finally, the Court reviews the district court's refusal to order disclosure of the *ex parte* materials for abuse of discretion. *See Clifford v. United States*, 136 F.3d 144, 148 (D.C. Cir. 1998).

## ARGUMENT

### I. [redacted] STORED COMMUNICATIONS ACT REQUIRE NARROWING THE D-ORDER TO EXCLUDE IRRELEVANT [redacted] RECORDS

Neither [redacted] the SCA tolerates compelled production of [redacted] records that are irrelevant to a criminal investigation. [redacted] Section 2703(d) [redacted] reaches only records reasonably shown to be "relevant and material to an ongoing

criminal investigation." And it empowers courts to quash any order whose compliance "would cause an undue burden." 18 U.S.C. § 2703(d).

As a result, such orders must be carefully tailored to relevant records. The district court here, however, upheld an order sweeping in records about every LinkedIn communication sent or received by [redacted] That decision violates [redacted] the SCA.

**A.** [redacted]

[redacted]

[redacted]

> [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

---

[redacted]

### B. The Stored Communications Act [redacted] Requires Narrowing The Overbroad D-Order

The district court likewise erred in refusing to narrow the D-Order under the SCA. Section 2703(d) restricts the government's authority to compel production of irrelevant [redacted] records twice over.

First, the statute authorizes a court to compel disclosure only if "specific and articulable facts" reasonably establish that "the records or other information sought[] are *relevant and material* to an ongoing criminal investigation." 18 U.S.C. § 2703(d) (emphasis added). This language forecloses orders encompassing a wide swath of records bearing no "nexus" to the investigation. *In re United States. for an Order Pursuant to 18 U.S.C. § 2703(d)*, 206 F.Supp.3d 454, 458 (D.D.C. 2016). Put another way, it precludes the government from "obtain[ing] an entire database … merely because one or some of the entries in that database are 'relevant and material.'" *Matter of Application United States for an Order Authorizing Disclosure of Historical Cell Site Information for Telephone Number [redacted]*, 20 F.Supp.3d 67, 72 (D.D.C. 2013). Not surprisingly, then, courts have refused to use § 2703(d) to compel the production of non-content information when the government's broad request was "not sufficiently tailored" to obtain information that was "actually 'relevant and material' to [an] investigation." *Id.* at 74.

Second, § 2703(d) empowers courts to quash or modify an order where compliance "would cause an undue burden." 18 U.S.C. § 2703(d). This Court has construed materially identical language in other provisions to encompass "situations where the subpoena seeks information irrelevant to the case." *Cook v. Howard*, 484 F.App'x 805, 812 n.7 (4th Cir. 2012) (per curiam) (interpreting then-Fed. R. Civ. P. 45(c)(3)'s grounds for quashing or modifying a subpoena). And district courts have interpreted "undue burden" in the SCA similarly. In *In re Subpoena Duces Tecum to AOL, LLC*, for example, the district court held that a subpoena requesting "all" of a user's emails for six weeks imposed an undue burden because the request was "overbroad" and sought records "unrelated to the litigation." 550 F.Supp.2d 606, 612 (E.D. Va. 2008). [redacted]

The district court erred in refusing to exercise this authority to narrow the D-Order. It began by interpreting the statute to permit quashing a § 2703(d) order only based on "logistical or practical burden[s]," but not overbreadth. JA8-9; *see also* JA5. When the government serves a demand for documents, however, the receiving "party must have the opportunity to 'obtain judicial review of the

reasonableness of the demand prior to suffering penalties for refusing to comply,'" *Spirit Aerosystems, Inc. v. Paxton*, 142 F.4th 278, 290 (5th Cir. 2025) (quoting *See v. City of Seattle*, 387 U.S. 541, 545 (1967)). This necessarily includes the right to challenge the demand for exceeding statutory limits. *See Sealed Case*, 144 F.4th 329, 333 (D.C. Cir. 2025) (a court is ordinarily free to "revisit its statutory authority to issue [an] order" once challenged.). And Congress has cabined production to records that are "relevant and material." The district court's construction would render that limit unenforceable. *See Bryant v. Woodall*, 1 F.4th 280, 286 (4th Cir. 2021), *as amended* (June 23, 2021) ("[A] court presumes that a legislature enacts a statute with the intent that it be enforced."); *see also* JA19-20 (expressing doubt that subscribers or subjects of records can challenge § 2703(d) orders).

A court may not avoid this limit on the ground that investigations inevitably require production of "some—perhaps extensive—irrelevant material." JA5. Congress imposed a more demanding standard under § 2703(d) than that required for a traditional subpoena to "rais[e] the standard for access to transactional data … to guard against 'fishing expeditions' by law enforcement." H.R. Rep. No. 103-827, at 9, 31-32 (1994). Allowing the government to seize a haystack because it might contain a needle would disregard Congress's design, embodied in § 2703(d)'s "relevant and material" standard.

Moreover, courts must enforce this statutory limit based not only "upon information provided by the [g]overnment," JA6, but also on information subsequently learned, including from the challenging party. [redacted] And Congress indicated that a court should consider a challenger's information when it authorized motions to quash demands that are "unusually voluminous" or "would cause an undue burden"—showings most naturally based on evidence presented in a motion to quash. 18 U.S.C. § 2703(d).[5]

The district court compounded these errors by adopting an idiosyncratic interpretation of "undue burden." It dismissed decisions interpreting "undue burden" in other provisions because they "do[] not … arise[] from a § 2703(d) order or analyze[] that statute." JA8-9.[6] But when "the same language" appears in

---

[5] In any event, [redacted]

[6] The district court's reference to *Google LLC v. United States*, 2025 WL 778150 (D.D.C. Feb. 25, 2025) is misplaced. That case concerned the opportunity to challenge a warrant, not a § 2703(d) order, the parties never meaningfully developed any argument about the meaning of "undue burden" in § 2703(d), and the court's statutory analysis erred for the reasons set forth below. *Id.* at *6.

provisions with "similar purposes," that language presumptively bears a consistent meaning. *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005).

The district court attempted to overcome this strong presumption on the ground that the statute "as a whole is oriented toward the practical difficulties of compliance." JA9. That is wrong. Section 2703(d) keys issuance to "relevan[ce] and material[ity]." And the statute's reference to "unusually voluminous" records in no way "narrow[s]" § 2703(d)'s "concerns" to "practical, logistical, or concrete burdens," as the court believed. JA3, JA9. The words "unusually voluminous" naturally apply to orders demanding too much material—a scope-based concern. So even if "undue burden" overlaps with "unusually voluminous," that would *support* LinkedIn's interpretation that undue burden includes overbreadth concerns. In any event, the sounder course is to read "undue burden" and "unusually voluminous" as covering distinct domains, given "the established principle that 'statutes must be interpreted ... to give each word some operative effect.'" *Crespo v. Holder,* 631 F.3d 130, 135 (4th Cir. 2011).[7]

[7] The government relied on *ejusdem generis* in interpreting "unusually voluminous" and "undue burden" to have the same meaning. JA164. As explained in the text, that canon would support LinkedIn's interpretation even if it applied. And it does not: The Supreme Court has rejected *ejusdem generis* when interpreting a provision that is "disjunctive, with one specific and one general category"—as in § 2703(d). *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 225 (2008). As the Court explained, the "absence of a list of specific items undercuts

* * *

The D-Order is not carefully tailored compulsory process in aid of a criminal investigation. It is an indiscriminate demand [redacted] most of which have no plausible connection to [redacted]. Neither [redacted] § 2703(d) tolerates such overreach. The Court should reverse and direct the district court to quash the D-Order or, at a minimum, narrow it [redacted]

## II. THE FIRST AMENDMENT AND § 2705(b) REQUIRE MODIFYING THE SECRECY ORDER TO PERMIT LIMITED NOTICE

The Secrecy Order sits "at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions." *In re Murphy-Brown LLC*, 907 F.3d 788, 796-797 (4th Cir. 2018). Strict scrutiny therefore applies, which the Secrecy Order cannot survive. Under § 2705(b), the Secrecy Order may not be justified based on an interest in secrecy for its own sake; the government must prove that disclosure of the D-Order would "seriously jeopardize" its investigation. But it has never demonstrated that LinkedIn's minor proposed modification—disclosing the D-Order to a single, [redacted] attorney, himself subject to the Secrecy Order—would do so. [redacted]

---

the inference embodied in *ejusdem generis* that Congress remained focused on the common attribute when it used the catchall phrase." *Id.*

[redacted]

### A. Strict Scrutiny Applies To The Secrecy Order

The government has never disputed that the Secrecy Order is a prior restraint, and rightly so. By prohibiting LinkedIn from speaking about the D-Order to anyone besides counsel for a year, JA45, the Secrecy Order "actually forbid[s] speech activities," the essence of a prior restraint, *Alexander v. United States*, 509 U.S. 544, 550 (1993). Recognizing as much, courts "have almost uniformly" deemed § 2705(b) orders "prior restraints." *In re Matter of Search Warrant for [redacted].com*, 248 F.Supp.3d 970, 980 (C.D. Cal. 2017) (collecting cases).

Prior restraints are "the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Association v. Stuart*, 427 U.S. 539, 559 (1976). Indeed, "[t]he elimination of prior restraints was a 'leading purpose' in the adoption of the First Amendment." *Carroll v. President & Commissioners of Princess Anne*, 393 U.S. 175, 181 n.5 (1968). Because they impose "an immediate and irreversible sanction," prior restraints not only "chill[]" speech but "freeze[]" it, "suppress[ing] the precise freedom which the First Amendment sought to protect." *Nebraska Press*, 427 U.S. at 559. "Any system of prior restraints" thus "comes to this Court bearing a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). And by the

same token, the government "'carries a heavy burden of showing justification for the imposition of such a restraint.'" *New York Times Company v. United States*, 403 U.S. 713, 714 (1971) (per curiam) ("*Pentagon Papers*").

The Secrecy Order, moreover, is not just a prior restraint but a content-based one. It prohibits "particular speech because of the topic discussed"—namely, the D-Order. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). That too is cause for constitutional suspicion: The government generally "'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Id.* Accordingly, content-based speech restrictions, like prior restraints, are "presumptively unconstitutional." *Id.* "It is rare that a regulation restricting speech because of its content will ever be permissible." *United States v. Playboy Entertainment Group*, 529 U.S. 803, 818 (2000).

Accordingly, the Secrecy Order is subject to strict scrutiny, the "most rigorous form" of constitutional review. *Murphy-Brown*, 907 F.3d at 796-797. Under strict scrutiny, the court may sustain the order only if it is "the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 573 U.S. 464, 478 (2014). To make that showing, the government must "specifically identify an 'actual problem'" and demonstrate that "the curtailment of free speech" is "actually necessary to the solution." *Brown v. Entertainment Merchants Association*, 564 U.S. 786, 799 (2011). And if the challenger offers "a

plausible, less restrictive alternative," the government must come forward with "hard evidence" proving that "the alternative will be ineffective to achieve its goals." *Playboy*, 529 U.S. at 816, 819. The government "bears the risk of uncertainty" in this inquiry, so "ambiguous proof will not suffice." *Brown*, 564 U.S. at 799-800.

The Court should reject any invitation to water that standard down. Relying on *Seattle Times Company v. Rhinehart*, 467 U.S. 20 (1984), the government has maintained that "a party's First Amendment right to speak or disseminate information is sharply reduced where the party obtains the information in the course of non-public litigation or an investigation." JA169; *see* JA309. But *Seattle Times* has no application here. It concerned a First Amendment challenge to a protective order by a party wishing to disclose information obtained in civil litigation after the district court compelled discovery. 467 U.S. at 23, 27-28. The Supreme Court upheld the order, reasoning that it was not a "classic prior restraint" because it restricted the would-be speaker "from disseminating only that information obtained through use of the discovery process." *Id.* at 33-34. The "rationale of *Seattle Times*" is that a court may limit a party from disclosing information it voluntarily obtained "'only by virtue of the trial court's discovery processes.'" *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1052 (1991); *see United States v. Aguilar*, 515 U.S. 593, 606 (1995). LinkedIn, by contrast, did not

learn about the D-Order voluntarily or through discovery. As numerous courts have recognized, *Seattle Times* is not "instructive under these circumstances." *Matter of Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020); *see Doe v. Gonzales*, 386 F.Supp.2d 66, 74-75 (D. Conn. 2005).

### B. The Secrecy Order Cannot Survive Strict Scrutiny

#### *1. The Government's Only Compelling Interest Is In Protecting The Integrity Of The Investigation, Not Secrecy As Such*

Section 2705(b) defines the interests a Secrecy Order must serve. It provides that a court "shall enter" such an order if "there is reason to believe" disclosing a § 2703(d) order "will result in": "(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." 18 U.S.C. § 2705(b). The government has at times articulated its interest as "protecting the investigation's integrity." CA4 Dkt. 11 at 9. LinkedIn does not dispute that this interest is both consistent with § 2705(b) and compelling.

A generalized interest in the confidentiality of the D-Order or investigation, however, cannot justify the Secrecy Order, as the district court and government have elsewhere suggested. *See* JA12 ("Section 2705(b) serves the purpose of protecting the confidentiality of an ongoing pre-indictment investigation[.]"); JA11 (similar). Congress did not make secrecy for its own sake a permissible basis for a

§ 2705(b) order; it made transparency the norm. *See supra* p. 6. Justice Department guidance also emphasizes that disclosure of legal process is the baseline and that the government should seek secrecy orders "only … when circumstances require." DOJ, *Policy Regarding Applications for Protective Orders Pursuant to 18 U.S.C. § 2705(b)*, at 2 (Oct. 19, 2017). Similarly, the rules governing grand-jury secrecy do not restrict the speech of grand-jury witnesses, who are akin to § 2703(d) order recipients. Fed. R. Crim. P. 6(e) advisory committee note to 1944 amendment.

2. *The Secrecy Order Is Not The Least Restrictive Means Of Protecting The Investigation's Integrity*

Assuming the government's interest is in "protecting the investigation's integrity," CA4 Dkt. 11 at 9, the Secrecy Order is not the least restrictive means of achieving that interest. The Secrecy Order prohibits disclosure of the D-Order to "any other person." JA45. In response to that blanket prohibition, LinkedIn proposed a less-restrictive alternative: modifying the Secrecy Order to permit disclosure of the D-Order to a single [redacted] attorney, who would also be subject to the Secrecy Order. JA105-108. [redacted]

[redacted]

[redacted] As discussed, to the extent feasible, the D-Order must be narrowed to exclude records not relevant to the government's investigation. *See supra* pp. 21-24. [redacted]

Presented with LinkedIn's alternative, the government did not come forward with "hard evidence" demonstrating that the alternative would be "ineffective" at

maintaining the investigation's integrity. *See Playboy*, 529 U.S. at 816. At least in the materials LinkedIn has been permitted to view, the government has offered literally no case-specific evidence. It cited nothing supporting its position that LinkedIn's proposal would threaten *this* investigation. And according to the magistrate judge, the government's *ex parte* materials also have little to say about the proposal or the Secrecy Order more generally. JA40 n.8 ("[T]he *ex parte* filings … did not significantly influence my recommendation to deny LinkedIn's motion[.]"); JA246 ("I don't think the *ex parte* submission moved the needle all that much."); JA242 (similar). Thus, to rebut LinkedIn's alternative, the government has marshaled at most de minimis proof. The district court should have found that failure dispositive. Instead, it concluded that LinkedIn's proposal would not "'be at least as effective in achieving'" the government's interests, JA12, accepting arguments from the government that do not carry its "heavy burden," *Pentagon Papers*, 403 U.S. at 714.

The district court pointed out that some courts have declined to modify Secrecy Orders in other cases. JA12-13; JA19; *see also* JA173-174; JA314. But merely citing cases does not address whether disclosure to [redacted] attorney is likely to compromise *this* investigation. [redacted]

[redacted]

*In re Sealed Case*, 77 F.4th 815 (D.C. Cir. 2023), is likewise inapposite. In that case, the warrant recipient sought to notify the target of the investigation or his agents. *Id.* at 822-823, 827. Here, by contrast, LinkedIn seeks to notify a third party. Furthermore, the investigation target in *In re Sealed Case* had a well-documented pattern of "obstructive efforts" with respect to multiple criminal investigations, including the instant one. U.S. Answering Br. 22-23, *In re Sealed Case*, No. 23-5044, 2023 WL 6037559 (D.C. Cir. Apr. 21, 2023) (describing efforts to obstruct and impede investigations). That fact, as the district court there explained, provided a "compelling reason for preventing [the Warrant recipient] from disclosing the Warrant" to him or his agents. *In re Matter of the Search of: Information That Is Stored At Premises Controlled by Twitter Inc. Identified in*

*Attachment A*, No. 23-SC-31 (D.D.C. Mar. 3, 2023), Dkt. 32-1 at 23-24 & n.6 (redacted); *id.* at 2 & n.2 (partially redacted), 6-7 & n.4 (redacted); *accord Sealed Case*, 77 F.4th at 831 & n.6 (redacted). [redacted]

Finally, the district court relied on *In re Grand Jury Subpoena to Google, LLC Dated March 20, 2019*, 2020 WL 1350395 (S.D.N.Y. Jan. 31, 2020), for the proposition that § 2705(b) does not require the government to prove that no modification is possible "'without causing an enumerated harm.'" JA12-13. But the question is what the First Amendment requires. And under strict scrutiny, "[i]f a less restrictive alternative would serve the Government's purpose," the government "must use that alternative." *Playboy*, 529 U.S. at 813.

The district court also erred insofar as it accepted the government's assertion [redacted] As explained, the government's compelling interest is in "the investigation's integrity," CA4 Dkt. 11 at 9, not nondisclosure for its own sake, *supra* pp. 39-40. [redacted]

[8] It is unclear whether the district court adopted this rationale, which was offered by the magistrate judge, but to the extent that it did so it was wrong. JA13-14.

[redacted] As the Supreme Court has "reaffirm[ed] simply and emphatically," "the First Amendment does not permit the State to sacrifice speech for efficiency." *Riley v. National Federation of the Blind of North Carolina, Inc.*, 487 U.S. 781, 795 (1988). [redacted]

[redacted] That argument is a non sequitur. The First Amendment question is whether the restriction on LinkedIn's speech can be reduced without compromising the investigation's integrity. [redacted]

---

[redacted]

Finally, the district court asserted that "LinkedIn's proposed plan would not effectively narrow the production of non-content records," because [redacted] attorney "would not know" which records "are relevant to the Government's case." JA13. It also posited that [redacted] attorney might "have an incentive to be underinclusive in the disclosure of non-content records to the Government, which would only further prove the solution to be an unworkable and implausible alternative." JA13. Even if these criticisms were well founded, they make no difference. The First Amendment inquiry asks only if LinkedIn's proposal would be ineffective at "protecting the investigation's integrity." CA4 Dkt. 11 at 9. In any event, the district court's criticisms are misconceived: LinkedIn has never suggested that [redacted] alone would review the requested records and decide what to produce. Rather, as explained, disclosure would enable [redacted] to supply information that only it possesses to aid the district court in narrowing the D-Order to exclude irrelevant material. *See supra* p. 41.

[redacted]

[redacted]

The rationales the district court accepted here for denying [redacted] an opportunity to provide similar assistance were plainly inadequate. When applying strict scrutiny to speech regulations, the Supreme Court has rejected governmental say-so and "anecdotal evidence," because such proffers do not adequately demonstrate "the true nature and extent of the risk" the restrictions target. *Playboy*, 529 U.S. at 819. It has even dismissed empirical studies because they showed mere "correlation" between the targeted speech and the identified harm, not "'causation.'" *Brown*, 564 U.S. at 800. The government here has offered nothing as compelling as that. Indeed, it has produced no public evidence and apparently scant *ex parte* evidence demonstrating that the Secrecy Order cannot be

modified. *See supra* pp. 41-42. [redacted]

*3.* [redacted]

Even if all of that did not suffice to reverse and remand here—and it does— [redacted]

[10] The district court also erred in suggesting that the Secrecy Order is narrowly tailored because it is "temporary." JA11-12. A prior restraint's "temporary nature" does not make it any less constitutionally offensive. *Stuart*, 427 U.S. at 539; *see also Pentagon Papers*, 403 U.S. at 714 (invalidating temporary prior restraint); *Carroll*, 393 U.S. at 180 (same). To the contrary, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

[redacted] the government offered no additional evidence of a "direct causal link" between [redacted] attorney learning about the D-Order and a reasonable likelihood of serious jeopardy to the investigation. *Brown*, 564 U.S. at 799-800. [redacted] Accordingly, strict scrutiny requires the Secrecy Order to be modified.

[redacted]

[redacted]

[redacted]

[redacted] At a minimum, the district court should have resolved its doubts by demanding clarity from the government, not denying relief to LinkedIn. As the court acknowledged, "LinkedIn is placed between a rock and a hard place," [redacted]

[redacted] that does not justify continuing to restrict LinkedIn's speech. The district court was required to, but did not, assess whether the government had demonstrated that [redacted] would "seriously jeopardiz[e] [the] investigation." 18 U.S.C. § 2705(b). Had it properly conducted that analysis, it would have ruled for LinkedIn.

## III. THE DISTRICT COURT ERRED BY UPHOLDING THE SECRECY ORDER BASED ON *EX PARTE* EVIDENCE WITHHELD FROM LINKEDIN

The Secrecy Order compounds one constitutional infirmity with another: To obtain and sustain that order, the government submitted *ex parte* evidence and arguments shielded from adversarial testing. "Efforts to inject secret evidence into judicial proceedings present obvious constitutional concerns." *TikTok Inc. v. Garland*, 604 U.S. 56, 82 (2025) (Gorsuch, J., concurring). Those concerns are only heightened when that secret evidence is used to infringe a separate constitutional right. To the extent the district court relied on *ex parte* material to sustain the Secrecy Order, due process required that LinkedIn be permitted to contest that evidence. To the extent that the district court did not, there is no record evidence to sustain the order.

The Secrecy Order's "violation of [LinkedIn's] First Amendment rights … trigger[s] protection of the Due Process Clause." *Blankenship v. Louisville-Jefferson County*, 162 F.4th 644, 661 (6th Cir. 2025). Due process "demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *United States v. Abuhamra*, 389 F.3d 309, 322 (2d Cir. 2004); *see also Interstate Commerce Commission v. Louisville & Nashville Railroad Company*, 227 U.S. 88, 93 (1913) ("All parties must be fully apprised of the evidence submitted or to be considered, and must be given

opportunity … to inspect documents, and to offer evidence in explanation or rebuttal.”). “Only in the most extraordinary circumstances” may a court “rel[y] upon *ex parte* evidence to decide the merits of a dispute,” *Abourezk v. Reagan*, 785 F.2d 1043, 1061 (D.C. Cir. 1986), because *ex parte* materials “‘conflict with a fundamental precept of our system of justice [that] a fair hearing requires a reasonable opportunity to know the claims of the opposing party and to meet them,’” *United States v. Microsoft Corporation*, 56 F.3d 1448, 1464 (D.C. Cir. 1995); *see also Thompson v. Greene*, 427 F.3d 263, 269 n.7 (4th Cir. 2005) (*ex parte* materials “‘in an adjudicatory proceeding are … fundamentally at variance with our conceptions of due process’”). After all, “fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights.” *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170 (1951) (Frankfurter, J., concurring).

These due process concerns are at their zenith when the government relies on *ex parte* materials “in derogation of basic constitutional rights.” *In re Taylor*, 567 F.2d 1183, 1189 (2d Cir. 1977). *Ex parte* evidence inhibits the parties from engaging in truly adversarial presentation and thus “‘substantially dilute[s]’” “‘[t]he value of a judicial proceeding.’” *Id.* at 1188. For that reason, undisclosed materials “are extraordinary events in the constitutional framework because they

deprive the parties against whom they are directed of the root requirements of due process." *Id.* at 1187-1188.

Here, moreover, the government's use of secret evidence meant that it was not put to its First Amendment burden. Because the Secrecy Order must satisfy strict scrutiny, *see supra* p. 35, the government was required not merely to plead, but to prove, with "specific evidence," that its speech restriction is narrowly tailored to serve a compelling interest. *Playboy*, 529 U.S. at 820. Yet "[i]n the absence of evidence and argument offered by both sides and of their participation in the formulation of value judgments, there is insufficient assurance of the balanced analysis and careful conclusions which are essential in the area of First Amendment adjudication." *Carroll*, 393 U.S. at 183.

In opposing the Secrecy Order, LinkedIn was handicapped in its ability to test the government's proof. LinkedIn could not assess whether the government's prior restraint rested on "'‘unsupported assertions,'" *Ibanez v. Florida Department of Business & Professional Regulation, Board of Accountancy*, 512 U.S. 136, 143 (1994), or simply stated secrecy interests "at a high level of generality," *Fulton v. City of Philadelphia*, 593 U.S. 522, 541 (2021). The government was therefore not required, under adversarial testing, to prove that a blanket prohibition on LinkedIn's speech was really the least restrictive means available. The

Constitution does not countenance strict scrutiny-lite simply because it is burdensome for the government to disclose the basis for its suppression of speech.

In reaching the contrary conclusion, the district court misconstrued this Court's—and the lower court's—decision in *In re United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F.Supp.2d 114 (E.D. Va. 2011) ("*Appelbaum I*"), *mandamus denied*, 707 F.3d 283 (4th Cir. 2013) ("*Appelbaum II*"). The district court therefore believed, erroneously, that LinkedIn's due process challenge was settled by precedents that did not grapple with the issues raised here.

First, the district court mistakenly understood LinkedIn to be raising "essentially the same argument" this Court rejected in *Appelbaum II*. JA14. But *Appelbaum II* involved a different theory of disclosure under a different constitutional provision under materially different circumstances. There, the targets of the § 2703(d) order sought to unseal and publicly docket the challenged order, all documents relating to that order, and all other § 2703(d) orders related to the government's investigation, asserting a First Amendment right of public access to the court's proceedings. 707 F.3d at 288. In that context, this Court explained that § 2703(d) orders are subject to a level of secrecy different from "'the practices and procedures employed in connection with other judicial proceedings,'" and therefore there was not a presumptive right of public access. *Appelbaum II*, 707 F.3d at 292. Nothing in that limited holding on the *public* right to access § 2703(d)

orders generally speaks to the well-established due-process rights of a *party* to access the evidence on which a court relies to justify restricting that party's constitutional rights.

Next, the district court looked to *Appelbaum I* for support, but that decision is further afield. There, the court addressed whether subscribers had a due process right to a pre-deprivation hearing before the court could issue a § 2703(d) order. The challengers "cite[d] only one relevant due process case, *Mathews v. Eldridge* [424 U.S. 319 (1976)]," and the court pointed to the availability of meaningful post-deprivation process, including a "civil or administrative action," criminal "pretrial motions," or "a *Bivens* action," as obviating the need for a pre-deprivation hearing. *Appelbaum I*, 830 F.Supp.2d at 139-142. A decision about the *timing* of a due process hearing says nothing about the *substance* of that hearing.

*Appelbaum I* acknowledged that challengers were entitled to a constitutionally adequate hearing. As longstanding precedent makes plain, it "would nullify the right to a hearing" if a "party does not know what evidence is offered or considered, and is not given an opportunity to test, explain, or refute" that evidence. *Louisville & Nashville Railroad Company*, 227 U.S. at 93; *see also Nevels v. Hanlon*, 656 F.2d 372, 376 (8th Cir. 1981) (the "fundamental" requirement of due process is "that a litigant have an opportunity to be confronted with all adverse evidence").

Courts understand the serious due process concerns that attend reliance on secret evidence to burden a constitutional right. That is why they have consistently declined to consider such evidence in similar circumstances. *E.g.*, *TikTok*, 604 U.S. at 69 n.3; *TikTok Inc. v. Garland*, 122 F.4th 930, 970 n.11 (D.C. Cir. 2024); *China Telecom (Americas) Corporation v. FCC*, 57 F.4th 256, 264 (D.C. Cir. 2022). Even where only "very limited constitutional scrutiny" is implicated, and where the government has "legitimate[] … national security interests," courts have still noted "grave concern" with "reliance upon *in camera ex parte* evidence." *Abourezk*, 785 F.2d at 1049, 1060. And LinkedIn has far more than a "limited" interest in its right to freely speak.

Having consulted the government's *ex parte* materials, the district court was required to provide LinkedIn limited access to those materials so that LinkedIn could adequately defend its First Amendment rights. The Constitution does not permit the government to turn to secret evidence to trample constitutional rights. *See Greene v. McElroy*, 360 U.S. 474, 496 (1959) (It is an "immutable" principle "that where governmental action seriously injures an individual … the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.").

## CONCLUSION

The Court should reverse the district court's judgment and remand with instructions to quash or modify the D-Order and modify the Secrecy Order.

Respectfully submitted,

/s/ Aaron Zebley

AARON ZEBLEY
ARI HOLTZBLATT
SIDDHARTH VELAMOOR
HILARY HURD
MATT MORRIS
ANDREW NELL
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

LEAH FUGERE
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Ave, Suite 2400
Los Angeles, CA 90071
(213) 443-5312

July 8, 2026

*Counsel for LinkedIn Corporation*

## REQUEST FOR ORAL ARGUMENT

Under Federal Rule of Appellate Procedure 34(a) and Fourth Circuit Rule 34(a), LinkedIn respectfully requests oral argument. This appeal presents complex statutory and constitutional questions of significant importance to the parties and the public, and this Court's disposition would likely be aided by oral presentation. Moreover, the Court has already ordered oral argument, CA4 Dkt. 16, and the case is tentatively scheduled to be argued during the Court's September sitting, CA4 Dkt. 18.

/s/ Aaron Zebley
AARON ZEBLEY

*Counsel for LinkedIn Corporation*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the motion contains 12,999 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Aaron Zebley
AARON ZEBLEY

*Counsel for LinkedIn Corporation*

# ADDENDUM

## U.S. CONST. amend. I

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

**18 U.S.C. § 2703**

**§ 2703. Required disclosure of customer communications or records**

(a) Contents of wire or electronic communications in electronic storage.— A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures and, in the case of a court-martial or other proceeding under chapter 47 of title 10 (the Uniform Code of Military Justice), issued under section 846 of that title, in accordance with regulations prescribed by the President) by a court of competent jurisdiction. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

(b) Contents of wire or electronic communications in a remote computing service.—

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any wire or electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection—

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures and, in the case of a court-martial or other proceeding under chapter 47 of title 10 (the Uniform Code of Military Justice), issued under section 846 of that title, in accordance with regulations prescribed by the President) by a court of competent jurisdiction; or

(B) with prior notice from the governmental entity to the subscriber or customer if the governmental entity—

(i) uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena; or

(ii) obtains a court order for such disclosure under subsection (d) of this section; except that delayed notice may be given pursuant to section 2705 of this title.

(2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service—

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computing service; and

(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

(c) Records concerning electronic communication service or remote computing service.—

(1) A governmental entity may require a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications) only when the governmental entity—

(A) obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure (or, in the case of a State court, issued using State warrant procedures and, in the case of a court-martial or other proceeding under chapter 47 of title 10 (the Uniform Code of Military Justice), issued under section 846 of that title, in accordance with regulations prescribed by the President) by a court of competent jurisdiction;

(B) obtains a court order for such disclosure under subsection (d) of this section;

(C) has the consent of the subscriber or customer to such disclosure;

(D) submits a formal written request relevant to a law enforcement investigation concerning telemarketing fraud for the name, address, and place of business of a subscriber or customer of such provider, which subscriber or customer is engaged in telemarketing (as such term is defined in section 2325 of this title); or

(E) seeks information under paragraph (2).

(2) A provider of electronic communication service or remote computing service shall disclose to a governmental entity the—

(A) name;

(B) address;

(C) local and long distance telephone connection records, or records of session times and durations;

(D) length of service (including start date) and types of service utilized;

(E) telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address; and

(F) means and source of payment for such service (including any credit card or bank account number),
of a subscriber to or customer of such service when the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under paragraph (1).

(3) A governmental entity receiving records or information under this subsection is not required to provide notice to a subscriber or customer.

(d) Requirements for court order.—
A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there

are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation. In the case of a State governmental authority, such a court order shall not issue if prohibited by the law of such State. A court issuing an order pursuant to this section, on a motion made promptly by the service provider, may quash or modify such order, if the information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider.

(e) No cause of action against a provider disclosing information under this chapter.—
No cause of action shall lie in any court against any provider of wire or electronic communication service, its officers, employees, agents, or other specified persons for providing information, facilities, or assistance in accordance with the terms of a court order, warrant, subpoena, statutory authorization, or certification under this chapter.

(f) Requirement to preserve evidence.—

(1) In general.—
A provider of wire or electronic communication services or a remote computing service, upon the request of a governmental entity, shall take all necessary steps to preserve records and other evidence in its possession pending the issuance of a court order or other process.

(2) Period of retention.—
Records referred to in paragraph (1) shall be retained for a period of 90 days, which shall be extended for an additional 90-day period upon a renewed request by the governmental entity.

(g) Presence of officer not required.—Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service.

(h) Comity analysis and disclosure of information regarding legal process seeking contents of wire or electronic communication.—

(1) Definitions.—In this subsection—

(A) the term “qualifying foreign government” means a foreign government—

(i) with which the United States has an executive agreement that has entered into force under section 2523; and

(ii) the laws of which provide to electronic communication service providers and remote computing service providers substantive and procedural opportunities similar to those provided under paragraphs (2) and (5); and

(B) the term “United States person” has the meaning given the term in section 2523.

(2) Motions to quash or modify.—

(A) A provider of electronic communication service to the public or remote computing service, including a foreign electronic communication service or remote computing service, that is being required to disclose pursuant to legal process issued under this section the contents of a wire or electronic communication of a subscriber or customer, may file a motion to modify or quash the legal process where the provider reasonably believes—

(i) that the customer or subscriber is not a United States person and does not reside in the United States; and

(ii) that the required disclosure would create a material risk that the provider would violate the laws of a qualifying foreign government. Such a motion shall be filed not later than 14 days after the date on which the provider was served with the legal process, absent agreement with the government or permission from the court to extend the deadline based on an application made within the 14 days. The right to move to quash is without prejudice to any other grounds to move to quash or defenses thereto, but it shall be the sole basis for moving to quash on the grounds of a conflict of law related to a qualifying foreign government.

(B) Upon receipt of a motion filed pursuant to subparagraph (A), the court shall afford the governmental entity that applied for or issued the legal process under this section the opportunity to respond. The court may modify or quash the legal process, as appropriate, only if the court finds that—

(i) the required disclosure would cause the provider to violate the laws of a qualifying foreign government;

(ii) based on the totality of the circumstances, the interests of justice dictate that the legal process should be modified or quashed; and

(iii) the customer or subscriber is not a United States person and does not reside in the United States.

(3) Comity analysis.—For purposes of making a determination under paragraph (2)(B)(ii), the court shall take into account, as appropriate—

(A) the interests of the United States, including the investigative interests of the governmental entity seeking to require the disclosure;

(B) the interests of the qualifying foreign government in preventing any prohibited disclosure;

(C) the likelihood, extent, and nature of penalties to the provider or any employees of the provider as a result of inconsistent legal requirements imposed on the provider;

(D) the location and nationality of the subscriber or customer whose communications are being sought, if known, and the nature and extent of the subscriber or customer's connection to the United States, or if the legal process has been sought on behalf of a foreign authority pursuant to section 3512, the nature and extent of the subscriber or customer’s connection to the foreign authority’s country;

(E) the nature and extent of the provider’s ties to and presence in the United States;

(F) the importance to the investigation of the information required to be disclosed;

(G) the likelihood of timely and effective access to the information required to be disclosed through means that would cause less serious negative consequences; and

(H) if the legal process has been sought on behalf of a foreign authority pursuant to section 3512, the investigative interests of the foreign authority making the request for assistance.

(4) Disclosure obligations during pendency of challenge.--A service provider shall preserve, but not be obligated to produce, information sought during the pendency of a motion brought under this subsection, unless the court finds that immediate production is necessary to prevent an adverse result identified in section 2705(a)(2).

(5) Disclosure to qualifying foreign government.—

(A) It shall not constitute a violation of a protective order issued under section 2705 for a provider of electronic communication service to the public or remote computing service to disclose to the entity within a qualifying foreign government, designated in an executive agreement under section 2523, the fact of the existence of legal process issued under this section seeking the contents of a wire or electronic communication of a customer or subscriber who is a national or resident of the qualifying foreign government.

(B) Nothing in this paragraph shall be construed to modify or otherwise affect any other authority to make a motion to modify or quash a protective order issued under section 2705.

**18 U.S.C. § 2705**

**§ 2705. Delayed notice**

(a) Delay of Notification.—

(1) A governmental entity acting under section 2703(b) of this title may—

(A) where a court order is sought, include in the application a request, which the court shall grant, for an order delaying the notification required under section 2703(b) of this title for a period not to exceed ninety days, if the court determines that there is reason to believe that notification of the existence of the court order may have an adverse result described in paragraph (2) of this subsection; or

(B) where an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury subpoena is obtained, delay the notification required under section 2703(b) of this title for a period not to exceed ninety days upon the execution of a written certification of a supervisory official that there is reason to believe that notification of the existence of the subpoena may have an adverse result described in paragraph (2) of this subsection.

(2) An adverse result for the purposes of paragraph (1) of this subsection is—

(A) endangering the life or physical safety of an individual;

(B) flight from prosecution;

(C) destruction of or tampering with evidence;

(D) intimidation of potential witnesses; or

(E) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

(3) The governmental entity shall maintain a true copy of certification under paragraph (1)(B).

(4) Extensions of the delay of notification provided in section 2703 of up to ninety days each may be granted by the court upon application, or by certification by a governmental entity, but only in accordance with subsection (b) of this section.

(5) Upon expiration of the period of delay of notification under paragraph (1) or (4) of this subsection, the governmental entity shall serve upon, or deliver by registered or first-class mail to, the customer or subscriber a copy of the process or request together with notice that—

(A) states with reasonable specificity the nature of the law enforcement inquiry; and

(B) informs such customer or subscriber—

(i) that information maintained for such customer or subscriber by the service provider named in such process or request was supplied to or requested by that governmental authority and the date on which the supplying or request took place;

(ii) that notification of such customer or subscriber was delayed;

(iii) what governmental entity or court made the certification or determination pursuant to which that delay was made; and

(iv) which provision of this chapter allowed such delay.

(6) As used in this subsection, the term "supervisory official" means the investigative agent in charge or assistant investigative agent in charge or an equivalent of an investigating agency's headquarters or regional office, or the chief prosecuting attorney or the first assistant prosecuting attorney or an equivalent of a prosecuting attorney's headquarters or regional office.

(b) Preclusion of Notice to Subject of Governmental Access.—A governmental entity acting under section 2703, when it is not required to notify the subscriber or customer under section 2703(b)(1), or to the extent that it may delay such notice pursuant to subsection (a) of this section, may apply to a court for an order commanding a provider of electronic communications service or remote computing service to whom a warrant, subpoena, or court order is directed, for such period as the court deems appropriate, not to notify

any other person of the existence of the warrant, subpoena, or court order. The court shall enter such an order if it determines that there is reason to believe that notification of the existence of the warrant, subpoena, or court order will result in—

(2) endangering the life or physical safety of an individual;

(3) flight from prosecution;

(4) destruction of or tampering with evidence;

(5) intimidation of potential witnesses; or

(6) otherwise seriously jeopardizing an investigation or unduly delaying a trial.

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July, 2026, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit via electronic mail and caused a true and correct copy of this under-seal filing to be served via electronic mail on the following:

Joshua Ferrentino
Trial Attorney
U.S. Department of Justice
joshua.ferrentino2@usdoj.gov

Brian Samuels
Assistant United States Attorney
United States Attorney's Office
One City Center
11815 Fountain Way, Suite 200
Newport News, VA 23606
brian.samuels@usdoj.gov

/s/ Aaron Zebley
AARON ZEBLEY

*Counsel for LinkedIn Corporation*