IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 26-4303

IN RE: APPLICATION OF THE UNITED STATES OF AMERICA
FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

On Appeal from the United States District Court
for the Eastern District of Virginia
at Newport News
*The Honorable Elizabeth W. Hanes, District Judge*

BRIEF OF THE UNITED STATES

Todd W. Blanche
Acting Attorney General

Theophani K. Stamos
First Assistant United States Attorney

John A. Eisenberg
Assistant Attorney General
National Security Division

Brian J. Samuels
Assistant United States Attorney
One City Center
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
(757) 591-4032

Joshua T. Ferrentino
Trial Attorney
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
(202) 305-4710

*Attorneys for the United States of America*

# Table of Contents

**Page**

Table of Authorities ................................................................................. iii

Introduction ................................................................................................1

Issues Presented ........................................................................................2

Statement of the Case.................................................................................2

    A.    The Stored Communications Act authorizes the government to obtain records from communications providers....................................2

    B.    In connection with an ongoing criminal investigation, the government obtains an 18 U.S.C. § 2703(d) order and accompanying 18 U.S.C. § 2705(b) order.............................................6

    C.    A magistrate judge denies LinkedIn's motion to quash or modify the D-Order and to modify the NDO .....................................................8

    D.    The district court affirms the magistrate judge's orders ....................10

Summary of Argument ..............................................................................10

Argument...................................................................................................13

I.    The district court did not abuse its discretion in denying LinkedIn's motion to quash or modify the D-Order .......................................................13

    A.    LinkedIn lacks standing to challenge the D-Order ............................13

        1.   LinkedIn lacks standing to bring its statutory claim.....................15

        2.   LinkedIn lacks standing to ███████████████████ .......16

    B.    LinkedIn does not satisfy the statutory grounds to quash or modify a § 2703(d) order .................................................................19

i

C. LinkedIn has not established grounds to modify or quash the D-Order ███████████████████████████████████...............27

    1. ████████████████████████████ to quash or modify the D-Order...................................................28

    2. Even if the ███████████████████████████ ███████, LinkedIn is not entitled to relief on the record here..........................................................................36

II. The district court properly denied LinkedIn's request to modify the NDO......................................................................39

    A. The ██████ NDO passes constitutional muster...............................41

        1. The NDO furthers a compelling government interest...................43

        2. The NDO is narrowly tailored ......................................44

    B. LinkedIn's ██████████████████████████ ████ would defeat the purpose of the NDO and serve no useful purpose .........................................................46

    C. ████████████████████████████████ is irrelevant........................................................49

III. The district court did not abuse its discretion in denying LinkedIn's request to examine the *ex parte* materials supporting the D-Order and NDO................................................................50

Conclusion ..............................................................................56

Statement Regarding Oral Argument .......................................57

Certificate of Compliance ........................................................57

**Table of Authorities**

**Page(s)**

**Cases**

*In re § 2703(d)*, 787 F. Supp. 2d 430 (E.D. Va. 2011) ............................................25

*Matter of Appl. of U.S. for an Order of Nondisclosure*,
    41 F. Supp. 3d 1 (D.D.C. 2014) ...............................................................52

*In re Appl. of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*,
    707 F.3d 283 (4th Cir. 2013) ................................................ passim

*In re Appl. of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*,
    830 F. Supp. 2d 114 (E.D. Va. 2011) ....................................... 24, 25

*In re Appl. of the U.S.*, 2025 WL 1140446 (E.D. Va. Apr. 9, 2025) .........................3

███████████████████████████████████████████████

*Burke v. City of Charleston*, 139 F.3d 401 (4th Cir. 1998) ....................................17

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617 (1989) ...................18

*Cook v. Howard*, 484 F. App'x 805 (4th Cir. 2012) ...............................................27

*Davis v. Fed. Elec. Comm'n*, 554 U.S. 724 (2008) ......................................... 13, 14

*Doe v. Ashcroft*, 334 F. Supp. 2d 471 (S.D.N.Y. 2004) ..........................................41

*Doe v. Mast*, 173 F.4th 524 (4th Cir. 2026) ..................................... 39, 40, 41

*Eisenstadt v. Baird*, 405 U.S. 438 (1972) .............................................................18

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ........................... 13, 14, 15

*Fischer v. United States*, 603 U.S. 480 (2024) .......................................................20

*Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*,
    734 F.3d 296 (4th Cir. 2013) .........................................................14

*Google LLC v. United States*,
    2025 WL 778150 (D.D.C. Feb. 25, 2025) ........................................ 19, 21

*Google LLC v. United States*, 443 F. Supp. 3d 447 (S.D.N.Y. 2020) .. 43, 44, 45, 47

███████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████

*In re Grand Jury Subpoena to Google, LLC Dated Mar. 20, 2019*,
    2020 WL 13505395 (S.D.N.Y. Jan. 31, 2020) ...................................... passim

*In re Grand Jury Subpoena*, 646 F.3d 159 (4th Cir. 2011) .......................13

*Greene v. McElroy*, 360 U.S. 474 (1959) ...........................................53

*Kowalski v. Tesmer*, 543 U.S. 125 (2004) ..........................................18

*Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199 (4th Cir. 2020)..................18

*Media Gen. Operations, Inc. v. Buchanan*,
    417 F.3d 424 (4th Cir. 2005) ................................................50

*Peterson v. Nat'l Telcommcn's & Info. Admin.*,
    478 F.3d 626 (4th Cir. 2007) ........................................ 15, 17

*Powers v. Ohio*, 499 U.S. 400 (1991) ........................................ 16, 17

*In re Sealed Case*, 77 F.4th 815 (D.C. Cir. 2023) ...................... 44, 45, 49

*Matter of Search of Info. Associated with E-Mail Accts.*,
    468 F. Supp. 3d 556 (E.D.N.Y. 2020).........................................44

████████████████████████████

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)................... 39, 40, 41

*Matter of Subpoena 2018R00776*, 947 F.3d 148 (3d Cir. 2020).......... 43, 44, 45, 47

*In re Subpoena Duces Tecum to AOL, LLC*,
    550 F. Supp. 2d 606 (E.D. Va. 2008) ........................................27

*Taylor v. Farmer*, 13 F.3d 117 (4th Cir. 1993).....................................25

*Twitter, Inc. v. Sessions*, 2017 WL 5751299 (N.D. Cal. Nov. 28, 2017) ...............44

*United States v. Chatrie*, 136 F.4th 100 (4th Cir. 2025) (en banc)...........4

*United States v. Cohen*, 366 F. Supp. 3d 612 (S.D.N.Y. 2019).....................54

*United States v. Hartwell*, 448 F.3d 707 (4th Cir. 2006)........................14

*United States v. Marshall*, 872 F.3d 213 (4th Cir. 2017) ........................4

*United States v. Midgette*, 478 F.3d 616 (4th Cir. 2007).......................14

*United States v. Ortiz-Orellana*, 90 F.4th 689 (4th Cir. 2024)...........4, 24

*United States v. R. Enters., Inc.*, 498 U.S. 292 (1991) ........................ 24████

*United States v. Warrant*, 2017 WL 3669564 (D.N.J. Aug. 15, 2017) ...................45

**Statutes**

Stored Communications Act, 18 U.S.C. §§ 2701–2711 ............................................2

      18 U.S.C. § 2703............................................................................ passim

      18 U.S.C. § 2705............................................................................ passim

      18 U.S.C. § 2706............................................................................ 5, 20, 52

**Other Authorities**

Orin S. Kerr, *A User's Guide to the Stored Communications Act,*
      *& A Legislator's Guide to Amending It,*
      72 Geo. Wash. L. Rev. 1208 (2004).......................................................3, 25

S. Rep. No. 99-541 (1986) ............................................................................ 19, 20

# Introduction

This case involves a routine application of the Stored Communications Act. In connection with an ongoing criminal investigation ███████████████ ███████████████████████, the government sought and received an 18 U.S.C. § 2703(d) order for ███████████████████████████ ███████████████████████████ (the "D-Order"). ████████████ ████████████████████████████████████████████

███████ To protect the integrity of its investigation, the government also sought and received an order under 18 U.S.C. § 2705(b) ███████████████████████ ████████████████████████████████████████████ (the "NDO"). In response to the D-Order, LinkedIn ████████████████ ███████████████. ████████████████████████████████ ████████████████████████

Nonetheless, LinkedIn has resisted production and continues to fight both orders. On appeal, LinkedIn challenges the denial of its motion to quash or modify the D-Order, the denial of its request to modify the NDO ███████████ ████████████████████████, and the denial of LinkedIn's request to examine the *ex parte* materials proffered by the government in support of the D-Order and NDO. Because LinkedIn is not entitled to the relief it seeks, this Court should affirm the district court's orders.

## Issues Presented

**1.** Did the district court abuse its discretion in declining to quash or modify an order issued under 18 U.S.C. § 2703(d) requiring LinkedIn to ███████ ███████████████████████████████████████████████████ ██████████, where LinkedIn has demonstrated no undue burden in its complying with the order?

**2.** Did the district court err in declining to modify its ████████ non-disclosure order under 18 U.S.C. § 2705(b)?

**3.** Did the district court abuse its discretion in declining to allow LinkedIn to examine the *ex parte* materials submitted by the government in support of its 18 U.S.C. § 2703(d) application and accompanying non-disclosure order?

## Statement of the Case

**A. The Stored Communications Act authorizes the government to obtain records from communications providers.**

The Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2711, "was enacted to protect the privacy of users of electronic communications . . . , while providing an avenue for law enforcement entities to compel a provider of electronic communication services to disclose the contents and records of electronic communications." *In re Appl. of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)* ("*Appelbaum*"), 707 F.3d 283, 286–87 (4th Cir. 2013).

The SCA authorizes three forms of compulsory process for the government to obtain a provider's non-content records without prior notice to the account subscriber or customer, effectively "creat[ing] a sliding scale that balances the type of information the government can obtain, the showing the government must make to obtain it, the subscriber's privacy rights to the information, and the notice (if any) that must be provided by the government to the subscriber." *In re Appl. of the U.S.*, 2025 WL 1140446, at *3 (E.D. Va. Apr. 9, 2025).[1] The statute "gives greater privacy protection to content information for reasons that most people find intuitive: actual contents of messages naturally implicate greater privacy concerns than information (much of it network-generated) about those communications." Orin S. Kerr, *A User's Guide to the Stored Communications Act, & A Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1228 (2004).

This appeal concerns a so-called "d-order," issued pursuant to § 2703(d), which permits a court to compel a provider to "disclose a record or other information pertaining to a subscriber to or customer of such service (not including the contents of communications)." 18 U.S.C. § 2703(c)(1), (d). While grand jury subpoenas may be issued without court involvement and search warrants require a showing of

---

[1] Additional provisions govern the process to obtain the content of communications ██████████████████████████████████████████ ██████████████████████████████████████████ .

probable cause to a judicial officer, d-orders occupy a middle ground. They may issue from a court where the government "offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation." *Id.* § 2703(d). This Court has described this requirement as "essentially a reasonable suspicion standard." *Appelbaum*, 707 F.3d at 287; *see also, e.g., United States v. Ortiz-Orellana*, 90 F.4th 689, 696 n.3 (4th Cir. 2024); *cf. United States v. Chatrie*, 136 F.4th 100, 147–48 (4th Cir. 2025) (en banc) (Berner, J., concurring, joined by Gregory, Wynn, Thacker, Heytens, & Benjamin, J.J., in relevant part) (noting that court orders are "subject to a lower standard of proof than search warrants" and, "[t]o obtain a court order, the government merely needs to put forth 'specific and articulable facts showing that there are *reasonable grounds to believe*' that the records sought are 'relevant and material to an ongoing criminal investigation,'" while "[a] search warrant, in contrast, must be supported by 'the substantially higher probable cause standard'"), *rev'd on other grounds*, *Chatrie v. United States*, 609 U.S. ---- (2026).[2]

---

[2] The government has omitted internal quotation marks, alterations, and citations throughout this brief, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

Congress established that when the government obtains a d-order for records from a provider, the government "is not required to provide notice to a subscriber or customer" whose records may be produced. 18 U.S.C. § 2703(c)(3). Congress further authorized a court to order a provider "not to notify any other person" of the existence of the d-order if the court "determines that there is reason to believe that notification of the existence of" the order will result in any one of five enumerated harms. *See id.* § 2705(b).

Most SCA providers are entitled to reimbursement for direct expenses "incurred in searching for, assembling, reproducing, or otherwise providing" information responsive to SCA process. *Id.* § 2706(a). Providers and their agents also enjoy complete immunity from liability (to customers or otherwise) for complying with process issued under § 2703. *See id.* § 2703(e).

Finally, Congress authorized a provider to challenge an order under § 2703(d) if the "records requested are unusually voluminous" or "compliance with such order otherwise would cause an undue burden on such provider." *Id.* § 2703(d). Almost identical "undue burden" language appears in the section of the SCA regarding cost reimbursement. *See id.* § 2706(c) ("if the court determines the information required is unusually voluminous in nature or otherwise caused an undue burden on the provider").

**B.** **In connection with an ongoing criminal investigation, the government obtains an 18 U.S.C. § 2703(d) order and accompanying 18 U.S.C. § 2705(b) order.**

In November 2025, on the *ex parte* application of the government, Magistrate Judge Robert J. Krask issued an order pursuant to 18 U.S.C. § 2703(d) ████████. ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████. JA44–49 (the "D-Order"). The magistrate judge found ████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████████████████████ JA44.

The magistrate judge also ████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ████████████████ JA44 (citing 18 U.S.C. § 2705████████████). Accordingly, the D-Order ██████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████ ██████████████████████████████████████████

██████  JA45 (the "NDO"). The magistrate judge also sealed the application materials, the D-Order, and constituent NDO ██████████████. JA45.

LinkedIn, a wholly owned subsidiary of Microsoft Corporation, is a social media company that describes itself as "██████████████████████

██████████████████" worldwide. JA55. LinkedIn allows its users to register accounts using their email address, and to post online profiles with such information as "██████████████████████████████

██████████████." JA115. ██████████████████

████████████████████████████████████

████████████████████████ JA115. ██████████████

████████████████████████████████████

████████████████████████████████████

██████████████ JA116.

When the D-Order was served ██████████████████

████████████████████████████████████

████████████████████████████████████. *See*

JA116. ██████████████████████████████

████████████████████████████████████

██████ JA116–117.

[REDACTED] JA57; JA264; *see also* JA24. [REDACTED]

[REDACTED]

### C. A magistrate judge denies LinkedIn's motion to quash or modify the D-Order and to modify the NDO.

In December 2025, LinkedIn moved to quash or modify the D-Order. It argued that [REDACTED]

[REDACTED]

[REDACTED] JA88. It also sought to modify the NDO [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED] JA88.

In support of its motion to quash, LinkedIn [REDACTED]

[REDACTED]. JA116.

[REDACTED]

[REDACTED]



██████████████████████████████████████████████

██████████████████████████████████████████████

█████████████ JA117. ███████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████ *Contra*

Def. Br. 9; *see* JA114–119.

LinkedIn's motion to quash also ██████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████. JA118–155. ████████████

██████████████████████████████████████████████

███████████████████████████████

The government opposed LinkedIn's motion, ███████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████. *See*

JA156–177.

In January 2026, the district court referred LinkedIn's motions to Magistrate

Judge Douglas E. Miller.  JA347.  At a hearing on the motions, LinkedIn ██████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████. JA205–206. Magistrate Judge Miller issued a written report and recommendation ("R&R") advising that LinkedIn had standing to challenge the D-Order, but that the district court should deny LinkedIn's motion in its entirety on the merits. JA23–43.

### D. The district court affirms the magistrate judge's orders.

LinkedIn objected to Magistrate Judge Miller's R&R. In May 2026, the district court overruled LinkedIn's objections and adopted the reasoning of the R&R. JA1–15. In June 2026, LinkedIn moved the district court for reconsideration of its decision and for a stay of the D-Order pending appeal. JA321–336. The government opposed those motions, JA337–340, and the district court denied both requests, JA16–22. LinkedIn timely noted its appeal to this Court. JA341.

### Summary of Argument

Three judicial officers reviewed the government's application under 18 U.S.C. § 2703(d) ████████████████████████, and all three found "reasonable grounds to believe" the requested records are "relevant and material" to an ongoing criminal investigation. ████████████████████████

█████████████████████████████████████████████████

████████████████████████████ Nonetheless, LinkedIn raises three arguments for why it need not comply with the district court's orders. Because the

district court's orders reflect a straightforward application of the relevant statutory provisions in accordance with well-established caselaw, none of LinkedIn's arguments has merit, and the Court should affirm.

1. The district court did not abuse its discretion in declining to quash or modify the D-Order. LinkedIn lacks standing to challenge the D-Order. Even if it has standing, Congress provided only two grounds for a provider to challenge a § 2703(d) order: if (1) "the information or records requested are unusually voluminous in nature," or (2) "compliance with such order otherwise would cause an undue burden on [the] provider." 18 U.S.C. § 2703(d). Neither is present here. LinkedIn cannot demonstrate that the ███████████ responsive records ███ ███████████ are "unusually voluminous in nature," nor has it shown that production of such records "otherwise would cause an undue burden on" LinkedIn.



████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ Moreover, nothing in the factual record supports

████████████████████████████████████████

██████████████████████████████████████ *See, e.g.*, Br.

Br. 1, 17, 21, 26, 35. Ultimately, ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████. The Court should not do so. ████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

**2.** The district court properly rejected LinkedIn's request to modify the NDO ███████████████████████████████████████████████

███████████████████████████████████. LinkedIn's request finds no support in the law apart from a single district court case where the government consented to this irregular procedure, which the government did not do here, and ultimately resulted in no production whatsoever. As that failed experiment confirms, the district court accurately found ██████████████████████

███████████████ to the ██████ NDO, which █████████████████

██████████████████████████████████.

**3.** The district court did not abuse its discretion in denying LinkedIn's request to examine the government's *ex parte* submissions in support of the D-Order and NDO. The district court appropriately found that LinkedIn is not entitled to

these materials.  Indeed, LinkedIn's argument defies common sense and established practice, and is unprecedented in caselaw governing criminal investigations.

**Argument**

**I.    The district court did not abuse its discretion in denying LinkedIn's motion to quash or modify the D-Order.**

This Court reviews a district court's denial of a motion to quash or modify criminal investigative process "under an abuse-of-discretion standard of review." *In re Grand Jury Subpoena*, 646 F.3d 159, 164 (4th Cir. 2011).  "Under this standard, the district court's rulings of law are reviewed de novo and its factual findings are reviewed under the clear-error standard." *Id.*  LinkedIn lacks standing because it has not suffered an injury in fact.  Even if the Court reaches the merits, LinkedIn did not show the "records requested are unusually voluminous" or "compliance with" the D-Order "would cause an undue burden" on LinkedIn.  *See* 18 U.S.C. § 2703(d). Further, no court has recognized ████████████████████████████████, and the record does not support its factual contentions.  Therefore, the district court did not abuse its discretion in declining to quash or modify the D-Order.

**A.    LinkedIn lacks standing to challenge the D-Order.**

"Article III of the Constitution confines the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024).  "That restriction requires that the party invoking federal jurisdiction have standing . . . ." *Davis v. Fed. Elec. Comm'n*, 554 U.S. 724, 732 (2008).  "To

13

establish standing, . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *All. for Hippocratic Med.*, 602 U.S. at 380. Additionally, "[s]tanding is not dispensed in gross," and a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis*, 554 U.S. at 733. Accordingly, LinkedIn must establish standing to raise both its statutory challenge and ███████████████████ to the D-Order.

Because LinkedIn has not demonstrated that it will likely suffer an injury in fact by complying with the D-Order, it lacks standing to pursue either claim. In any event, it lacks standing to ████████████████████████████

██████████████████████.[3]

---

[3] Generally, a party "waives a right to appellate review of particular issues by failing to file timely objections specifically directed to those issues." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007). However, "subject-matter jurisdiction can never be forfeited or waived; it involves a court's power to hear a case." *United States v. Hartwell*, 448 F.3d 707, 715 (4th Cir. 2006). Accordingly, ██████████████████████████████ JA2, the Court still has "an independent obligation to assess [its] subject-matter jurisdiction," *Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc.*, 734 F.3d 296, 301 (4th Cir. 2013).

### 1. LinkedIn lacks standing to bring its statutory claim.

Injury in fact requires "an invasion of a legally protected interest which is concrete and particularized, as well as actual or imminent." *Peterson v. Nat'l Telcommcn's & Info. Admin.*, 478 F.3d 626, 631 (4th Cir. 2007). Otherwise, the Court is "without constitutional authority to consider a plaintiff's claims." *Id.* In this way, "[t]he injury in fact requirement prevents the federal courts from becoming a vehicle for the vindication of the value interests of concerned bystanders." *All. for Hippocratic Med.*, 602 U.S. at 382.

LinkedIn has not demonstrated "a realistic danger of sustaining a direct injury" by complying with the D-order. *See Peterson*, 478 F.3d at 632. Section 2703(d) authorizes a subscriber to move to quash or modify a d-order where the "records requested are unusually voluminous in nature" or "compliance with" the order "would cause an undue burden on [the] provider." ███████████████ ███████████████████████████████████████ ████████████████████████ *Contra* JA27. Instead, LinkedIn has not shown that the ████████████ responsive records are "unusually voluminous in nature" or that disclosing such records "would cause an undue burden on" LinkedIn. *See infra* Part I.B; *see also, e.g.*, *In re Grand Jury Subpoena to Google, LLC Dated Mar. 20, 2019* ("*Google, LLC*"), 2020 WL 13505395, at *5 (S.D.N.Y. Jan. 31, 2020) ("Google is correct that the statute provides it this basis to

challenge the Section 2703(d) order; however, Google does not have standing to bring this challenge because it failed to allege adequately an injury-in-fact stemming from the Section 2703(d) Order.").

Both the magistrate judge and the district judge found that LinkedIn ███ ████████████████████████████████████████████████████████ ████████████████████████████ JA8; JA29. And LinkedIn's claim that the D-Order is overbroad does not establish "a burden that is 'concrete, particularized, and actual or imminent.'" *Google, LLC*, 2020 WL 13505395, at \*5 (concluding Google lacked standing because its argument did "not show how the supposed 'burden' to Google, resulting from the Section 2703(d) Order's allegedly overbroad volume, will cause Google any real detriment").

**2. LinkedIn lacks standing to ████████████████████████.**

LinkedIn maintains it "has third-party standing to assert ███████████ █████████████████." Br. 28 n.4. "In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991). But the Supreme Court has "recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied." *Id.* at 411. First, "[t]he litigant must have suffered an injury in fact, thus giving him or her a sufficiently concrete interest in the outcome of the issue in dispute." *Id.* Second,

16

"the litigant must have a close relation to the third party." *Id.* Third, "there must exist some hindrance to the third party's ability to protect his or her own interests." *Id.* LinkedIn lacks third-party standing because it fails at least the first two requirements.

First, LinkedIn will not suffer an injury in fact by complying with the D-Order. To be sure, ████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████. But such a litigant still must "allege a distinct and palpable injury as required by Article III." *Id.*

As explained *supra*, LinkedIn has not demonstrated it is likely to suffer an injury in fact by complying with the D-Order. "Without such an injury," LinkedIn "lacks standing to ████████████████████████████████████████. *See Peterson*, 478 F.3d at 634; *see also, e.g.*, *Google, LLC*, 2020 WL 13505395, at *6 (concluding, because "Google ha[d] not demonstrated that it suffered the requisite injury-in-fact," it lacked standing to challenge § 2703(d) order "itself or on behalf of" account holders).

Second, LinkedIn also lacks third-party standing because it does not have a "close relationship" with ██████████. *See, e.g.*, *Kowalski v. Tesmer*, 543 U.S. 125, 126 (2004). ████████████████████████████████████████

████████████████████████████████████████

██████████████████ JA55.

It is true that "[c]ourts have invariably found that a vendor has a sufficiently close relationship with its customers when a challenged statute prevents that entity from transacting business with them." *Md. Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 216 (4th Cir. 2020). But this case does not implicate that line of authority, as

████████████████████████████████████████

████████████████████████████████████. Significantly, the fact that Congress conferred near-total immunity for a provider complying with a § 2703(d) order, *see* 18 U.S.C. § 2703(e), reinforces the lack of a "close relationship" between ████████████████████. *Cf. Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 n.3 (1989).

Additionally, "more important than the nature of the relationship between the litigant and those whose rights he seeks to assert is the impact of the litigation on the third-party interests." *Eisenstadt v. Baird*, 405 U.S. 438, 445 (1972). As explained *infra*, however, ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████.

Moreover, "[c]ourts have held '[t]he total omission of any additional pre-execution opportunity for a subscriber or customer to challenge a § 2703 order reflects Congress's intention to prevent such challenges.'" *Google, LLC*, 2020 WL 13505395, at *6 n.10.  Indeed, when Congress enacted § 2703(d), it contemplated that "[t]his specific standing for *the service provider* to contest an overly broad order is intended to protect *the service provider* from unduly burdensome requirements." S. Rep. No. 99-541, at 39 (1986) (emphases added).  It would thwart the statutory scheme to permit ████████████████████████████████████ ██.  *See, e.g.*, *Google LLC v. United States*, 2025 WL 778150, at *7 (D.D.C. Feb. 25, 2025) (Boasberg, C.J.) (reasoning that "[i]f <u>customers</u> do not have standing to bring pre-execution Fourth Amendment challenges to SCA warrants," then "it is doubtful that <u>providers</u> have standing to bring such challenges on their behalf").

**B.  LinkedIn does not satisfy the statutory grounds to quash or modify a § 2703(d) order.**

Congress authorized a court to quash or modify a § 2703(d) order, "on a motion made promptly by the service provider," on only two grounds: first, "if the information or records requested are unusually voluminous in nature," or, second, if "compliance with such order otherwise would cause an undue burden on such

19

provider." 18 U.S.C. § 2703(d). Significantly, these two grounds are textually linked by the term "otherwise"—which functions to narrow the statutory meaning. *See Fischer v. United States*, 603 U.S. 480, 487–91 (2024). This provision thus explicitly focuses on undue burdens to the provider and does not authorize a court to quash or modify an order based on a provider's assertions of supposed burdens on the interests of its subscribers. *See* S. Rep. No. 99-541, at 39 (emphasizing § 2703(d) "is intended to protect the service provider from unduly burdensome requirements").

This interpretation is consistent with the overall SCA scheme, including the nearly identical "undue burden" language the section regarding cost reimbursement. *See* 18 U.S.C. § 2706(c) (permitting cost reimbursement "if the court determines the information required is *unusually voluminous in nature or otherwise caused an undue burden on the provider*") (emphasis added). Indeed, read together with the general statutory entitlement of providers to cost reimbursement for direct expenses "incurred in searching for, assembling, reproducing, or otherwise providing" information responsive to SCA process, *see id.*, and the broad immunity from liability providers enjoy for complying with orders and other process issued under § 2703, *see id.* § 2703(e), it is clear that Congress did not authorize courts to entertain motions to quash on grounds other than ███████████████████ ███████████████████. JA8–9.

Well-reasoned district court opinions, including the one below, have so found. For example, in *Google LLC*, the district court affirmed the denial of Google's motion to quash a § 2703 warrant, reasoning that "[t]he language [of § 2703(d)] as a whole is oriented toward the practical difficulties of compliance, not the legal validity of the disclosure mechanism," and "focuses on disclosure orders that compel production of 'unusually voluminous records' or 'otherwise' would cause an undue burden." 2025 WL 778150, at *7. "In context," the court continued, "that 'otherwise' narrows the range of concerns to those similar in nature to the production of voluminous records—*i.e.*, practical, logistical, or concrete burdens arising from compliance." *Id.*

Similarly, another district court overruled Google's objections to SCA process that were not grounded in any undue burden to the provider itself. *Google, LLC*, 2020 WL 13505395, at *3. The court reasoned that "[t]he SCA authorizes *limited challenges* to orders issued under Section 2703" based on records being "unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on such provider." *Id.* (emphasis added). Google's argument that a warrant was "overbroad" for Fourth Amendment purposes—*i.e.*, its "sincere[] belie[f]" that the warrant was "an unlawful government intrusion"—did not demonstrate "how the supposed 'burden' to Google . . . will cause Google any 'real detriment.'" *Id.* at *2, *5–6.

The district court here correctly interpreted § 2703(d) in the same way, holding ███████████████████████████████████████████████████ ██████████████████████████████████████████████ JA8. Moreover, as the magistrate judge noted in his R&R, ███████████████ ███████████████████████████████████████████████████ JA28. ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████████ JA28; *see also* JA8. Therefore, both the magistrate judge and the district judge correctly concluded that ███████████████████████████████████████████████████ ███████████████████████████████████████████████ JA8.

The ███████████ matter—which LinkedIn relies upon as a model for narrowing an allegedly overbroad d-order, Br. 3, 23–24—offers an instructive comparison. ████████████████████████████████████████ ███████████ *See* ███████████████████████████████████████ ███████████████████ ; *see also* JA32.

The district court also properly exercised its discretion to overrule LinkedIn's objections that the D-Order was unduly burdensome because many of the records responsive to the D-Order were likely irrelevant. As the court recognized, the capture of some or even a large amount of irrelevant ████████████████████ is a

feature, not a bug, of d-orders as they exist on the "sliding scale" of the SCA's statutory framework. *See supra* pp.2–3.

As the magistrate judge observed, ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. JA257. The magistrate judge also recognized that LinkedIn sought to impose an impossible relevance standard for the use of d-orders in cases like this one:



JA210–211 (emphasis added).

Other courts have similarly recognized that the fact that § 2703(d) orders cover some or even a large volume of ultimately irrelevant information does not render them improper. This Court has repeatedly described the "specific and

articulable facts showing that there are reasonable grounds to believe" records are "relevant and material" as "essentially a reasonable suspicion standard." *See, e.g., Ortiz-Orellana*, 90 F.4th at 696 n.3; *Appelbaum*, 707 F.3d at 287. The "relevant and material" standard, paired with the "reasonable grounds to believe" requirement, does not command that "[t]he government . . . show actual relevance, such as would be required at trial." *In re Appl. of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F. Supp. 2d 114, 130 (E.D. Va. 2011). Indeed, "the notion that the government must determine the scope of a § 2703 order with great precision before the order can be issued is quite incorrect." *Id.* That is because "[t]he purpose of a criminal investigation is to find out whether crimes have occurred," which requires the government to "conduct a factual investigation." *Id.* "To restrict the government's inquiry to a single, narrow theory before it can rule out other theories would impose a significant and unjustified burden on law enforcement." *Id.*

Further, because "all evidence exists in a factual context," "[s]ome amount of what [a provider may] consider 'overbreadth' is always necessary to establish context for facts that are indisputably relevant and material" to a criminal investigation. *Id.*; *cf. United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991) ("As a necessary consequence of its investigatory function, the grand jury paints with a broad brush."). Thus, "[t]he probability that some gathered information will not be material is not a substantial objection at [the investigative] stage." *In re Appl. of the*

24

*U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F. Supp. 2d at 130; *see also In re § 2703(d)*, 787 F. Supp. 2d 430, 437 (E.D. Va. 2011) ("[T]he scope of [a § 2703(d) order] is appropriate even if it compels disclosure of some unhelpful information. Indeed, § 2703(d) is routinely used to compel disclosure of records, only some of which are later determined to be essential to the government's case.").

As the district court properly concluded, any heightened relevance requirement would be unworkable twice over. First, it is impossible for the government, when it submits its § 2703(d) application, to know whether any particular record is relevant—in fact, at that point in time, the government may not even know whether *any* such record exists, let alone whether it is *actually* relevant. Second, it is similarly impossible for a service provider to conduct any kind of "relevancy" review of the records responsive to a § 2703(d) order because the provider is not privy to the underlying criminal investigation.

This interpretation of § 2703(d) is consistent with the law governing other aspects of criminal investigations, where courts recognize that reasonable suspicion or even probable cause do not "require officials to possess an airtight case before taking action." *See Taylor v. Farmer*, 13 F.3d 117, 121–22 (4th Cir. 1993). That is particularly true where, as here, the privacy interest invaded by an investigative tool is diminished. *Cf.* Kerr, 72 Geo. Wash. L. Rev. at 1228 (distinguishing between content and non-content communications).

That a district court exercised its discretion to limit the collection of non-content records on different facts in ████████ does not command a different result here. ████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████

By contrast, here, ████████████████████████████

█████████████████████████. JA73. The issuing magistrate judge, the reviewing magistrate judge, and the district judge all found that the § 2703(d) application ████████████████████████████████████

██████████████████████████ *See* JA5; JA29; JA33–35; JA44.

Furthermore, the district court rightly declined ████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████



. JA10.

All told, ███████████████████████████████████████

████████████████████████ Br. 32, is not supported by the record.  Given ██

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████, the district court did not abuse its discretion in refusing to quash

or narrow the D-Order.

### C. LinkedIn has not established grounds to modify or quash the D-Order ██████████████████████████ ██.

Perhaps recognizing that it cannot establish grounds for quashing or

modifying the D-Order under § 2703(d), the opening brief focuses elsewhere.

███████████████████████████████████████████████

---

⁴  LinkedIn also cites authorities narrowing subpoenas in civil litigation that are not on point.  *See* Br. 31.  *Cook v. Howard* concerned a third-party subpoena issued in a civil case without judicial blessing, not the SCA or § 2703(d).  484 F. App'x 805, 812 n.7 (4th Cir. 2012).  Likewise, *In re Subpoena Duces Tecum to AOL, LLC*, involved an insurance company that sent a subpoena to AOL (again, not pursuant to § 2703(d)) seeking the *content* of various emails, some of which were subject to attorney-client privilege.  550 F. Supp. 2d 606, 612 (E.D. Va. 2008).  Both cases involved subpoenas served by civil litigants *without court review*, not criminal process issued after a magistrate judge reviewed the government's application and determined that it satisfied § 2703(d).

██████████████████████████████████████████████████

████████████████████████ Br. 18.  But ████████████████████

████████ has no basis in the caselaw.  Even if the Court disagrees, LinkedIn was

not entitled to relief because the record does not support that compliance with the D-

Order would ████████████████████████████████████

**1.** ████████████████████████████████████ **to quash or modify the D-Order.**

████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████. In that case, ██████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████. ██████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████

Accordingly, ██████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████. Further, ███████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████. And because ████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

[REDACTED] did not provide a basis for the district court to quash or modify the D-order. [REDACTED]

[black redaction bars]

Further, the record makes clear that this case [black redaction bar]

[black redaction bar]

[black redaction bar] . Three neutral and detached judicial officers found that the § 2703(d) application [black redaction bar]

[black redaction bar]

[black redaction bar]

*See* JA5; JA29; JA33–35; JA44. The reviewing magistrate judge also found that

[black redaction bar]

[black redaction bar]

 *See* JA34.  LinkedIn does not

challenge that factual finding on appeal.

███████████████████████████████████████████████████████████

████████████████████████████████████

First, ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

Second, ██████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████. ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████

Third, ██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████. ████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ Furthermore, unlike a grand jury subpoena, the D-Order required the review and approval of a neutral and detached judge, who determined that the application satisfied § 2703(d)'s "reasonable grounds to believe" standard before issuance. ████████████████████████████████████

██████████████████████████████████████████████████

Last, the government agrees that █████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████. █████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

Moreover, █████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████.

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████

Thus, the facts of ███████████████████████████████████████████

███████████████████████████████████████████████. Here, the

government ██████████████████████████████████████████████

██████████████████████████████████████████████████████████████████.



There being no authority for quashing the D-Order ████████████ ███████████████████, the district court did not abuse its discretion in declining to do so.

**2.** **Even if the** ████████████████████████████ ████████**, LinkedIn is not entitled to relief on the record here.**

Finally, even if ████████████████ could in some cases provide a basis to quash or modify a § 2703(d) order, it would not justify LinkedIn's requested relief here. That is because, as a factual matter, the record does not support ████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████ Br. 17; *see also, e.g.*, Br. 1, 21, 26, 35.

As summarized *supra*, LinkedIn ████████████████████████████
████████████████████████. JA116. ███████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

LinkedIn's motion to quash also ██████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████.  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████

That assumption is unwarranted.  Given the nature of ████████████

██████████████████████████████████████████████, it is just as

likely that ████████████████████████████████████████

██████████  ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████ But the Court cannot

assume without record support that ████████████████████

████████████████████████████.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████



And as the magistrate judge recognized, LinkedIn has little basis on which to draw this conclusion: ███████████████ ███████████████████████████████████████████ ███████████████████████ JA221.

Thus, the record does not support the contention that compliance with the D-Order would result in ████████████████████████████████ ██████. Even under ███████████████████████, the district court did not abuse its discretion in declining to modify or quash the D-Order on this basis.

## II. The district court properly denied LinkedIn's request to modify the NDO.

Next, LinkedIn challenges the denial of its motion to modify the NDO █ ████████████████████████████████████████████████████.

As a threshold matter, LinkedIn's insistence that strict scrutiny applies is wrong. While the NDO technically is a content-based prior restraint on LinkedIn's speech, it is unique because it "merely restrict[s] the dissemination of information obtained through" the SCA compulsory process and related litigation—it does not prevent LinkedIn from speaking about or sharing information learned independently of this matter. *See Doe v. Mast*, 173 F.4th 524, 535 (4th Cir. 2026). "That distinction matters" because, under *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), "an

order limiting dissemination of information gained through" a court's "coercion-backed processes" "is not the kind of classic prior restraint that requires exacting First Amendment scrutiny." *Doe*, 173 F.4th at 535 (quoting *Rhinehart*, 467 U.S. at 33). Accordingly, *Rhinehart*'s "more deferential 'good cause' standard" applies. *Id.*

Despite that precedent, ████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ . ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

The NDO, which is temporary in duration and appropriate to protect the government's undisputed interest in the integrity of the investigation, passes constitutional muster (whether under *Rhinehart* or otherwise) on its own terms. ██

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ Neither is a reasonable conclusion here, including for many of the reasons already discussed above. And the district court correctly found that ████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████. For these reasons, the district

court properly declined to modify the NDO.

A. The ███████ NDO passes constitutional muster.

LinkedIn contends that the NDO must be modified to survive strict scrutiny.

But the NDO "is not the kind of classic prior restraint that requires exacting First

Amendment scrutiny," *Doe*, 173 F.4th at 535 (quoting *Rhinehart*, 467 U.S. at 33),

and, regardless of the precise level of scrutiny applied, the NDO survives as a

temporary, limited measure to protect the government's interest in the integrity of

an ongoing criminal investigation.

As both the Supreme Court and this Court have recognized, a party's First

Amendment right to speak or disseminate information is sharply reduced where the

party obtains the information during non-public litigation or an investigation. *See*

*Rhinehart*, 467 U.S. at 32; *Doe*, 173 F.4th at 535. Following *Rhinehart*, various

courts have recognized the "basic principle . . . that laws which prohibit persons

from disclosing information they learn solely by means of participating in

confidential government proceedings trigger less First Amendment concerns than

laws which prohibit disclosing information a person obtains independently." *Doe v.*

*Ashcroft*, 334 F. Supp. 2d 471, 518 (S.D.N.Y. 2004), *vacated on other grounds*, *Doe*

*v. Gonzalez*, 449 F.3d 415 (2d Cir. 2006). "Stated another way, the Government has

at least some power to control information which is its 'own creation,' and to which there is otherwise 'no First Amendment right of access.'" *Id.*; *see also Appelbaum*, 707 F.3d at 292 ("there is no First Amendment right to access" § 2703(d) orders or proceedings).

Thus, in the context of § 2703(d) orders, courts have cited *Rhinehart* to reject challenges to routine, temporary non-disclosure orders like the NDO. For example, a district court relied on *Rhinehart* to reject a challenge by Google to two non-disclosure orders related to a grand jury subpoena and a § 2703(d) order, explaining that "the minimal restraints imposed by the [non-disclosure orders] do not significantly curtail Google's First Amendment rights." *See Google, LLC*, 2020 WL 13505395, at *8–9. When "a recipient of a non-disclosure order learns that an order has been issued only by virtue of his or her particular role in the underlying investigation . . . it presumptively does little violence to First Amendment values to impose an obligation of at least some secrecy." *Id.*

The same is true here. LinkedIn knows about the D-Order only because it was served with it in accordance with SCA process, as part of an ongoing criminal investigation. As a result, imposing the related ███████ NDO on LinkedIn "does little violence" to the company's purported First Amendment interests and does "not significantly curtail" the company's First Amendment rights.

The Third Circuit has taken a different view of *Rhinehart*, concluding that it offers little help in the § 2705(b) context. *See Matter of Subpoena 2018R00776*, 947 F.3d 148, 156 (3d Cir. 2020). However, despite LinkedIn's suggestions to the contrary, *see* Br. 39, that same decision found that temporary non-disclosure orders passed muster under strict scrutiny—in that case, "the least restrictive means to maintain grand jury secrecy." *Id.* at 159. For similar reasons, even if strict scrutiny applies, the NDO in this case is also constitutionally valid.

### 1. The NDO furthers a compelling government interest.

LinkedIn concedes the NDO protects a compelling government interest in the integrity of the investigation, but suggests the government does not have an interest in "Secrecy As Such." Br. 39. But in an early-stage criminal investigation, secrecy and the integrity of the investigation are often one and the same. As various courts have held, "[t]he Government has a compelling interest in maintaining the secrecy of an ongoing criminal investigation." *Google LLC v. United States*, 443 F. Supp. 3d 447, 453 (S.D.N.Y. 2020). "The investigation of crime is a core government function that secures the safety of people and property." *Id.* Thus, "[t]he Government has a compelling interest in maintaining the confidentiality of the existence of [legal process], and the specific accounts being investigated, in order to avoid revealing the existence of its ongoing criminal investigation and entities who may be involved in the very conduct under investigation." *Id.*

Accordingly, "the Government's interest in safeguarding the confidentiality of an ongoing criminal investigation is legitimate and compelling."  *Id.* (rejecting challenge to non-disclosure order because it survived strict scrutiny); *see also, e.g.*, *In re Sealed Case*, 77 F.4th 815, 830–31 (D.C. Cir. 2023) (considering challenge to non-disclosure order and finding that government's interest in "preserving the integrity and maintaining the secrecy of its ongoing investigation" is "unquestionably compelling"); *Twitter, Inc. v. Sessions*, 2017 WL 5751299, at *3 (N.D. Cal. Nov. 28, 2017) ("national security interests are, without question, compelling government interests").

### 2.     The NDO is narrowly tailored.

The NDO in this matter is narrowly tailored for several reasons.  First, it is ██████████████████████.  *See Matter of Subpoena 2018R0776*, 947 F.3d at 157 (affirming district court's decision that non-disclosure orders "are narrowly tailored because they are limited in time to one year"); *Google, LLC*, 2020 WL 13505395, at *7 (rejecting challenge to non-disclosure order because provider "cited no authority for the position that a year-long non-disclosure order is not sufficiently tailored in length"); *Matter of Search of Info. Associated with E-Mail Accts.*, 468 F. Supp. 3d 556, 562 (E.D.N.Y. 2020) (holding that one-year non-disclosure order was narrowly tailored); *Google LLC*, 443 F. Supp. 3d at 453 (same).

Second, the NDO prohibits LinkedIn from speaking with respect to only a narrow subject—specifically, the fact of the company having received the D-Order—which amounts to a minimal burden on speech. *See Matter of Subpoena 2018R0776*, 947 F.3d at 158 (rejecting request to modify non-disclosure orders that "prohibit[ed] ABC Corp. only from speaking about the existence of the government's requests—information it learned of by its participation as a grand jury witness"). LinkedIn remains free to raise general concerns about orders compelling it to produce information—a factor courts have cited in rejecting similar motions. *See, e.g.*, *In re Sealed Case*, 77 F.4th at 831; *Google LLC*, 443 F. Supp. 3d at 453.

Finally, the NDO is narrowly tailored because it satisfies several of the justifications enumerated in § 2705(b) that could "seriously jeopardize" the investigation: ████████████████████████████████████████ ████████████████████████████████. JA44; *accord United States v. Warrant*, 2017 WL 3669564, at *5 (D.N.J. Aug. 15, 2017) (holding non-disclosure order narrowly tailored because "disclosure to the subscriber would result in one of the enumerated harms in § 2705(b)").

**B.    LinkedIn's ███████████████████
███████████ would defeat the purpose of the NDO and serve no useful purpose.**

The district court rightly rejected LinkedIn's proposed modification to the NDO, which ███████████████████████████████████████████████████████████.

As the district court explained:

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
███████████████████████████████████

JA13.

The district court's conclusion that ████████████████████
███████████████████████████████ is correct. ██████████████████

████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████

[REDACTED] That was the same basis on which the magistrate judge [REDACTED]

█████████████████████████████ JA44.  Other courts have reached the same conclusion for similar reasons.  *See, e.g.,* █████████████████████████ ████████████████████████████████ .

LinkedIn relies on a single instance where a district court granted a similar request to contend the district court erred in adopting that outlier approach here.  In that case, █████████████████████████████████████████



Here, however, ██████████████████████████ ███████████████████████████████████████ ████████████████████████████ .  *See* JA73 (██████████████ ███████████████████████████████████████ ).

The matters are thus qualitatively different.  *See, e.g.*, JA41–42; JA246.

Moreover, ███████████████████████████████████
██████████████████████████. ████████████████████
████████████████████████████████████████████████
███████████████████ ███████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

**C.** ███████████████████████████████████████
**is irrelevant.**

Finally, the NDO can and should be evaluated ████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
███████████████████████████████████████. *Contra* Br. 48–51.

Regardless of ██████████████████████████████████████████

██████████████████████████████████ *Supra* Part II.B.  Additionally, as

the district court recognized, ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████ JA19

(████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ ).  To hold

otherwise could hamstring the government's ability to safekeep sensitive

investigative materials at all but the very first step of any criminal investigation.

The government is aware of its obligation to the courts and under Department

of Justice policy to evaluate the ongoing need for non-disclosure orders in response

to changing factual circumstances, *cf.* Br. 49–50, and maintains that it is best situated

to make that case-specific determination.

III. **The district court did not abuse its discretion in denying LinkedIn's request to examine the *ex parte* materials supporting the D-Order and NDO.**

LinkedIn's final claim is that the district court abused its discretion by

declining to provide LinkedIn access to the *ex parte* materials supporting the D-

Order and NDO, and that the failure to do so deprived LinkedIn of its First

Amendment rights without due process. Access to § 2703(d) materials, however, "is 'committed to the sound discretion of the judicial officer who issued the § 2703(d) orders.'" *Appelbaum*, 707 F.3d at 293; *cf. Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 429 (4th Cir. 2005) ("[T]he decision to seal or grant access to 'warrant papers is committed to the sound discretion of the judicial officer who issued the warrant' and reviewed for abuse of discretion."). LinkedIn cannot establish any abuse of discretion here.

Tellingly, LinkedIn cites not a single SCA case where a court has granted a provider similar relief on due process grounds. Instead, the opening brief relies on snippets of caselaw from dissimilar contexts involving traditional "adjudicatory proceedings" with "adversarial testing," where *ex parte* evidence is disfavored. Br. 52–54, 57. In the § 2703(d) context, however, *ex parte* government submissions are a deliberate part of the process. As this Court recognized in *Appelbaum*, "Section 2703(d) proceedings consist of the issuance of and compliance with § 2703(d) orders, are *ex parte* in nature, and occur at the investigative, pre-grand jury, pre-indictment phase of what may or may not mature into an indictment." 707 F.3d at 292. Accordingly, as in other "[p]re-indictment investigative processes where privacy and secrecy are the norm," § 2703(d) proceedings "are not amenable to the practices and procedures employed in connection with other judicial proceedings." *Id.*; *see also id.* ("Because secrecy is necessary for the proper functioning of the

51

criminal investigations at this § 2703(d) phase, openness will frustrate the government's operations.").

LinkedIn attempts to distinguish *Appelbaum* by characterizing this Court's decision as a "limited holding on the *public* right to access § 2703(d) orders," which LinkedIn argues does not "speak[] to the well-established due-process rights of a *party* to access the evidence on which a court relies to justify restricting that party's constitutional rights." Br. 55–56. But the same rationale from *Appelbaum* restricting public access to *ex parte* criminal filings during the pendency of an investigation applies with equal—or even greater—force to service providers served with compulsory SCA process. As enacted by Congress, § 2703(d) specifically contemplates the issuance of a d-order on the government's *ex parte* application and, after the order is issued, authorizes the issuing court to quash or modify such order only on two narrow grounds. 18 U.S.C. § 2703(d); *see also supra* Part I.B. Unlike parties in typical adversarial proceedings (or even recipients of other compulsory investigative process like grand jury subpoenas), SCA providers also are entitled to cost reimbursement for expenses "incurred in searching for, assembling, reproducing, or otherwise providing" information responsive to SCA process, *id.* § 2706(a), and enjoy complete immunity from liability for their compliance, *id.* § 2703(e). There is thus little risk of any erroneous deprivation of an SCA provider's

rights based on the government's submission of *ex parte* materials in support of a § 2703(d) application or accompanying non-disclosure order.

Moreover, an SCA provider that is a mere repository for electronic communications is not well situated to offer meaningful information about the need for a § 2703(d) order or non-disclosure order as they relate to a broader criminal investigation. *Cf. Matter of Appl. of U.S. for an Order of Nondisclosure*, 41 F. Supp. 3d 1, 6 (D.D.C. 2014) (declining to allow service provider to intervene on merits of government's non-disclosure application). The same is true even after a non-disclosure order is issued and, while LinkedIn was free to offer evidence to the district court suggesting that the NDO was wrongly entered, it does not follow that the government must show its cards in a sensitive criminal case simply because LinkedIn asks it to do so. In this case, the lack of harm to LinkedIn is further demonstrated by the R&R's ██████████████████████ ███████████████████████████████████████ ███████████████████████████████████████ █████████████████████████████ JA40. Further, as discussed *supra*, any restriction on LinkedIn's constitutional interests is limited in duration and subject matter. LinkedIn is not entitled to view the government's *ex parte* submissions, and has shown little risk of being "seriously injure[d]" within the

meaning of the Due Process Clause. *Cf. Greene v. McElroy*, 360 U.S. 474, 496 (1959).

Meanwhile, the government's interest in the integrity of the criminal investigation makes continued restriction of the *ex parte* materials used to obtain the D-Order and NDO entirely appropriate. The sensitivity of § 2703(d) application materials is a critical consideration—indeed, the overriding consideration—as the district court correctly recognized. *See* JA13–14. This Court has been no less clear that "Section 2703(d) proceedings . . . are perhaps even more sacrosanct" than grand jury proceedings, and "like proceedings for the issuance of search warrants, . . . are not open." *Appelbaum*, 707 F.3d at 292. After all, the government—and the public—have a strong interest "in maintaining the secrecy of its investigation, preventing potential subjects from being tipped off, or altering behavior to thwart the Government's ongoing investigation." *Id.* at 293; *see also United States v. Cohen*, 366 F. Supp. 3d 612, 634 (S.D.N.Y. 2019) (recognizing that § 2703 proceedings require "secrecy as the norm to ensure the integrity and effectiveness of a criminal investigation"). That is particularly true when an investigation like this one is in its preliminary stages. *See* JA14 (██████████████████████████ ████████████████████████████████████████ ███████████████████████ ).

"Although many governmental processes best operate under public scrutiny, it takes little imagination to recognize that there are some kinds of government operations that would be totally frustrated if conducted openly." *Appelbaum*, 707 F.3d at 292. And it takes little more imagination to see how LinkedIn's request for disclosure of *ex parte* materials in this and similar cases could jeopardize the government's ability to obtain and serve SCA process on providers. The *ex parte* materials supporting d-orders or related non-disclosure orders often contain sensitive investigative material, including grand jury information, all of which under LinkedIn's approach would be at risk of premature disclosure simply because a third-party provider objects to a non-disclosure order. *See id.* at 288, 294 (recognizing that sealed documents in § 2703(d) proceedings may "set forth sensitive nonpublic facts, including the identity of targets and witnesses in an ongoing criminal investigation"). This Court should affirm the district court's sound rejection of LinkedIn's due process claim for access to the *ex parte* materials in this case, which demonstrably was not an abuse of discretion.

## Conclusion

The Court should affirm the orders of the district court.

Respectfully submitted,

Todd W. Blanche
Acting Attorney General

Theophani K. Stamos
First Assistant United States Attorney

_____ /s/ _____
Brian J. Samuels
Assistant United States Attorney

John A. Eisenberg
Assistant Attorney General
National Security Division

_____ /s/ _____
Joshua T. Ferrentino
Trial Attorney
Counterintelligence & Export
Control Section

## Statement Regarding Oral Argument

The Court has calendared this case for oral argument on September 15, 2026.

## Certificate of Compliance

I certify that this brief was written using 14-point Times New Roman typeface and Microsoft Word 365.

I further certify that this brief does not exceed 13,000 words (and is specifically 12,987 words) as counted by Microsoft Word, excluding the table of contents, table of authorities, statement regarding oral argument, signature block, this certificate, the certificate of service, and any addendum.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.

/s/
_____

Joshua T. Ferrentino
Trial Attorney
