No. 26-4303

## IN THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

*In re: Application of the United States of America for an Order Pursuant to 18 U.S.C. § 2703(d)*

On Appeal from the United States District Court for the Eastern District of Virginia, No. 4:25-dm-1 (4:25-ec-25) (Hanes, J.)

## BRIEF OF AMICUS CURIAE REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS IN SUPPORT OF APPELLANT SUPPORTING REVERSAL

Gabriel Rottman
  *Counsel of Record*
Lisa Zycherman
Marietta Catsambas
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
grottman@rcfp.org

*Counsel for amicus curiae*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, amicus certifies as follows:

Reporters Committee for Freedom of the Press is an unincorporated association of reporters and editors with no parent corporation and no stock.

i

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ............................................ i

TABLE OF AUTHORITIES .................................................... iii

INTEREST OF AMICUS CURIAE ............................................. 1

SOURCE OF AUTHORITY TO FILE ................................... 3

FED. R. APP. P. 29(a)(4)(E) STATEMENT ............................. 3

SUMMARY OF ARGUMENT ................................................. 4

ARGUMENT ................................................................ 6

I.    It is crucial for the press that § 2703(d) not be read to permit demands for large amounts of irrelevant records. ........ 6

II.   It is imperative that journalists and news organizations be notified of third-party process so they can negotiate the scope of the demand or challenge it in court. ...........................12

III. The use of secret evidence to support a (d) order and accompanying § 2705(b) gag threatens press freedom. ...........15

CONCLUSION...............................................................18

CERTIFICATE OF COMPLIANCE ......................................20

CERTIFICATE OF SERVICE ...........................................21

ii

# TABLE OF AUTHORITIES

**Cases**

*In re Search of Real Prop. & Premises of Hannah Natanson*,
   No. 1:26-sw-00054 (WBP-AJT), 2026 WL 1458902
   (E.D. Va. May 4, 2026) .................................................................. 8

*In re Search Warrant for [Redacted].com*,
   248 F. Supp. 3d 970 (C.D. Cal. 2017) .................................................13

*United States v. Playboy Ent. Grp., Inc.*,
   529 U.S. 803 (2000) ...........................................................................17

**Statutes**

18 U.S.C. § 2703 ..................................................................... 1, 4, 6, 7

18 U.S.C. § 2705 ........................................................................ 4, 14

**Regulations**

28 C.F.R. § 50.10 ........................................................................ 2, 9

28 C.F.R. § 50.10 (2022) ......................................................... 10, 11, 12

**Other Authorities**

Charlie Savage & Katie Benner, *U.S. Waged Secret Legal Battle to
   Obtain Emails of 4 Times Reporters*, N.Y. Times (June 4, 2021),
   https://bit.ly/4hL7kho ...................................................................9, 14

David Vigilante, *CNN Lawyer Describes Gag Order and Secretive
   Process Where Justice Department Sought Reporter's Email
   Records*, CNN (June 9, 2021),
   https://bit.ly/4xmBmNe.......................................................................13

Gabe Rottman & Linda Moon, Reps. Comm. for Freedom of the
Press, *Default Notice Rules for Subpoenas, Court Orders, and
Warrants Without a "Hard Backstop" in Justice Department
Policies Requiring Notice to Affected Member of News Media
Within 90 Days* (2019),
https://perma.cc/6TLE-G3DF ............................................................. 2

Gabe Rottman, *DOJ Inspector General Releases Report on 2020-21
Journalist Records Seizures*,
Reps. Comm. for Freedom of the Press (Jan. 21, 2025),
https://perma.cc/M9C7-L27A ...............................................................10

Gabe Rottman, *US Justice Department Rescinds Biden-Era
Protections for Press*,
Reps. Comm. for Freedom of the Press (Apr. 30, 2025),
https://perma.cc/SMA4-CDXR ..............................................................12

H.R. Rep. No. 103-827 (1994),
*as reprinted in* 1994 U.S.C.C.A.N. 3489 ............................................... 8

Katelyn Polantz & Evan Perez, *Trump Administration Pursued
CNN Reporter's Records in Months-Long Secret Court Battle*,
CNN (June 9, 2021),
https://bit.ly/4hikHFT ...........................................................15, 16, 17

Matt Zapotosky & Rachel Weiner, *CNN Waged Secret Battle
Against Justice Dept. Over Reporter Records Before Ultimately
Turning Some Over*, Wash. Post (June 9, 2021),
https://wapo.st/4pUjyXb.............................................................16, 17

Michael M. Grynbaum & Jonah E. Bromwich, *U.S. Withdraws
Subpoenas Issued to New York Times Journalists*,
N.Y. Times (July 23, 2026),
https://bit.ly/4xa96Nu ........................................................................ 5

Off. of Inspector Gen., Dep't of Justice, *A Review of the
Department of Justice's Issuance of Compulsory Process to
Obtain Records of Members of Congress, Congressional Staffers,
and Members of the News Media* (Dec. 2024),
https://perma.cc/5ESX-Z9ZX....................................................................... 9

iv

Off. of Att'y Gen., Memorandum Regarding the Use of Compulsory
Process to Obtain Information From, or Records of, Members of
the News Media (July 19, 2021),
https://perma.cc/LV2K-XU4V ..........................................................10

Press Release, Dep't of Justice, *Attorney General Garland
Announces Revised Justice Department News Media Policy*
(Oct. 26, 2022),
https://perma.cc/8AXP-UP6Y.....................................................10, 11

## INTEREST OF AMICUS CURIAE

Amicus curiae Reporters Committee for Freedom of the Press is an unincorporated nonprofit association dedicated to defending the First Amendment and newsgathering rights of the press.  It was founded by leading journalists and media lawyers in 1970 when the nation's news media faced an unprecedented wave of government subpoenas forcing reporters to name confidential sources.  Today, its attorneys provide pro bono legal representation, amicus curiae support, and other legal resources to protect First Amendment freedoms and the newsgathering rights of journalists.

Reporters Committee has a strong interest in ensuring that journalists and news organizations are notified when their records have been seized pursuant to the Stored Communications Act so they can, among other things, take steps to protect source confidences.  *See* 18 U.S.C. § 2703; Gabe Rottman & Linda Moon, Reps. Comm. for Freedom of the Press, *Default Notice Rules for Subpoenas, Court Orders, and Warrants Without a "Hard Backstop" in Justice Department Policies Requiring Notice to Affected Member of News Media Within 90 Days* (2019), https://perma.cc/6TLE-G3DF

1

(discussing importance of notice requirements under Justice Department's 28 C.F.R. § 50.10 news media guidelines). The district court's analysis in this case, if upheld, could lead to instances where journalists' records are seized and reviewed in secret by the government and where journalists do not receive timely notice, imperiling First Amendment protections for newsgathering.

## SOURCE OF AUTHORITY TO FILE

Amicus has obtained consent to file this brief from all parties and therefore may file it pursuant to Federal Rule of Appellate Procedure 29(a)(2).

## FED. R. APP. P. 29(a)(4)(E) STATEMENT

No party's counsel authored any part of this brief.  No person other than amicus or its counsel contributed money intended to fund the brief's preparation or submission.

## SUMMARY OF ARGUMENT

In this case, the government secured a court order pursuant to 18 U.S.C. § 2703(d) (a "(d) order") requiring LinkedIn to produce records sent or received from one of its accounts. As is often the case, the government also secured an accompanying gag order under 18 U.S.C. § 2705(b) prohibiting LinkedIn from notifying anyone of the existence of the (d) order for one year. LinkedIn sought to modify both orders to narrow the records demand to exclude irrelevant records and to permit LinkedIn to notify an attorney representing the target. The district court denied both requests. Its holdings, if credited by this Court, would endanger constitutionally protected newsgathering and reporting activity. Amicus thus offers three arguments in support of Appellant. Amicus has no insight into the underlying facts of the case, which accounts for the generality of these arguments.

First, if upheld, the district court's determination that a (d) order may be used to seize a substantial amount of *irrelevant* records would permit significant intrusions into newsgathering. Ignoring the "relevant and material" language in § 2703(d) would allow

4

authorities to demand records that, for instance, disclose the identity of confidential sources beyond the actual target of an underlying Espionage Act investigation into the unauthorized disclosure of national defense information.  Such investigations, if not tightly controlled, can easily intrude on First Amendment protections for newsgathering.  *See* Michael M. Grynbaum & Jonah E. Bromwich, *U.S. Withdraws Subpoenas Issued to New York Times Journalists*, N.Y. Times (July 23, 2026), https://bit.ly/4xa96Nu.

Second, the gag order under § 2705(b) is a content-based prior restraint on LinkedIn's speech.  Because of the risk posed by such orders to newsgathering and other First Amendment-protected activity, it is imperative that the strict scrutiny analysis be applied properly so affected news organizations or journalists receive some timely notification that their records have been acquired by the government.  Recent moves by the Justice Department to seize journalists' records from third-party communications providers using (d) orders illustrate the sensitivity of these types of records demands.  Faithful application of the least-restrictive-alternative prong of the strict scrutiny test requires that, at a minimum, an in-

house lawyer for the target of the (d) order receive notice unless the government can prove with specific evidence that notification would carry the risks enumerated in the statute, such as evidence destruction or flight.

Finally, the district court's reliance on *ex parte* evidence that was kept secret from LinkedIn was improper and further compounds the threat posed by the court's decision to a free press and the public it serves.

Amicus therefore urges this Court to reverse the district court.

### ARGUMENT

**I.    It is crucial for the press that § 2703(d) not be read to permit demands for large amounts of irrelevant records.**

The district court's analysis here virtually invites sweeping and overbroad (d) orders in violation of the statutory text, which would be particularly harmful to First Amendment protections for newsgathering. The text of § 2703(d) is clear: A court may issue a (d) order for records described in subsections 2703(b) or 2703(c) only upon the government's presentation of "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought,

6

are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). A court may quash or modify a (d) order if the "information or records requested are unusually voluminous in nature or compliance with such order otherwise would cause an undue burden on [the] provider." *Id.*

Here, however, the (d) order at issue sought voluminous amounts of material that is *irrelevant* to the underlying investigation, and the district court's decision would countenance such manifestly overbroad (d) orders. That is, the district court incorrectly held that overbreadth is not a ground to move to quash a (d) order because the burden referenced by the statute is merely a "logistical or practical burden." Redacted Appellant Br. at 10–11. The district court compounded that error by holding that a (d) order that seeks *some* relevant and material information can seek even "extensive" "irrelevant material." *Id.* at 11.

It is not difficult to see the dangers this ruling—if left unreviewed—would pose for news organizations and journalists. Secret process demanding electronic communications and records held by third parties poses serious First Amendment risks in the context of newsgathering because such information could reveal, for instance,

7

confidential source identities and information about stories in process. In investigations into the unauthorized disclosure of national defense information—colloquially known as "leak" cases—tailoring of process is particularly important precisely because the government can uncover the identities of confidential sources far beyond the target of the investigation. *See, e.g.*, *In re Search of Real Prop. & Premises of Hannah Natanson*, No. 1:26-sw-00054 (WBP-AJT), 2026 WL 1458902, at *9 (E.D. Va. May 4, 2026) (requiring judicial review of electronic communications and records seized pursuant to search warrant from reporter where vast amount of non-responsive and protected information commingled with limited quantity of responsive information). Congress clearly envisioned the danger of "fishing expeditions" in the context of (d) orders and required appropriate tailoring with the "relevant and material" formulation. *See* H.R. Rep. No. 103-827, at 9, 31–32 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 3489, 3489, 3511–12 (requiring more demanding standard than subpoena to guard against "fishing expeditions").

This concern is not hypothetical. The use of § 2703(d) orders against the press in leak cases has led to significant public

controversies in the recent past. In early 2021, for instance, the Justice Department revealed that, in 2020, the attorney general had approved sweeping phone records subpoenas and email metadata (d) orders directed at eight journalists across three news organizations: CNN, The New York Times, and The Washington Post. *See* Charlie Savage & Katie Benner, *U.S. Waged Secret Legal Battle to Obtain Emails of 4 Times Reporters*, N.Y. Times (June 4, 2021), https://bit.ly/4hL7kho. Worse, the (d) orders all came with non-disclosure orders ("NDOs" or "gag orders") under § 2705(b). *See* Off. of Inspector Gen., Dep't of Justice, *A Review of the Department of Justice's Issuance of Compulsory Process to Obtain Records of Members of Congress, Congressional Staffers, and Members of the News Media* (Dec. 2024), https://perma.cc/5ESX-Z9ZX [hereinafter "IG Report"]. The move generated significant public outcry because of the breadth of the demands, because the NDOs operated to gag newsroom counsel for both CNN and The New York Times from notifying the affected journalists, and because of procedural violations of DOJ's internal policy governing the use of compulsory process and NDOs. *See* 28 C.F.R. § 50.10 [hereinafter "news media guidelines"]; IG Report, *supra*, at 52 ("In our

9

judgment, this deviation from the Department's own requirements indicates a troubling disparity between, on the one hand, the regard expressed in Department policy for the vital role of the news media in American democracy and, on the other hand, the Department's commitment to complying with the limits and requirements that it intended to safeguard that very role."); Gabe Rottman, *DOJ Inspector General Releases Report on 2020-21 Journalist Records Seizures*, Reps. Comm. for Freedom of the Press (Jan. 21, 2025), https://perma.cc/M9C7-L27A (surveying compliance failures in metadata demands).

Indeed, the fallout from the 2020 and 2021 phone and email records demands was so acute that Attorney General Merrick Garland announced a comprehensive overhaul of the news media guidelines.  In July 2021, Garland released a memorandum announcing a new bright-line rule against the use of compulsory process, including (d) orders, for journalists acting within the scope of newsgathering, as defined.  Off. of Att'y Gen., Memorandum Regarding the Use of Compulsory Process to Obtain Information From, or Records of, Members of the News Media (July 19, 2021), https://perma.cc/LV2K-XU4V.  Those historic reforms were codified in revised 28 C.F.R. § 50.10 in October 2022.  Press

10

Release, Dep't of Justice, *Attorney General Garland Announces Revised Justice Department News Media Policy* (Oct. 26, 2022), https://perma.cc/8AXP-UP6Y.

The revised news media guidelines included explicit and robust restrictions on the use of NDOs in those limited instances where compulsory process directed at journalists was still available. Specifically, department officials seeking an NDO had to include that fact in their application for senior-level authorization and articulate the need. 28 C.F.R. § 50.10(k)(1) (2022). Additionally, the revised regulation mandated that the authorizing official make a determination that disclosure of the existence of the subpoena, court order, or search warrant would lead to "imminent or concrete risk of death or serious bodily harm, including terrorist acts, kidnappings, specified offenses against a minor . . . or incapacitation or destruction of critical infrastructure . . . ." *Id.* § 50.10(k)(2)–(3) (cross-referencing 28 C.F.R. § 50.10(c)(3)). Finally, the revised policy required that the department

11

move to vacate any NDO when notice to the affected news organization or journalist would be required. *Id.* § 50.10(k)(5).[1]

In short, permitting concededly overbroad (d) orders that seek vast quantities of irrelevant information merely because they seek some relevant information would turn the statute on its head and invite governmental interference with the independence of the press through overbroad records demands like the ones that came to light in 2021.

## II. It is imperative that journalists and news organizations be notified of third-party process so they can negotiate the scope of the demand or challenge it in court.

In addition to misinterpreting the relevancy and burden provisions in § 2703(d), the district court also declined to modify the § 2705(b) gag order to permit notification to an attorney at the affected entity who would also be subject to the NDO. Proper application of strict scrutiny mandates such a modification. It is imperative for the press and public that courts both apply strict scrutiny to the imposition

---

[1]    The news media guidelines were revised again by Attorney General Pamela Bondi in April 2025 to rescind the Garland reforms. The revision omits the new section on NDOs but retains limitations on the use of (d) orders directed at journalists. *See* Gabe Rottman, *US Justice Department Rescinds Biden-Era Protections for Press*, Reps. Comm. for Freedom of the Press (Apr. 30, 2025), https://perma.cc/SMA4-CDXR.

of a § 2705(b) gag order and carefully engage in the relevant analysis. On the former, courts routinely apply strict scrutiny to § 2705(b) gag orders in recognition that they operate as both prior restraints on speech and as content-based regulations, restricting speech about (d) orders themselves. *See In re Search Warrant for [Redacted].com*, 248 F. Supp. 3d 970, 980 (C.D. Cal. 2017) (collecting cases recognizing that § 2705(b) gag order operates as content-based prior restraint). On the latter, as Appellant notes, the government must be put to its burden to establish the facts meeting strict scrutiny, especially the least-restrictive-means prong.

The arrangement proposed by LinkedIn—that a lawyer at the affected entity be notified and then be subject to the gag—is manifestly a less restrictive alternative than the complete secrecy demanded by the government. As discussed above with the CNN, New York Times, and Washington Post subpoenas and court orders, with respect to newsroom counsel, such an arrangement is still sub-optimal. It puts newsroom counsel in the unsustainable position of knowing about an intrusion into the outlet's newsgathering but being restricted from sharing that information with their clients. *See* David Vigilante, *CNN Lawyer*

13

*Describes Gag Order and Secretive Process Where Justice Department Sought Reporter's Email Records*, CNN (June 9, 2021), https://bit.ly/4xmBmNe.  It is, however, better than the alternative of complete secrecy.  At a minimum, it permits counsel to then negotiate for disclosures to outside counsel and management, as happened with The New York Times in 2021.  *See* Savage & Benner, *supra*.

In that example, permitting limited notice to newsroom counsel allowed said counsel to negotiate further with the government.  That, in turn, led to notifications to senior executives and outside counsel, but not the newsroom.  While this is again less than ideal, it nonetheless empowers an affected news organization to mount some challenge to an overbroad (d) order and § 2705(b) gag order.

To defeat such a proposed arrangement, moreover, the government must establish that the predicate conditions for a § 2705(b) gag are met vis-à-vis the attorney at the affected entity.  That is, under the strict scrutiny analysis, the government must establish that notifying *the attorney* will result in "(1) endangering the life or physical safety of an individual; (2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5)

14

otherwise seriously jeopardizing an investigation or unduly delaying a trial." 18 U.S.C. § 2705(b). Unless the government can adduce a sufficient factual basis for finding that notification to the attorney would lead to these harms, the Court must adopt that as a less restrictive alternative to blanket secrecy.

## III. The use of secret evidence to support a (d) order and accompanying § 2705(b) gag threatens press freedom.

Amicus agrees with Appellant that the use of *ex parte* evidence in this case violates LinkedIn's due process rights, but the use of secret evidence to justify overbroad (d) orders also carries independent and serious First Amendment concerns for the press and the public it serves. This point is illustrated by the example of the CNN records demands revealed in 2021, where the use of *ex parte* submissions to justify (d) orders and accompanying gag orders was also at issue. *See* Katelyn Polantz & Evan Perez, *Trump Administration Pursued CNN Reporter's Records in Months-Long Secret Court Battle*, CNN (June 9, 2021), https://bit.ly/4hikHFT. There, the Justice Department sought and received a (d) order seeking email logs for approximately 30,000 emails and an accompanying § 2705(b) gag order on the network's general counsel, David Vigilante. *Id.* Following a challenge from CNN

15

to the scope of the order, the magistrate initially directed the Justice Department to narrow the request but ruled against CNN following the government's submission of an *ex parte* affidavit containing classified information.  *Id.*  That secret filing robbed CNN of the ability to meaningfully challenge the government's case.  As Vigilante put it, "all the tools lawyers use every day to navigate these situations were refused to us."  *Id.*

Troublingly, upon further scrutiny, the government's justification for the scope of the (d) order fell apart.  On appeal of the magistrate judge's order, Judge Anthony Trenga ruled that CNN had to turn over the email records for messages with military and government accounts. As for the rest, Judge Trenga held that "the requested information by its nature is too attenuated and not sufficiently connected to any evidence relevant, material, or useful to the government's ascribed investigation, particularly when considered in light of the First Amendment activities that it relates to."  Matt Zapotosky & Rachel Weiner, *CNN Waged Secret Battle Against Justice Dept. Over Reporter Records Before Ultimately Turning Some Over*, Wash. Post (June 9, 2021), https://wapo.st/4pUjyXb.  In response, Vigilante said: "Since we

were never privy to any of the secret submissions made by the government, this was the first characterization of the evidence we had seen, and it was stunning: After months of secret proceedings and heavy-handed enforcement tactics, a neutral judge said that, in large part, the emperor had no clothes[.]" *Id.* Ultimately, CNN and DOJ reached a deal where CNN would turn over email logs for a much smaller universe of messages that the government largely already had. *See* Polantz & Perez, *supra.*

As this example illustrates, the fact that the evidence is considered *ex parte* means it cannot be challenged in an adversarial proceeding. And this can lead to cases like CNN's where after months of litigation, the ultimate conclusion is that the *ex parte* evidence doesn't support the government's case. As Appellant points out, the government is required to prove, not merely plead, that the (d) order meets strict scrutiny—that it serves a compelling interest, is narrowly tailored in service of that interest, and is the least restrictive means of serving that interest. *See United States v. Playboy Ent. Grp., Inc.,* 529 U.S. 803, 820, 827 (2000) (government failed to adduce "specific evidence" that signal scrambling or blocking is least restrictive means of

17

preventing children from seeing or hearing "signal bleed").  Without knowing what the evidence is, an affected journalist or news organization cannot effectively hold the government to this standard.

In sum, the use of secret evidence carries the danger that the lack of adversarial challenge to the sufficiency of the evidence will permit both due process and First Amendment violations.  That carries great risk for the press given the government's past use of (d) orders and accompanying § 2705(b) gag orders to secretly intrude into constitutionally protected newsgathering and reporting activity.

## **CONCLUSION**

For the foregoing reasons, amicus respectfully urges this Court to reverse the judgment of the district court.

Dated:  August 4, 2026

Respectfully submitted,

*/s/ Gabriel Rottman*

Gabriel Rottman
  *Counsel of Record*
Lisa Zycherman
Marietta Catsambas
REPORTERS COMMITTEE FOR
  FREEDOM OF THE PRESS
1156 15th St. NW, Suite 1020
Washington, D.C. 20005
(202) 795-9300
grottman@rcfp.org

18

*Counsel for amicus curiae*

19

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief of amicus curiae complies with:

1) the type-volume limitation of Fed. R. App. P. 29(a)(5) because it contains 3,067 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), as calculated by the word-processing system used to prepare the brief; and

2) the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Century Schoolbook.

*/s/ Gabriel Rottman*

Gabriel Rottman
*Counsel of Record*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

Dated:     August 4, 2026
           Washington, D.C.

20

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing Brief of Amicus Curiae electronically with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the appellate CM/ECF system on August 4, 2026.

I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Gabriel Rottman
Gabriel Rottman
*Counsel of Record*
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

21