**No. 26-4303**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

On Appeal from the United States District Court
for the Eastern District of Virginia
No. 4:25-dm-1 (4:25-ec-25)
Hon. Elizabeth W. Hanes

# BRIEF OF AMICI CURIAE AMAZON.COM, INC., GOOGLE LLC, META PLATFORMS, INC., X CORP., AND APPLE INC.


J. Jonathan Hawk
McDERMOTT WILL
& SCHULTE LLP
2049 Century Park E, Suite 3200
Los Angeles, CA 90067
(310) 788-4181

*Counsel for Amicus X Corp.*

Jacob Sommer
ZWILLGEN PLLC
1900 M. St. NW, Suite 250
Washington, DC 20036
(202) 706-5205

*Counsel for Amicus Apple Inc.*

Todd M. Hinnen
John R. Tyler
ASHURST PERKINS COIE US LLP
1301 2nd Avenue, Suite 4200
Seattle, WA 98101
(206) 359-8000

Addison W. Bennett
ASHURST PERKINS COIE US LLP
2525 E. Camelback Road, Suite 500
Phoenix, AZ 85016
(602) 351-8000

*Counsel for Amici Amazon.com, Inc., Google LLC, and Meta Platforms, Inc.*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-4303 Caption: In re: Application of the United States of America for an Order...

Pursuant to FRAP 26.1 and Local Rule 26.1,

Amazon.com, Inc.
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Addison W. Bennett Date: 08/04/2026

Counsel for: Amazon.com, Inc.



Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-4303 Caption: In re: Application of the United States of America for an Order...

Pursuant to FRAP 26.1 and Local Rule 26.1,

Google LLC
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
If yes, identify all parent corporations, including all generations of parent corporations:

Google LLC is an indirect subsidiary of Alphabet Inc., a publicly traded company. Alphabet Inc. does not have a parent company and no publicly traded company holds more than 10% of its stock.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☑YES ☐NO
If yes, identify entity and nature of interest:
XXVI Holdings Inc., Holding Company of Google LLC, and Alphabet Inc., Holding Company of XXVI Holdings Inc.

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Addison W. Bennett Date: 08/04/2026

Counsel for: Google LLC



Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-4303 Caption: In re: Application of the United States of America for an Order...

Pursuant to FRAP 26.1 and Local Rule 26.1,

Meta Platforms, Inc.
(name of party/amicus)

who is amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Addison W. Bennett Date: 08/04/2026

Counsel for: Meta Platforms, Inc.



Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-4303 Caption: In re: App of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)

Pursuant to FRAP 26.1 and Local Rule 26.1,

X Corp.
(name of party/amicus)

who is Amicus curiae, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☑ YES ☐ NO
If yes, identify all parent corporations, including all generations of parent corporations:

X Corp. is a wholly-owned subsidiary of X Holdings Corp. That entity is directly owned by X.AI LLC, which is, in turn, directly owned by Space Exploration Technologies Corp., which is publicly traded. No publicly held corporation owns 10% or more of Space Exploration Technologies Corp.'s stock.

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☑ YES ☐ NO
If yes, identify all such owners:
Space Exploration Technologies Corp.

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: [signature] Date: August 4, 2026

Counsel for: X Corp.



Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 26-4304 Caption: In Re: Application of the United States of America for an Order

Pursuant to FRAP 26.1 and Local Rule 26.1,

Apple Inc.
(name of party/amicus)

who is Amicus, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☑ YES ☐ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: ______________________ Date: August 4, 2026

Counsel for: Apple Inc.



Print to PDF for Filing

Reset Form

## TABLE OF CONTENTS

**Page**


CORPORATE DISCLOSURE STATEMENTS

INTEREST OF AMICI CURIAE ........ 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........ 8

ARGUMENT ........ 12

I. The SCA Gives Providers a Pivotal Role in Ensuring the Proper Functioning of the Statute's Framework ........ 13

A. The SCA delimits the categories of data available to the government and the showings the government must make to obtain each category ........ 14

B. The SCA permits a provider to move to modify or quash a d-order for its overbreadth ........ 17

C. Section 2703(d) does not permit an order to compel a provider to disclose "extensive" user data that is not relevant or material to its investigation ........ 21

D. The district court's cramped interpretation of the SCA risks undermining user trust in the security of their data ........ 23

II. In Amici's Experience, the Government Often Fails to Meet the Showing Required by the SCA and the First Amendment to Obtain a Secrecy Order ........ 25

CONCLUSION ........ 32

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Carpenter v. United States*,
585 U.S. 296 (2018) ........................................................... 11

*Chatrie v. United States*,
146 S.Ct. 2193 (2026) ........................................................ 11

*Chevron U.S.A. Inc. v. Echazabal*,
536 U.S. 73 (2002) ............................................................. 29

*Connick v. Myers*,
461 U.S. 138 (1983) ........................................................... 32

*Groff v. DeJoy*,
600 U.S. 447 (2023) ........................................................... 19

*Hately v. Watts*,
917 F.3d 770 (4th Cir. 2019) ......................................15, 19, 27

*In re Application of U.S. for an Ord. Directing a Provider of Elec. Commc'n Serv. to Disclose Recs. to Gov't*,
620 F.3d 304 (3d Cir. 2010)...............................................17, 22

*In re Grand Jury Subpoena to [Redacted,] Inc.*,
No. 18-mc-334, 2018 WL 718383 (E.D.N.Y. Feb. 5, 2018)........ 31

*In re Grand Jury Subpoena to Facebook*,
No. 16-mc-1300, 2016 WL 9274455
(E.D.N.Y. May 12, 2016) ..................................................... 31

*In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*,
964 F.3d 1121 (D.C. Cir. 2020)............................................... 25

*In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court*,
149 F. Supp. 3d 341 (E.D.N.Y. 2016) ....................................... 19

**TABLE OF AUTHORITIES**
(continued)

*In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283 (4th Cir. 2013) .......... 25

*In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201 (D.D.C. 2018) .......... 15

*Microsoft Corp. v. U.S. Dep't of Just.*, 233 F. Supp. 3d 887 (W.D. Wash. 2017) .......... 31

*Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976) .......... 32

*Reno v. ACLU*, 521 U.S. 844 (1997) .......... 30

*Riley v. California*, 573 U.S. 373 (2014) .......... 11

*Thomas v. Chicago Park Dist.*, 534 U.S. 316 (2002) .......... 32

*United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010) .......... 17

*Wilkes v. Wood*, 98 Eng. Rep. 489 (C.P. 1763) .......... 26

*Wilson v. Arkansas*, 514 U.S. 927 (1995) .......... 26

## TABLE OF AUTHORITIES
(continued)

**STATUTES**

18 U.S.C.

§ 2702(a) ........ 15

§ 2703(a) ........ 17

§ 2703(b) ........ 27

§ 2703(c)(2) ........ 16

§ 2703(d) ........ 5, 7-9, 11, 13, 16, 18-23, 25

§ 2703(h)(2)(B) ........ 20

§ 2705(b) ........ 10, 27-31

§ 2707 ........ 15, 19

**CONSTITUTIONAL PROVISIONS**

U.S. Const. amend. I ........ 10, 12, 25, 30-32

**RULES**

Fed. R. Crim. P. 6(e)(2)(A) ........ 26

Fed. R. Crim. P. 41(f)(1) ........ 26

**LEGISLATIVE MATERIALS**

132 Cong. Rec. 27,633 (1986) ........ 16

S. Rep. No. 99-541 (1986) ........ 14-15, 18, 20

S. Rep. No. 103-402 (1994) ........ 17

## TABLE OF AUTHORITIES
(continued)

**OTHER AUTHORITIES**

Alex Marthews & Catherine Tucker, *Government Surveillance and Internet Search Behavior* (Feb. 17, 2017) .......... 24

Amazon, *Law Enforcement Information Request Reports*, https://perma.cc/JBC4-VEBH .......... 1

Google, *Global requests for user information*, https://perma.cc/5QTA-Y637 .......... 1

Jonathon W. Penney, *Chilling Effects: Online Surveillance and Wikipedia Use*, 31 Berkeley Tech. L.J. 117 (2016) .......... 24

Katie Hafner, *After Subpoenas, Internet Searches Give Some Pause*, N.Y. Times (Jan. 25, 2006) .......... 24

Kevin Werbach, *The Network Utility*, 60 Duke L.J. 1761 (2011) .......... 26

Meta, *Government requests for user data: United States of America*, https://perma.cc/UE5M-FBTN .......... 1

Orin S. Kerr, *A User's Guide to the Stored Communications Act*, 72 Geo. Wash. L. Rev. 1208 (2004) .......... 16

## INTEREST OF AMICI CURIAE[1]

Amici are providers of online communication, data storage, and other services ("providers"). They are among the most successful and innovative businesses in the United States, with billions of collective global users. Each Amicus offers online communication or cloud-based data-storage services governed by the Stored Communications Act (SCA).

Amici respect and support the important work of law enforcement. Each year they collectively receive, evaluate, and respond to hundreds of thousands of law enforcement requests for disclosure of user data in the United States.[2] Amici take these

---

[1] All parties have consented to the filing of this brief. This brief was not authored in whole or in part by counsel for any party, and no person or entity other than Amici or their counsel has made monetary contributions to its preparation and submission.

[2] *See* Google, *Global requests for user information*, https://perma.cc/5QTA-Y637 (last visited Aug. 3, 2026) (disclosing over 118,000 law enforcement requests in the United States for user information in 2025); Amazon, *Law Enforcement Information Request Reports*, https://perma.cc/JBC4-VEBH (last visited Aug. 3, 2026) (disclosing over 11,000 information requests to Amazon in the United States, including AWS, in 2025); Meta, *Government requests for user data: United States of America*, https://perma.cc/UE5M-FBTN (last visited Aug. 3, 2026) (disclosing 76,124 legal process requests in the United States from January through June 2025).

obligations seriously, employing full-time teams of experts dedicated to responding to such requests. Amici comply with the vast majority of these requests but object where one appears to exceed the government's authority. Because Amici understand their complex, technical services and their enormous, global user bases better than anyone else, they play an important role in ensuring proper application of the strict limitations and standards Congress imposed through the SCA on their disclosure of user data to the government.

Amici treat their role as stewards of their users' data seriously. Users' willingness to trust online services is important to the success of Amici's businesses. Amici therefore take a significant interest in this case.

**Amazon.com, Inc**. seeks to be Earth's most customer-centric company and is guided by four principles: customer obsession rather than competitor focus, passion for invention, commitment to operational excellence, and long-term thinking. Amazon's cloud computing business, Amazon Web Services ("AWS"), offers over 200 fully featured services from data centers globally. Millions of

customers—including the fastest-growing startups, largest enterprises, and leading government agencies—use AWS, in addition to Amazon's other online services. As a result, Amazon is responsible for the storage and safekeeping of troves of sensitive user data.

**Google LLC** is a diversified technology company whose mission is to organize the world's information and make it universally accessible and useful. Google offers a variety of web-based products and services, including Search, Gmail, Maps, and YouTube, that are used by people throughout the United States and around the world. Google also offers enterprise cloud services like Google Cloud Platform and Workspace, which include email, word processing, and applications for storage, spreadsheets, presentations, and calendars, all hosted on Google's servers. Google's services enable customers—from individuals to large enterprises—to communicate and collaborate in real time, work seamlessly from multiple devices, and store and share emails, photographs, documents, and other data.

**Meta Platforms, Inc.** is a global technology company whose mission is to give people the power to build community and bring the world closer together. Meta operates some of the world's most widely used communication and social networking platforms, including Facebook, Instagram, Messenger, and WhatsApp, which collectively serve billions of users around the world. These services enable individuals to connect with friends and family, share content, and communicate in real time. Because users entrust Meta with substantial personal information—including messages, photographs, location data, and other communications—Meta has a profound interest in ensuring that its users' data is protected in accordance with the SCA's framework and disclosed only pursuant to valid legal process.

**X Corp.** is an American technology company headquartered in Austin, Texas. X Corp. operates X, a real-time information-sharing platform used by hundreds of millions of people worldwide to communicate, share ideas, and follow matters of public concern. While providing services to users, X collects, processes, and stores multiple classes of user data which could be the subject of broad,

suspicionless requests by law enforcement or other government agencies, including legal process issued under 18 U.S.C. § 2703(d). X Corp. takes seriously its role in safeguarding and potentially disclosing its users' electronic information, and that can, and often does, involve X Corp. challenging legal process that seeks user data and/or notifying impacted users of efforts to access their data so that they can challenge the underlying legal process. X Corp.'s efforts in this regard rely on having access to information associated with the underlying legal process and the ability to communicate with its users about their data, so that X Corp. can continue to strive to ensure that its users' rights are respected regarding the data X Corp. collects and processes, and to protect its own expressive freedoms.

**Apple Inc.** offers secure hardware, software, and servers to customers worldwide. Apple's business strategy leverages its unique ability to design and develop its own operating systems, hardware, application software, and services to provide customers products and solutions with security, ease of use, seamless integration, and innovative design. In addition to the iPhone, iPad,

and Mac computer, Apple offers its users iCloud—a cloud service for storing photos, contacts, calendars, documents, device backups, and more, keeping everything up to date and available to customers on whatever device they are using. Apple takes seriously its role in protecting the privacy and security of its users' information. That includes, where appropriate, evaluating legal process seeking user data to determine whether it complies with law, including the SCA, and, when permitted, notifying affected users so they may assert their own legal rights.

Amici have no desire to stand in the way of legitimate efforts to investigate crime, including valid legal process to collect evidence to support those investigations. As noted above, collectively they comply with requests to assist in such investigations hundreds of thousands of times each year. In many cases, however, the courts' proper administration of the SCA's exceptions permitting disclosure of user data to the government requires the detailed understanding of services and user bases that only providers possess. Indeed, sometimes rigorous and effective application of the applicable disclosure standards is simply not possible without

providers' input. The SCA provides for such input, expressly permitting providers to move to modify or quash orders issued under 18 U.S.C. § 2703(d).

Amici also have a strong interest in being as transparent as possible with their users regarding government requests for user data, and the public has a strong interest in receiving such information. Accordingly, although Amici often compete vigorously with each other in the marketplace, they join together to provide their unique and important perspective on the issues raised by this litigation.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This case stands to affect every provider governed by the SCA and the users of their services. In enacting the SCA, Congress struck a careful balance: providers are presumptively prohibited from disclosing user data to governmental entities, but the government may overcome that prohibition by meeting rigorous, carefully constructed standards for when the data sought will meet a law enforcement need. The disclosure order under 18 U.S.C. § 2703(d) (the "d-order") at issue in this case required that the government present "specific and articulable facts showing that there are reasonable grounds to believe" that the data sought is "relevant and material to an ongoing criminal investigation."

Amici evaluate hundreds of thousands of pieces of legal process every year and therefore deeply understand how this standard applies to each of their unique services. Because each provider's service and user base are different, it may be apparent only to the receiving provider, with its unique insight, that a particular d-order is overbroad and will result in the disclosure of types of user data or data regarding users that have nothing to do

with the investigation. Accordingly, providers are well-situated to inform an issuing court when an order goes far beyond the statutory standard and sweeps in large amounts of data or users that are neither "relevant" nor "material" to a criminal investigation. 18 U.S.C. § 2703(d).

The district court's decision that the SCA does not permit providers to challenge overbroad orders or even share such information with the court is inconsistent with the text, structure, history, and intent of the SCA. Courts do not effectively administer the statute where, as here, a provider is unable to challenge an order that compels disclosure of user data that is neither relevant nor material to a criminal investigation. The district court's refusal to permit LinkedIn, the provider in this case, to move to modify the order based on its overbreadth prevents this essential information from ever reaching a court.

The district court's decision to uphold an absolute secrecy order, without requiring the government to meet the statute's or the First Amendment's requirements for restricting the provider's speech about the order, compounds these concerns. In Amici's

experience, the government commonly seeks such non-disclosure orders as a matter of course, based on seemingly boilerplate applications and conclusory assertions about the benefits of secrecy. But a secrecy order is a content-based prior restraint on speech, which requires an extraordinary showing from the government to satisfy strict scrutiny. The government cannot properly obtain, let alone maintain, such an order unless it can satisfy *both* 18 U.S.C. § 2705(b) (by demonstrating that one of five specific adverse consequences will result from disclosure) *and* strict scrutiny under the First Amendment (by showing on the specific facts of a case that secrecy is the least restrictive means of protecting a compelling governmental interest).

Amici take no position on the ultimate disposition of the underlying d-order or the accompanying NDO after a proper application of these legal standards. But the principles announced here will reverberate far beyond this case and a single provider.

This case stands to affect the extent to which the users of online services, which the Supreme Court has repeatedly recognized are indispensable to modern life, can continue to rely on

the SCA's assurance that the government cannot compel providers to disclose their data unless it demonstrates that the data is relevant and material to its investigation. *See Chatrie v. United States*, 146 S.Ct. 2193, 2199 (2026); *Carpenter v. United States*, 585 U.S. 296, 311 (2018); *Riley v. California*, 573 U.S. 373, 385 (2014). The types of privacy protections against government intrusion initially reserved to the home now extend to the use of online services, mobile devices, and the "apps and 'services they provide.'" *Chatrie*, 146 S.Ct. at 2214 (use of such services is "insulated from the third-party doctrine"); *Riley,* 573 U.S. at 385. Rigorous application of the Section 2703(d) standard is that much more important in light of the "privacy concerns" raised by the "exhaustive chronicle" the government can compile by obtaining data regarding users' online activity. *Chatrie*, 146 S.Ct. at 2212-13 (citation modified).

This case also has broader implications for the government's practice of obtaining orders preventing a provider from notifying its customers that law enforcement has compelled it to disclose their data—even when the provider only wishes to notify a single

attorney, as here. In Amici's experience, the government frequently seeks such orders without demonstrating that secrecy is necessary to protect one of the five specific interests identified in the SCA, and that there is no more limited way to protect that interest consistent with strict scrutiny under the First Amendment.

Amici urge the Court to hold that the district court erroneously denied LinkedIn's ability to raise an overbreadth challenge, and failed to properly hold the government to its burden of satisfying strict scrutiny to obtain the secrecy order.

## ARGUMENT

Based on Amici's review of LinkedIn's partially unsealed Opening Brief, it appears to Amici that the district court misinterpreted the SCA by: (1) declining even to receive from LinkedIn information bearing on the overbreadth of the d-order; (2) permitting the government to compel a provider to disclose user data the government concedes is neither relevant nor material to its investigation; and (3) failing to require that the government satisfy strict scrutiny in justifying the secrecy order, based on evidence of a compelling interest in suppressing provider speech

about the d-order that cannot be accomplished with a less restrictive alternative.

## I. The SCA Gives Providers a Pivotal Role in Ensuring the Proper Functioning of the Statute's Framework.

Providers have unique insight into their complex, ever-changing data storage and communications systems. They can therefore play an important role when served with a d-order compelling them to disclose user data. Especially when a request is paired with a secrecy order, as here, providers are the only party able to challenge the overbreadth of such an order. Section 2703(d) permits a provider to make a motion to a court that issued a d-order to "modify or quash" that order.

If a court issues an overbroad order—sometimes based on a misunderstanding of the provider's services and the volume and types of data it possesses—the order may sweep in large volumes of data, including data from a significant number of users who have nothing to do with the government's investigation. The provider, through its motion, can inform the court of the true scope of the order so that the court can consider whether it is appropriate to

modify its order to focus on data and users relevant to the government's investigation. The district court misread the statute to prohibit providers from making such a motion.

### A. The SCA delimits the categories of data available to the government and the showings the government must make to obtain each category.

Congress enacted the Electronic Communications Privacy Act ("ECPA"), including the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701–2713, to protect the privacy of users of rapidly growing online communications, storage, and processing services. In enacting the SCA, Congress recognized that due to the "advent of computerized recordkeeping systems" and the proliferation of electronic communications, "Americans have lost the ability to lock away a great deal of personal and business information." S. Rep. No. 99-541, at 3 (1986). At the same time, the "development of new methods of communication and devices for surveillance" "expanded dramatically the opportunity" for governmental "intrusions" into users' privacy. *Id.* at 1. Congress was concerned that the resulting "legal uncertainty" would "discourage potential customers from using innovative communications systems," and "discourage

American businesses" from investing in online communication and data storage and processing services. *Id.* at 5.

To prevent the "gradual erosion of th[e] precious right" to privacy, Congress enacted a range of statutory privacy rights. *Hately v. Watts*, 917 F.3d 770, 783 (4th Cir. 2019) (quoting S. Rep. No. 99-541, at 5). Securing those rights, the SCA imposed upon providers "great[] responsibilities regarding the disclosure and safeguarding of … electronic information," *In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F. Supp. 3d 201, 203 (D.D.C. 2018), and vested users with a private right of action to seek monetary damages if providers did not meet their obligations, 18 U.S.C. § 2707(a)-(c).

The SCA's presumptive prohibition of providers disclosing user communications or related data to governmental entities is perhaps the most important of these protections. 18 U.S.C. § 2702(a)(1)-(3). Through this provision, Congress struck a careful balance between user privacy and law enforcement. S. Rep. No. 99-541, at 3 ("to protect privacy interests in personal and proprietary information, while protecting the Government's legitimate law

enforcement needs"); *see also* 132 Cong. Rec. 27,633 (1986) (statement of Sen. Leahy) ("These provisions are designed to protect legitimate law enforcement needs while minimizing intrusions on [] privacy[.]"). The SCA permits the government to compel providers to disclose only limited user data, and only by meeting a graduated set of standards.

The government's burden becomes more rigorous as the category of data that it seeks becomes more sensitive. A "governmental entity" can compel a provider to disclose basic subscriber information—name, address, and other limited account information—by meeting the bare relevance standard required to issue a subpoena. 18 U.S.C. § 2703(c)(2); *see* Orin S. Kerr, *A User's Guide to the Stored Communications Act*, 72 Geo. Wash. L. Rev. 1208, 1219 (2004). If, however, a governmental entity seeks to compel a provider to disclose more sensitive user data (*e.g.*, metadata) by applying to a court for a d-order, as the government has done here, it must present "specific and articulable facts" that the records "are relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d); *see also* Kerr, 72 Geo. Wash. L.

Rev. at 1219. This heightened showing was designed to prevent the government from conducting "fishing expeditions"—compelling disclosure of a large volume of user data so law enforcement can sift through it to try to find data relevant and material to its investigation. *In re Application of U.S. for an Ord. Directing a Provider of Elec. Commc'n Serv. to Disclose Recs. to Gov't*, 620 F.3d 304, 314 (3d Cir. 2010) (quoting S. Rep. No. 103-402, at 31 (1994)). And if a governmental entity seeks to compel a provider to disclose communication *content*, it can do so only through a search warrant based on probable cause. 18 U.S.C. § 2703(a); *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010) (holding that "a subscriber enjoys a reasonable expectation of privacy in the contents of emails").

### B. The SCA permits a provider to move to modify or quash a d-order for its overbreadth.

In Amici's experience, d-orders sometimes reflect a misunderstanding of the services and user base of the providers from whom they are seeking data. That is not surprising. Each service is different, and its operation can be technical and change frequently as technology evolves and user demands change. Such a

misunderstanding can result in an order that sweeps in large volumes of user data and large numbers of users that are clearly not relevant and material to the government's investigation. Even in the absence of any misunderstanding, imprecise or overly broad language in an order can equally lead to a sweeping collection of irrelevant materials.

To address such situations, Congress intended to grant providers "standing … *to contest an overly broad order* … to protect the service provider from unduly burdensome requirements and to permit an impartial judicial officer to evaluate the appropriateness of the government's request." S. Rep. No. 99-541, at 39 (1986) (emphases added). This statement, which the lower court may not have considered, clearly evidences Congress' long-standing intent to provide a check on overly broad orders by ensuring that providers can seek judicial recourse when they receive such orders.

Congress did what it intended. Rather than foreclose providers' challenges in the manner that the district court believed, Section 2703(d)'s plain text *invites* providers to bring such challenges by permitting motions to "quash or modify such order."

That permissive language does not limit the information the provider can include in its motion or the arguments the provider can advance.

Section 2703(d) also expressly *permits* the court to quash or modify its order "if the information or records requested are unusually voluminous in nature or compliance with [the] order otherwise would cause an undue burden on [the] provider." 18 U.S.C. § 2703(d).[3] It does not prohibit the court from quashing or

---

[3] The district court also erred when it held that compelling a provider to comply with an overbroad order would not result in an "undue burden" on the provider. The SCA does not define when a burden is "undue," so courts must interpret the term to have its "ordinary, contemporary, common meaning," *see Hately*, 917 F.3d at 784 (interpreting the SCA). A burden is "undue" if it is "excessive," unwarranted, or unjustified. *Groff v. DeJoy*, 600 U.S. 447, 469 (2023) (collecting citations). An overbroad order that required a provider to disclose extensive user data that was not relevant or material to an investigation would cause an excessive, unwarranted, or unjustified burden on the provider. *See In re Order Requiring Apple, Inc. to Assist in the Execution of a Search Warrant Issued by this Court*, 149 F. Supp. 3d 341, 371 (E.D.N.Y. 2016) (a provider is "burdened in a legally cognizable way when forced unwillingly to comply with what they sincerely believe to be an unlawful government intrusion"). Further, because the SCA immunizes providers from liability when they rely in "good faith" on legal process, it cannot be the case that the statute requires providers to comply with orders that they do *not* believe in good faith are valid. *See* 18 U.S.C. § 2707(e). Compliance with such an order would cause an undue burden to the provider because it

modifying an order on other grounds, or from granting other types of relief. When Congress intended in the SCA to dictate the exclusive basis upon which a court could act, it did so, using "only if" instead of the non-exclusive "if." *See* 18 U.S.C. § 2703(d) ("A court order … shall issue *only if* the governmental entity offers …") (emphasis added); *id.* § 2703(h)(2)(B) ("The court may modify or quash the legal process, as appropriate, *only if* the court finds …") (emphasis added). It did not do so here.

As Section 2703(d)'s plain text indicates, Congress did exactly what it set out to do: it broadly permitted providers to move to modify or quash d-orders based on their unique understanding of their services and user bases and, with the benefit of that important information, "permit[ted] an impartial judicial officer to evaluate the appropriateness of the government's request." S. Rep. No. 99-541, at 39 (1986).[4]

---

would strip the provider of statutory immunity and expose it to potential liability.

[4] To be clear, it is rare for a provider to challenge a d-order. But in cases where a provider knows that the order will compel disclosure of large amounts of data—often based on law enforcement's apparent misunderstanding of the provider's services, data, and

### C. Section 2703(d) does not permit an order to compel a provider to disclose "extensive" user data that is not relevant or material to its investigation.

The district court erred by holding that Section 2703(d) permits an order to compel a provider to disclose significant amounts of user information that even the government appears to concede is neither relevant nor material to its investigation. *See* Answering Br. 22-23 (The "capture of some or even a large amount of irrelevant [redacted] is a feature, not a bug, of d-orders[.]"). As an alternative to its holding that a provider cannot move to modify or quash an overbroad d-order, the district court held that so long as the order sought some "relevant and material" records, it could also "direct the production of some irrelevant non-content records" and even "extensive" "irrelevant material." Opening Br. 11 (quoting JA 5-6). That holding simply cannot be squared with the text of Section 2703(d), which permits a court to issue an order "only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the [data] sought

user base—the provider's ability to make that showing to a court is indispensable.

[is] relevant and material to an ongoing criminal investigation." If the court has reasonable grounds to believe that "the [data] sought" is irrelevant or immaterial to the government's investigation, it cannot order the provider to disclose it. *Id*.

The structure of the statute reinforces this plain reading of its text. Section 2703(d) carves out one narrow exception to the SCA's general rule that providers are prohibited from disclosing user data to the government. But under the district court's interpretation, the exception would swallow the rule. A provider could be required to disclose the data of 1,000 users, or even 100,000 users, so long as the data of some small number of those users was relevant to an investigation. The order would then authorize the very "fishing expedition" that the statute intended to prevent. *In re Application*, 620 F.3d at 314.

Section 2703(d) must be read consistently with its text, the SCA's structure, and Congress's intent to protect user privacy. Read correctly, the statute permits a court to issue an order only if the government "offers specific and articulable facts showing that there are reasonable grounds to believe that the [data] sought [is]

relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). By its terms, it does not permit an order to compel a provider to disclose user data the government *knows is not* relevant and material to its investigation, as appears to be the case here. *Id.*; *see* Opening Brief 30-35.[5]

**D. The district court's cramped interpretation of the SCA risks undermining user trust in the security of their data.**

The district court's misinterpretation of the statute stands to have significant adverse consequences on users' trust, with ramifications well beyond this case. Providers' businesses depend

[5] As discussed above, d-orders are obtained by government officials who may lack specific knowledge of a provider's services, data systems, and user bases, or may simply at times use inartful and overly broad language. *See supra* pp. 17-18. In addition, the approving court may itself insert broad identifiers into its order. Inevitably, then, such requests may turn up some data that ends up being irrelevant to the underlying investigation. Amici do not suggest that all such requests are unlawfully overbroad. Nor does this Court need to specifically delineate the exact moment that a request becomes overbroad under Section 2703(d). It appears that LinkedIn made its own proposals about how to "modify" and "narrow" the d-order, which the district court should consider in the first instance. *See* Opening Br. 10, 30. All that is required to address the district court's error at this stage is to correct its suggestion that even "extensive" "irrelevant" material is properly subject to a d-order. *Id.* at 11 (quoting JA 5-6).

on users' confidence that the SCA standards will be applied properly and rigorously. If the government is permitted to compel providers to disclose concededly irrelevant and immaterial data regarding users who have nothing to do with its investigation, user behavior will be substantially chilled. *See* Jonathon W. Penney, *Chilling Effects: Online Surveillance and Wikipedia Use*, 31 Berkeley Tech. L.J. 117, 124 (2016); Katie Hafner, *After Subpoenas, Internet Searches Give Some Pause*, N.Y. Times (Jan. 25, 2006).[6]

That is yet another reason to permit providers to raise all applicable arguments that a d-order is overbroad, without the district court's artificial restraints: when they move to modify or quash d-orders, providers seek to advance their *users*' interest in the proper treatment of their data, in addition to the providers' own interests. A user himself cannot seek judicial relief at the d-order stage, both because there is no practical way for most users to know

---

[6] Available at https://perma.cc/R6A7-46C6; *see also* Alex Marthews & Catherine Tucker, *Government Surveillance and Internet Search Behavior* (Feb. 17, 2017) (finding a "chilling effect" on Google searches resulting from government surveillance on the Internet), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2412564.

their data might be part of a demand from the provider, and because the statute affirmatively extends that right only to "the service provider." 18 U.S.C. § 2703(d). As a result, providers are the only parties practically positioned to raise overbreadth challenges before an unwarranted disclosure of user data has occurred.

## II. In Amici's Experience, the Government Often Fails to Meet the Showing Required by the SCA and the First Amendment to Obtain a Secrecy Order.

The SCA presumptively permits providers to notify users when the government seeks their data unless a narrow, specific exception applies. The SCA "does not require the sealing of warrants or § 2703(d) orders" and contains no "default sealing or nondisclosure provisions." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1129 (D.C. Cir. 2020) (citation modified); *see also In re U.S. for an Ord. Pursuant to 18 U.S.C. Section 2703(d)*, 707 F.3d 283, 290-91 (4th Cir. 2013) (holding that d-orders are "judicial records," meaning "the common law presumption of [public] access" "attaches" to these documents).

Traditional legal process generally requires notice to individuals and businesses affected by governmental searches of

their property. At common law, police officers were generally required to knock and announce their presence before entering a suspect's home to execute a warrant. *See Wilson v. Arkansas*, 514 U.S. 927, 931-33 (1995). The common law likewise required officers to provide written notice, in the form of an "inventory," to anyone whose property was seized. *See Wilkes v. Wood*, 98 Eng. Rep. 489, 498 (C.P. 1763). Still today, "no obligation of secrecy" may be imposed on recipients of traditional grand jury subpoenas. *See* Fed. R. Crim. P. 6(e)(2)(A). And when federal officers execute a search warrant, the officer must take an "inventory of any property seized" and leave a "receipt for the property taken to the person from whom … the property was taken." Fed. R. Crim. P. 41(f)(1)(B)-(C).

This was the background understanding of legal process that everyone, including Congress, would have shared at the time of the SCA's enactment in 1986. When Congress passed the SCA, law enforcement could rarely obtain a person's documents without their knowledge because companies and people generally stored their data in filing cabinets, in physical warehouses, or on personal computers and local networks. *See* Kevin Werbach, *The Network*

*Utility*, 60 Duke L.J. 1761, 1811-14 (2011). But the advent of electronic communications and remote computing services, like social media platforms and cloud storage services, opened a door to a new, more covert form of law enforcement investigation: it has never been easier for law enforcement to gather information about a user *without the user's knowledge* merely by compelling a provider to access cloud storage and supply copies of the relevant data. *See Hately*, 917 F.3d at 773 n.1. If the government can overcome the presumption of transparency codified in Sections 2703(b) and 2705(b), the user never knows that the government has accessed her data.

That background assumption helps explain why the statute presumptively permits a provider to give notice to an affected party, 18 U.S.C. § 2703(b)(1)(B). When the government believes that a d-order should be kept confidential, it must seek an additional court order—a secrecy order under Section 2705(b). For the government to obtain such an order, a court must find reason to believe, based on evidence presented by the government, that disclosure "will" result in "(1) endangering the life or physical safety of an individual;

(2) flight from prosecution; (3) destruction of or tampering with evidence; (4) intimidation of potential witnesses; or (5) otherwise seriously jeopardizing an investigation or unduly delaying a trial." *Id*.

To overcome this general presumption that providers are permitted to provide notice to their users when the government seeks disclosure of their data, the mere fact that the government is conducting an investigation will not suffice. Nor will a boilerplate application consisting of conclusory statements. The government must provide sufficient *specific* facts such that a court can make an independent determination that a statutory consequence will result.

It is often difficult for the government to make such a showing for an individual user or a small enterprise; it is even more difficult when the user is a large enterprise, which may have trusted contacts who can be notified safely without compromising the investigation. Large enterprises may also have general counsel dedicated to legal compliance, whose job it is to prevent the statutory consequences listed above, and who may be bound by

professional and ethical obligations to maintain the secrecy of the order and investigation. And, if the investigative target is not the enterprise itself, the interests of the enterprise may be aligned with those of the government, providing an incentive to maintain secrecy (if, for example, individual personnel are suspected of misconduct). In any case, the government bears the burden of demonstrating to a reviewing court that there is "reason to believe" that notifying a trusted contact at the enterprise "will result"—not "could result"—in one of the enumerated statutory harms.

Based on the information available to Amici, it does not appear that the district court held the government to the applicable standard. It instead permitted the government to maintain complete secrecy based on its "compelling interest in maintaining the secrecy of an ongoing criminal investigation." Opening Br. 11 (quoting JA 11-12). But that is not one of the five enumerated factors. 18 U.S.C. § 2705(b). The statute's express list of reasons justifying a secrecy order leaves no room for the recognition of additional categories. *See Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002) (Under the "*expressio unius*" canon, a statute's

"expressing one item of [an] associated group or series excludes another left unmentioned.") (citation modified).

The secrecy order must also satisfy the First Amendment. LinkedIn has persuasively explained why the "secrecy order" issued in this case—which prevents LinkedIn from disclosing the existence of the d-order to *anyone*, including an attorney who would be bound by the secrecy order—is a content-based prior restraint on speech subject to strict scrutiny. Opening Br. 35-51. Strict scrutiny demands that the government demonstrate, based on specific facts, a substantial connection between its proposed prior restraint (the secrecy order) and a risk of harm to a compelling governmental interest. *See, e.g.*, *Reno v. ACLU*, 521 U.S. 844, 874 (1997). To satisfy strict scrutiny, the government must show both that prohibiting a provider from giving notice is necessary to advance a compelling government interest and that no narrower prohibition will accomplish that interest.

While secrecy orders under Section 2705(b) are supposed to be the exception rather than the rule, in Amici's experience, such orders have become increasingly routine. The government now

obtains gag orders under Section 2705(b) in connection with a substantial proportion of legal requests. As the Western District of Washington observed, a single provider—LinkedIn's parent company—once reported that the government had "sought and obtained 3,250 such orders" in a 20-month period. *Microsoft Corp. v. U.S. Dep't of Just.*, 233 F. Supp. 3d 887, 902 (W.D. Wash. 2017).

In Amici's experience, government requests for secrecy orders often contain little or no case-specific evidence indicating that secrecy is necessary. *See, e.g., In re Grand Jury Subpoena to Facebook*, No. 16-mc-1300, 2016 WL 9274455, at *4 (E.D.N.Y. May 12, 2016) (rejecting application justified by "boilerplate assertions"); *In re Grand Jury Subpoena to [Redacted,] Inc.*, No. 18-mc-334, 2018 WL 718383, at *4 (E.D.N.Y. Feb. 5, 2018). And when providers raise concerns, courts sometimes improperly shift the burden, requiring the provider to show that secrecy is not necessary or that the government's needs could be met by a narrower order. The First Amendment requires *the government* to prove with specific, concrete evidence that it is necessary to restrain the provider's speech in order to advance the government's interest,

and that the order it seeks is the narrowest possible means of doing so. So long as the validity of a secrecy order is in dispute, the "censor" must "bear the burden of proof." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 321 (2002).

* * *

Amici are presumptively free under the SCA and the First Amendment to engage in protected speech about government affairs and issues of public concern—speech which "occupies the highest rung of the hierarchy of First Amendment values." *Connick v. Myers*, 461 U.S. 138, 145 (1983) (citation omitted). This includes informing users that the government has obtained a court order requiring disclosure of their data. Because any unnecessary prior restraint results in "immediate and irreversible" harms, courts must hold the government to these exacting demands *before* issuing a secrecy order and whenever such an order is challenged. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). The district court erred to the extent it did not do so here.

## CONCLUSION

The Court should hold that the district court erroneously denied LinkedIn the ability to challenge the d-order for its

overbreadth, and that it also failed to apply strict scrutiny to the secrecy order. Amici take no position on how the sealed facts of the case, which they cannot review, may affect this Court's ultimate judgment.

Dated: August 4, 2026

Respectfully submitted,

*/s/ J. Jonathan Hawk**
*(with permission)*
J. Jonathan Hawk
McDERMOTT WILL
& SCHULTE LLP
2049 Century Park E, Suite 3200
Los Angeles, CA 90067
(310) 788-4181
jhawk@mcdermottlaw.com

*Counsel for Amicus X Corp.*

* Application for admission pending

*/s/ Jacob Sommer*
*(with permission)*
Jacob Sommer
ZWILLGEN PLLC
1900 M St. NW, Suite 250
Washington, DC 20036
(202) 706-5205
jake@zwillgen.com

*Counsel for Amicus Apple Inc.*

*/s/ Addison W. Bennett*
Todd M. Hinnen
John R. Tyler
ASHURST PERKINS COIE US LLP
1301 2nd Avenue, Suite 4200
Seattle, WA 98101
(206) 359-8000
Todd.Hinnen@ashurstperkins.com
Randy.Tyler@ashurstperkins.com

Addison W. Bennett
ASHURST PERKINS COIE US LLP
2525 E. Camelback Road, Suite 500
Phoenix, AZ 85016
(602) 351-8000
Addison.Bennett@ashurstperkins.com

*Counsel for Amici Amazon.com, Inc., Google LLC, and Meta Platforms, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

**1.** This brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 6,033 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

**2.** This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Century Schoolbook.

Dated: August 4, 2026

*/s/ Addison W. Bennett*
Addison W. Bennett

## CERTIFICATE OF SERVICE

This is to certify that on August 4, 2026, I electronically filed the foregoing Brief of Amici Curiae with the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system, thereby serving the Brief via the CM/ECF system on all counsel of record.

Dated: August 4, 2026

*/s/ Addison W. Bennett*
Addison W. Bennett