**FILED UNDER SEAL**

**No. 26-4303**

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

IN RE: APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)

On Appeal from the United States District Court for the Eastern District of Virginia, No. 4:25-dm-1 (4:25-ec-25) (Hanes, J.)

## SEALED REPLY BRIEF FOR APPELLANT


LEAH FUGERE
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Ave, Suite 2400
Los Angeles, CA 90071
(213) 443-5312

AARON ZEBLEY
ARI HOLTZBLATT
SIDDHARTH VELAMOOR
HILARY HURD
MATT MORRIS
ANDREW NELL
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000


August 5, 2026

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION ..................................................................................... 1

ARGUMENT ............................................................................................ 3

I. THE D-ORDER VIOLATES [redacted] AND THE STORED COMMUNICATIONS ACT ........................................................ 3

A. LinkedIn Has Standing To Challenge The D-Order ............................ 3

[redacted]

C. The SCA [redacted] Requires Modifying The D-Order ..................... 15

1. Providers May Challenge Overbroad § 2703(d) Orders ........................................................................ 16

2. The Government's Proffered Relevance Standard Is Wrong ....................................................................... 20

II. THE FIRST AMENDMENT AND § 2705(b) REQUIRE MODIFYING THE SECRECY ORDER ........................................................................ 22

A. Strict Scrutiny Applies, Not A Novel "Good Cause" Standard ....................................................................................... 23

B. The Secrecy Order Fails Strict Scrutiny .............................................. 24

III. DUE PROCESS REQUIRES THAT LINKEDIN BE PERMITTED TO CONFRONT THE EVIDENCE AGAINST IT ......................................................... 28

CONCLUSION ........................................................................................ 29

CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ali v. Federal Bureau of Prisons*,
552 U.S. 214 (2008)....................18

[redacted]

*Atlantic Cleaners & Dyers, Inc. v. United States*,
286 U.S. 427 (1932)....................19

[redacted]

[redacted]

*DiCocco v. Garland*,
52 F.4th 588 (4th Cir. 2022)....................4

*Doe v. Mast*,
173 F.4th 524 (4th Cir. 2026)....................23

*Elrod v. Burns*,
427 U.S. 347 (1976)....................28

*Environmental Defense v. Duke Energy Corp.*,
549 U.S. 561 (2007)....................19

*Fischer v. United States*,
603 U.S. 480 (2024)....................18

*Freilich v. Upper Chesapeake Health, Inc.*,
313 F.3d 205 (4th Cir. 2002)....................4

*Google LLC v. United States*,
2025 WL 4958336 (D.D.C. Feb. 25, 2025)....................5, 20

[redacted]

*In re Apple, Inc.*,
149 F.Supp.3d 341 (E.D.N.Y. 2016) ....................................................18

*In re Application of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*,
830 F.Supp.2d 114 (E.D. Va. 2011) ....................................................21

[redacted]

*In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*,
706 F.Supp.2d 11 (D.D.C. 2009) ....................................................5

*In re Grand Jury Subpoena, No. 16-03-217*,
875 F.3d 1179 (9th Cir. 2017) ....................................................5

[redacted]

*In re Grand Jury Subpoena to Google, LLC Dated Mar. 20, 2019*,
2020 WL 13505395 (S.D.N.Y. Jan. 31, 2020) ....................................................3, 20

*In re Sealed Case*,
144 F.4th 329 (D.C. Cir. 2025) ....................................................17

[redacted]

*In re United States for an Order Pursuant to 18 U.S.C. § 2703(d)*,
707 F.3d 283 (4th Cir. 2013) ....................................................2, 28

*In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*,
289 F.Supp.3d 201 (D.D.C. 2018) ....................................................5

*Jefferson Community Health Care Centers, Inc. v. Jefferson Parish Government*,
849 F.3d 615 (5th Cir. 2017) ....................................................4

*Laufer v. Naranda Hotels, LLC*,
60 F.4th 156 (4th Cir. 2023) ....................................................4

*Maryland Shall Issue, Inc. v. Hogan*,
971 F.3d 199 (4th Cir. 2020) ....................................................5

[redacted]

[redacted]

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*,
22 F.3d 546 (4th Cir. 1994) ....................................................................28

*Muth v. United States*,
1 F.3d 246 (4th Cir. 1993) ......................................................................23

*Nebraska Press Association v. Stuart*,
427 U.S. 539 (1976)...............................................................................26

*Reno v. American Civil Liberties Union*,
521 U.S. 844 (1997)...............................................................................24

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984).................................................................................23

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020).................................................................................4

[redacted]

*Spirit Aerosystems, Inc. v. Paxton*,
142 F.4th 278 (5th Cir. 2025) ..................................................................17

[redacted]

[redacted]

*United States v. Kennedy*,
81 F.Supp.2d 1103 (D. Kan. 2000) ..........................................................21

[redacted]

*United States v. Playboy Entertainment Group*,
529 U.S. 803 (2000)....................................................................24, 25

[redacted]

[redacted]

**DOCKETED CASES**

[redacted]

[redacted]

*United States v. Google LLC*,
No. 19-1891 (2d Cir. filed June 19, 2019) ...........................................3, 4, 20

**STATUTES AND REGULATIONS**

18 U.S.C.
§ 2702 ..........................................................................................16
§ 2703 .................................................................................... *passim*
§ 2705 ....................................................................................22, 25
§ 2706 ..........................................................................................19

[redacted]

**OTHER AUTHORITIES**

H.R. Rep. No. 103-827 (1994).............................................................21

[redacted]

Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208 (2004)..........................................................................15

Pub. L. No. 99-508 § 201, 1986 U.S.C.C.A.N. (100 Stat.) 1862. ..........................21

S. Rep. 99-541 (1986) ..........................................................................15, 16, 18

## INTRODUCTION

This case involves no "routine application of the Stored Communications Act." Opp.1. [redacted] Nor is it routine to subject a communications provider to an across-the-board Secrecy Order when a proven and less speech-restrictive alternative exists. [redacted] Regardless, it should not be routine for the government to rely on secret evidence to suppress speech. None of this should be routine, because none of this is lawful, under the Constitution or the Stored Communications Act ("SCA").

As to the D-Order, the government mistakenly claims that LinkedIn faces no injury from being forced to provide documents it wishes to withhold and raises a

[redacted]

forfeited objection to third-party standing. [redacted] And it depicts the SCA as wholly unconcerned with the privacy of internet users, contrary to the statute's text and history.

With respect to the Secrecy Order, the government disregards fundamental First Amendment principles. It contends that a content-based prior restraint is subject to a forgiving "good cause" review, not strict scrutiny. But this contradicts decades of Supreme Court precedent, and the government did not dispute the application of strict scrutiny before the district court. The government also insists that disclosure of the D-Order to a single, [redacted] attorney would compromise the integrity of its investigation, [redacted]

Finally, the government has no good answer to LinkedIn's arguments regarding *ex parte* evidence. Instead, it misreads *Appelbaum*, conflating due process with the public-access doctrine.

The Court should reject these arguments and reverse.

## ARGUMENT

### I. THE D-ORDER VIOLATES [redacted] THE STORED COMMUNICATIONS ACT

The government's defense of the D-Order comes up short. Its standing challenge fails because LinkedIn faces a quintessential injury in fact and has third-party standing. [redacted] courts must narrow such demands to exclude records irrelevant to the government's investigation when narrower alternatives are available. And the government's argument that § 2703(d) bars challenges to overbroad orders contradicts the statute's text and history.[2]

#### A. LinkedIn Has Standing To Challenge The D-Order

The government claims LinkedIn lacks standing because LinkedIn has not proven that the D-Order requires production of unusually voluminous records or imposes an undue burden, two bases § 2703(d) provides for quashing an order. Opp.15. For support, it relies on a district court decision that was vacated after the government let its secrecy order lapse and moved to dismiss the appeal. *In re Grand Jury Subpoena to Google, LLC Dated Mar. 20, 2019*, 2020 WL 13505395 (S.D.N.Y. Jan. 31, 2020); Order, *United States v. Google LLC*, No. 19-1891 (2d

---

[2] Although the government urges the Court to apply abuse-of-discretion review throughout, LinkedIn's challenges turn on legal questions reviewed de novo.

Cir. May 14, 2021), Dkt. 220. But that decision—and the government's argument—conflicts with basic Article III principles. Whether LinkedIn's injury is cognizable under the SCA "conflate[s] the threshold standing question with the merits." *DiCocco v. Garland*, 52 F.4th 588, 591 (4th Cir. 2022). "When assessing whether [LinkedIn] possesses Article III standing," the Court must "'accept[] as valid the merits of [LinkedIn's] legal claims'" and thus assume LinkedIn's injury is one the SCA cares about. *Laufer v. Naranda Hotels, LLC*, 60 F.4th 156, 161 (4th Cir. 2023). And in any event, compelling LinkedIn to "provide documents it would prefer to withhold[ is] a concrete injury," which would be redressed by reversal "with instructions to deny" or modify "the Government's … demand." *See Seila Law LLC v. CFPB*, 591 U.S. 197, 211 (2020). LinkedIn therefore has standing.

The government has forfeited its alternative argument that LinkedIn lacks third-party standing. Third-party standing does not go to subject-matter jurisdiction but is instead a "prudential limitation" subject to forfeiture. *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214-215 (4th Cir. 2002); *see Jefferson Community Health Care Centers, Inc. v. Jefferson Parish Government*, 849 F.3d 615, 625 n.3 (5th Cir. 2017). As the government concedes, it never raised third-party standing despite multiple opportunities (Opp.14 n.3), so it may not raise it for the first time on appeal.

In any event, the government's challenge to LinkedIn's third-party standing lacks merit. The government argues that LinkedIn lacks the requisite "close relationship" with [redacted]. But that standard is "'quite forgiving,'" particularly where, as here, "'enforcement of the challenged [order] against the litigant would result indirectly in the violation of third parties' rights[.]'" *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 215-216 (4th Cir. 2020). Courts have "uniformly" held a vendor-vendee relationship sufficient, even when customers faced no "hinder[ance] in bringing their own claims." *Id.* And LinkedIn's relationship with [redacted] is even more substantial: In the SCA, Congress expressly tasked service providers with "safeguarding of their customers' electronic information." *In re United States for an Order Pursuant to 18 U.S.C. § 2705(b)*, 289 F.Supp.3d 201, 203 (D.D.C. 2018). Courts routinely find third-party standing in comparable circumstances. *E.g.*, *In re Grand Jury Subpoena, No. 16-03-217*, 875 F.3d 1179, 1183 n.2 (9th Cir. 2017); *In re Grand Jury Investigation of Possible Violation of 18 U.S.C. § 1461 et seq.*, 706 F.Supp.2d 11, 17 n.3 (D.D.C. 2009).[3]

[3] The government also cites *Google LLC v. United States*, 2025 WL 4958336, at *7 (D.D.C. Feb. 25, 2025), for the proposition that LinkedIn lacks standing to raise an SCA challenge [redacted] Opp.19. But *Google* turned on Fourth Amendment-specific standing rules that generally preclude pre-enforcement review of warrants and do not apply outside the Fourth Amendment context. 2025 WL 4958336, at *7.

[redacted] [redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

---

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted] [redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

### C. The SCA [redacted] Requires Modifying The D-Order

The government reads the SCA to authorize the very thing Congress enacted § 2703(d) to prevent—a fishing expedition—and to strip this Court of any meaningful role in stopping it. That reading ignores that § 2703(d) is keyed only to "relevant and material" records and conflicts with statutory text, purpose, and precedent.

Most fundamentally, the government's analysis ignores a central feature of the SCA: Providers serve as stewards for users' privacy. Congress enacted the statute to address gaps in Fourth Amendment protection for internet communications—that is, to protect the privacy of internet *users*. *See* Orin S. Kerr, *A User's Guide to the Stored Communications Act, and a Legislator's Guide to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1210-1212 (2004); *see also* S. Rep. 99-541, at 5 (1986) (SCA "protect[s] the privacy of … citizens"). And it made providers critical gatekeepers, responsible for upholding the statute's protections. *See id.* The SCA's structure makes this clear: It directs its prohibitions on disclosure at providers, and, in § 2703(d), it empowers providers to challenge legal

process from the government. *See* 18 U.S.C. §§ 2702(a), 2703. As Congress explained, § 2703(d) allows a provider "to contest an overly broad order" and exists "to permit an impartial judicial officer to evaluate the appropriateness of the government's request." S. Rep. 99-541, at 39. The government's framing—that § 2703 is concerned only with burdens on providers, not "the interests of … subscribers"—contradicts Congress's clear intent. Opp.20.

*1. Providers May Challenge Overbroad § 2703(d) Orders*

The government's core argument is that a provider may move to quash or modify a § 2703(d) order only where compliance poses a "logistical or practical" burden—not where the order sweeps up extensive irrelevant records. Opp.20, 22. Quite the contrary, the statute provides two independent bases for overbreadth challenges.

To begin with, § 2703(d) imposes a relevance standard. A § 2703(d) order may issue only where the government offers "specific and articulable facts" showing that the requested records "are relevant and material to an ongoing criminal investigation." It follows that a § 2703(d) order that does not meet this standard must be quashed.

The government appears to deny that a provider can seek to quash a § 2703(d) order on relevance grounds. *See* Opp.20. But the government does not dispute that the recipient of a government demand for documents "must have the

opportunity to 'obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply.'" *Spirit Aerosystems, Inc. v. Paxton,* 142 F.4th 278, 290 (5th Cir. 2025). That review can come only through a motion to quash, as providers cannot challenge the government's application for a § 2703(d) order before the order is issued. And the government gives no reason why a provider should not be able to argue that a § 2703(d) order exceeds statutory limits, consistent with the commonsense notion that a court may "revisit its statutory authority to issue [an] order." *In re Sealed Case*, 144 F.4th 329, 333 (D.C. Cir. 2025). *See also* ACLU Br. at 9-11.

The availability of an overbreadth challenge to § 2703(d) orders also follows *a fortiori* from the fact that recipients of less-intrusive process may raise overbreadth arguments. As the government concedes, grand jury subpoenas may be "challenged on relevancy grounds" (Opp.38), and § 2703(d)'s requirement to show "relevan[ce] and material[ity]" based on "specific and articulable" facts is a higher "reasonable suspicion" standard, Opp.23-24. It follows from that higher standard that providers must also be able to challenge § 2703(d) orders on relevancy grounds.

Nor does the government's attempt to interpret "undue burden" in § 2703(d) as restricting providers to raising practical and logistical objections persuade. Opp.19-22. The government contends that the word "otherwise" "link[s]" "undue

burden" to the phrase "unusually voluminous" and thereby "narrows" the statute to encompass only logistical burdens to providers, not burdens on user privacy. Opp.19-20. But as explained, Br.34, volume is a scope-based concern—a demand to produce too much material. That concern is not confined to logistical hardship (which would make little sense in an age of big data anyway). And in any event, the phrases "undue burden" and "unusually voluminous" do not naturally cover the same ground.

In arguing otherwise, the government cites *Fischer v. United States*, 603 U.S. 480 (2024). Opp.19-20. But as LinkedIn has explained (Br.34 n.7)—and the government has ignored—the canon that *Fischer* invoked (*ejusdem generis*) does not apply to provisions that are "disjunctive, with one specific and one general category"—precisely the structure of § 2703(d). *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 225 (2008). More broadly, Congress empowered providers to raise "undue burden" challenges in part "to permit an impartial judicial officer to evaluate the appropriateness of the government's request"—i.e., to allow for overbreadth challenges. S. Rep. 99-541, at 39. Regardless, being forced to comply with an illegal order *is* a burden on providers. *See In re Apple, Inc.*, 149 F.Supp.3d 341, 372 (E.D.N.Y. 2016).

The SCA's cost-reimbursement provision, § 2706(c), also does not confine "undue burden" in § 2703(d) to logistical impediments on the provider, as the

government suggests. Opp.20. Section 2706(c) provides reimbursement for the costs of assembling telephone toll records and "listings," if such assembly "cause[s] an undue burden on the provider." Given its narrow remit, the provision cannot reasonably dictate the interpretation of "undue burden" in § 2703(d), which applies to SCA orders of all kinds. It would also make little sense for "undue burden" to carry the same meaning in § 2706(c) and § 2703(d), given the dramatically different remedies the two provisions allow for: cost shifting for an economic burden in § 2706(c), versus excusing a legal obligation entirely in § 2703(d). The presumption of consistent usage is not a rule, and here—where "undue burden" is "employed in different parts of the act with different intent"—it "readily yields." *Atlantic Cleaners & Dyers, Inc. v. United States*, 286 U.S. 427, 433 (1932); *see also Environmental Defense v. Duke Energy Corp.*, 549 U.S. 561, 574 (2007).

The SCA's immunity provision, § 2703(e), also does not, as the government claims, confine provider challenges to "logistical or practical burden[s]." Opp.5, 20. Nothing in § 2703(e) limits the grounds on which a provider can object to a § 2703(d) order, and, unsurprisingly, the government cites no case rejecting an overbreadth challenge because § 2703(e) forecloses it. Moreover, the SCA is not structured as such: There is no question that providers can contest grand-jury

subpoenas on relevancy grounds (*see* Opp.32), while still receiving § 2703(e) immunity for complying with the same subpoenas they challenge.

Finally, the cases the government cites for its pinched interpretation of "undue burden" are either unpersuasive or affirmatively support LinkedIn. [redacted] *Google LLC v. United States*, 2025 WL 4958336 (D.D.C. Feb. 25, 2025), simply makes the same mistakes the government does here. *See supra* pp. 16-19; Br.31-34 (addressing these arguments at greater length). And the vacated decision *In re Grand Jury Subpoena to Google, LLC*, 2020 WL 13505395, at *5-6, is unpersuasive, as it addressed the "undue burden" concept only as part of a confused standing analysis that did not parse the statutory language. *See* Order, *United States v. Google LLC*, No. 19-1891 (2d Cir. May 14, 2021), Dkt. 220. In sum, providers may challenge § 2703(d) orders as overbroad.

*2. The Government's Proffered Relevance Standard Is Wrong*

The government is wrong that capturing "a large amount of irrelevant" information is "a feature, not a bug" of a § 2703(d) order. Opp.22-23. According to the government, so long as it can show "reasonable grounds to believe" that any records it seeks are relevant to a criminal investigation, it need not meaningfully

tailor its demand to exclude irrelevant records. *Id.* at 23-24. The government's position may have passed muster under the original SCA, which required only "reason to believe" the information sought was "relevant to a legitimate law enforcement inquiry," Pub. L. No. 99-508 § 201, 1986 U.S.C.C.A.N. (100 Stat.) 1862. But Congress rejected that understanding when it amended the SCA to impose the "specific and articulable facts" standard, *see United States v. Kennedy*, 81 F.Supp.2d 1103, 1109-1110 & n.8 (D. Kan. 2000). The government's contention that "heightened relevance requirement[s]" do not apply (Opp.25) thus contradicts Congress's deliberate goal to fashion an "intermediate standard." H.R. Rep. No. 103-827, at 31 (1994). And the government's heavy reliance (Opp.24-25) on *In re Application of the U.S. for an Order Pursuant to 18 U.S.C. § 2703(d)*, 830 F.Supp.2d 114 (E.D. Va. 2011), changes nothing. [redacted] was based on a "significantly more concrete" factual showing than "mere speculation." *Id.* at 130.

Nor does LinkedIn advocate for a relevance requirement that imposes an "impossible standard," as the government would have the Court believe. Opp.25. [redacted]

[redacted] The district court could have (and should have) done likewise here. *See* Br.25.

## II. THE FIRST AMENDMENT AND § 2705(b) REQUIRE MODIFYING THE SECRECY ORDER

The Secrecy Order is a content-based restraint on LinkedIn's speech and must satisfy strict scrutiny. Recognizing that it cannot withstand such exacting review, the government reaches for a more lenient standard. The Court should reject that effort and partially lift the Secrecy Order as to one government-vetted attorney [redacted]

[redacted]

[redacted]

[redacted]

### A. Strict Scrutiny Applies, Not A Novel "Good Cause" Standard

In any event, the government's arguments fail. To begin with, the government does not dispute that the Secrecy Order is a content-based prior restraint on LinkedIn's speech, yet it argues that strict scrutiny somehow does not apply. Opp.39-40. The government's plea for a more lenient test is forfeited: Although it argued before the district court that the Secrecy Order does not significantly curtail LinkedIn's First Amendment rights, it never asserted that strict scrutiny does not apply and purported to apply that standard. JA309-310. It cannot seek a different test for the first time on appeal. *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993).

On the merits, the government principally relies on *Doe v. Mast*, 173 F.4th 524 (4th Cir. 2026)—a non-SCA case pertaining to a protective order—to argue for a lower "good cause" standard of review. But *Mast* applied strict scrutiny. *Id.* at 537. And although *Mast* cites *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984), for the proposition that strict scrutiny does not apply to speech restrictions on a party who invokes the court's coercive power to obtain information, 173 F.4th at 535, that rationale has no application here. Unlike in *Seattle Times*, it is the

government, not LinkedIn, that invoked the court's coercive power to compel disclosure.

### B. The Secrecy Order Fails Strict Scrutiny

The government's arguments for satisfying strict scrutiny are unmoored from that demanding standard, which requires a genuinely compelling interest and "hard evidence" that a proffered "alternative will be ineffective to achieve its goals." *United States v. Playboy Entertainment Group*, 529 U.S. 803, 816 (2000).

First, the government attempts to collapse its compelling interest in investigative integrity with a blanket interest in secrecy, contending that "secrecy and the integrity of the investigation are often one and the same." Opp.43. But the difference between the two matters, because any less-restrictive alternative to a secrecy order must be measured against the compelling interest. *See, e.g.*, *Reno v. American Civil Liberties Union*, 521 U.S. 844, 879 (1997). If secrecy alone were compelling (which not even the government contends), then the First Amendment's protection would be illusory because *every* secrecy order would satisfy strict scrutiny by default.

Second, while the government argues its Secrecy Order is narrowly tailored, its brief confirms it has no hard evidence that LinkedIn's proposed alternative—limited disclosure to one [redacted] attorney—would cause any of the adverse consequences enumerated in § 2705(b). Opp.44-45. It cites no evidence disclosed

to LinkedIn that addresses that critical question. And it endorses the magistrate's view that its *ex parte* materials did not "significantly influence" any evaluation of LinkedIn's less restrictive alternative. *Id.* at 53 (quoting JA40). This alone confirms that the government failed to satisfy strict scrutiny.

Instead of presenting evidence, the government argues that [redacted] "lacks knowledge" of the government's investigation and therefore cannot "meaningfully assist in a relevance filter" to narrow the D-Order. Opp.40-41, 46. That argument is irrelevant because the constitutional question is not whether limited disclosure [redacted] would help narrow the D-Order, but whether it would be "ineffective [at] achiev[ing] [the government's] goals," *Playboy*, 529 U.S. at 816, by causing one of the discrete harms § 2705(b) provides.

The argument is also wrong. As explained, s*upra* pp. 13-14, [redacted]

The government further errs in asserting that LinkedIn has failed to [redacted] Opp.40. Secrecy orders are prior restraints, "the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Association v. Stuart*, 427 U.S. 539, 559 (1976). Permitting LinkedIn to speak with an attorney [redacted] would, by definition, ease that infringement. To demand that LinkedIn [redacted] turns the First Amendment on its head—recasting the right to free expression as a privilege the government dispenses only on a showing of cause.

The government similarly questions whether the [redacted]

The government fares no better in complaining that [redacted]. Opp.49. What matters for strict scrutiny is whether disclosure to one [redacted] attorney threatens the government's compelling interest—investigatory integrity—not whether it is [redacted] inconvenient. *See* Br.45. [redacted]

[redacted]

Regardless, none of the government's arguments can survive [redacted] But—again—the government offers no hard evidence that [redacted] disclosure would threaten its investigation. [redacted]

[redacted]

[redacted] This alone requires reversing and narrowing the Secrecy Order.

## III. DUE PROCESS REQUIRES THAT LINKEDIN BE PERMITTED TO CONFRONT THE EVIDENCE AGAINST IT

The government continues to insist that *In re United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, 707 F.3d 283 (4th Cir. 2013) ("*Appelbaum*"), supports a rule that this Court never embraced: that parties subject to secrecy orders lack any right to confront the evidence arrayed against them. *Appelbaum*, however, held only that *the public* lacked a right to access § 2703(d) orders and certain related proceedings. *Id.* at 292, 294. The government conflates the public's interest in transparency with a party's constitutional rights. Opp.52.

Next, the government asserts that LinkedIn's rights are not meaningfully burdened. According to the government, LinkedIn faces "little risk of any erroneous deprivation of [its] rights" because "SCA providers … are entitled to cost reimbursement for expenses." Opp.52-53. But providers are compensated for the cost of producing records, not for their silence. And "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), for which monetary compensation cannot make LinkedIn whole, *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994). That the SCA contemplates the initial use of *ex parte* evidence (Opp.52-53)

is irrelevant for similar reasons. It says nothing about the constitutional question whether providers must have access to that evidence when challenging an SCA order that infringes their First Amendment rights.

Third, the government asserts LinkedIn should be denied access to the *ex parte* evidence because it is "not well situated" to assess the investigative interests at stake. Opp.53. But LinkedIn does not need to view the government's *ex parte* evidence to serve as an investigative adjunct; it needs it to vigorously defend, in an adversarial posture, its fundamental right to speak. So caselaw "involving traditional 'adjudicatory proceedings' with 'adversarial testing,'" *id.* at 51 (quoting Br.52-54), is precisely where this Court should look for guidance.

Finally, the government emphasizes its need to maintain investigative secrecy and integrity. Opp.53-54. Those interests are not implicated, as LinkedIn is not seeking to disclose the government's evidence—nor could it under the Secrecy Order. Abstract concerns about investigative integrity cannot overcome LinkedIn's concrete Due Process right to confront the evidence against it, which is being used to suppress LinkedIn's speech.

## CONCLUSION

The Court should reverse the district court's judgment and remand with instructions to quash or modify the D-Order and modify the Secrecy Order.

Respectfully submitted,

/s/ Aaron Zebley

AARON ZEBLEY
ARI HOLTZBLATT
SIDDHARTH VELAMOOR
HILARY HURD
MATT MORRIS
ANDREW NELL
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, DC 20037
(202) 663-6000

LEAH FUGERE
WILMER CUTLER PICKERING
HALE AND DORR LLP
350 South Grand Ave, Suite 2400
Los Angeles, CA 90071
(213) 443-5312

August 5, 2026

*Counsel for LinkedIn Corporation*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 6,475 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g)(1), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Aaron Zebley
AARON ZEBLEY

*Counsel for LinkedIn Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of August, 2026, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit via electronic mail and caused a true and correct copy of this under-seal filing to be served via electronic mail on the following:


Joshua Ferrentino<br>
Trial Attorney<br>
U.S. Department of Justice<br>
joshua.ferrentino2@usdoj.gov

Brian Samuels<br>
Assistant United States Attorney<br>
United States Attorney's Office<br>
One City Center<br>
11815 Fountain Way, Suite 200<br>
Newport News, VA 23606<br>
brian.samuels@usdoj.gov


/s/ Aaron Zebley<br>
AARON ZEBLEY

*Counsel for LinkedIn Corporation*